IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID FLEURY and CHRISTOPHER NUNNERY, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>Defendant. | 20-cv-00390<br><br>Hon. Jorge L. Alonso<br><br>Magistrate Judge Jeffrey Cole |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DATA IN DISCOVERY**

Plaintiffs David Fleury and Christopher Nunnery ("Plaintiffs"), pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure, hereby move to compel the production of six databases that Defendant has refused to produce in discovery. In support of this Motion, Plaintiffs state as follows:

**INTRODUCTION**

This case is a putative class action for violations of the Biometric Information Privacy Act, 740 ILCS 14/ *et seq.* ("BIPA"), brought against a national railroad, Union Pacific Railroad Company ("Union Pacific" or "Defendant"), for its illegal collection and retention of truck drivers' biometric identifiers and/or biometric information.[1] Specifically, at Defendant's railyards in Illinois, Defendant requires truck drivers to register themselves with Defendant's Automatic Gate System ("AGS" or "Auto-Gate System") so that Defendant can identify them via their fingerprints upon subsequent visits. In doing so, Defendant collects, captures, or otherwise obtains the putative

---

[1] Biometric identifiers and biometric information are collectively referred to herein as "biometrics."

class members' personal identifying information ("PII") in the form of their full names, scans of their drivers' licenses, and their biometrics, along with many other categories of information related to their visits to Union Pacific's Illinois facilities. Defendant stores this information in the six databases.

Plaintiffs requested production of this information (which is relevant to both liability and class certification) more than two years ago, on April 5, 2021. Specifically, the information is directly responsive to Plaintiffs' Requests for Production Nos. 4, 5 and 8: [2]

**DOCUMENT REQUEST NO. 4:** All Documents which Identify all individuals whose Biometric Identifiers or Biometric Information was collected, captured, stored, and/or used by You or on Your behalf during the Relevant Time Period.

**DOCUMENT REQUEST NO. 5:** All Documents Related To any written consent Related To the capture, collection, storage, use, or dissemination of biometrics by You or on Your behalf.

**DOCUMENT REQUEST NO. 8:** Any Documents, Communications, and Correspondence Related To Biometrics.

Through its interrogatory responses, Defendant has confirmed that it is in possession of this information, and that it is stored in six databases (herein the "Databases") owned and controlled by Union Pacific. Specifically, each of Union Pacific's four facilities in Illinois has its own local driver registration database that is stored on-site at the facility. Union Pacific also maintains a "central" driver database related to putative Class Members' use of Union Pacific's Illinois Auto-Gate Systems. These five databases are in turn linked to Union Pacific's "UP Driver Master File," which contains additional PII and data points related to whether UP has obtained

---

[2] *See* Plaintiff Fleury's First Requests for Production and Defendant's Responses thereto, all of which are attached as Exhibit A, at Request Nos. 4, 5, and 8. Please note that Plaintiff's definition of "Documents" specifically includes "data or data compilations, including ESI—stored in any medium from which information can be obtained." *Id.* ¶ 15. These Requests were propounded prior to any discovery occurring in this case, and, as explained in Plaintiffs' Rule 37 certification below, have been narrowed through the meet-and-confer process and further written discovery to the point that the Parties understand that Plaintiffs seek production of the Databases under these Requests.

truck drivers' purported consent to collect their biometrics and whether UP has purged (deleted) the biometrics of inactive truck drivers.[3]

Simply stated, Plaintiffs have requested the information and Defendant has it, but refuses to produce it. As the Court will recall, Plaintiff Fleury moved to compel the production of this data in his Motion to Compel filed on October 21, 2022, which the Court denied without prejudice on the grounds that the Parties had not sufficiently met and conferred in an effort to resolve the impasse. Since the Court's October 21, 2022 Order, the Parties have met and conferred extensively in an effort to resolve this dispute.[4] But after months of negotiations, there are still disputes that require the court's involvement.

First, Defendant is withholding relevant and discoverable information and attempting to artificially narrow the size and scope of Plaintiffs' Class to drivers who presented an Illinois CDL. *See* Exs. B and D. Plaintiffs have on several occasions attempted to resolve the issue by waiving the production of certain categories of information if Defendant would enter into stipulations with respect to certain merits and class certification issues related thereto. *See* Ex. C. Defendant has uniformly rejected such offers. *See* Ex. D. And most recently, Defendant has actually *narrowed* the scope of data it had formerly claimed it would be willing to produce, while offering no stipulations at all. Compare Ex. B ¶ 1 with Ex. D at 2 (narrowing the size and scope of the class from its previous offer to only include individuals with Illinois CDLs and refusing to engage with Plaintiffs' offered stipulations.)[5] To date, Defendant has not even produced the artificially

---

[3] Ex. F, Def.'s Responses to Plaintiffs' Second Set of Interrogatories at Response Nos. 12-13.
[4] *See* the Parties' most recent correspondence regarding the data sought herein, attached hereto as Exhibits B (Defendant's Feb. 9, 2023 letter to Plaintiffs); C (Plaintiffs' March 10 letter to Defendant); D (Defendant's May 5, 2023 letter to Plaintiffs); and E (Plaintiffs' subsequent emails to Defendant).
[5] It is Plaintiffs' burden to certify a class in this case and thus Plaintiffs' prerogative to define the scope of the class. Defendant's attempts to narrow the class by choking off what data is produced is entirely improper. And Defendant's recent *reduction* of the scope of the data it is offering to produce (on the heels

3

narrowed data set as promised in its May 5 Correspondence to produce by May 19. *See* Ex. D. Defendant has not provided a reason for its failure to produce this data, nor has it responded to Plaintiffs' numerous requests for a meet-and-confer. Accordingly, and especially now that Defendant is moving *backwards* in its negotiations, Court intervention to compel production of the Databases is appropriate.[6]

The information sought is highly relevant to both the merits of Plaintiffs' claims and to class certification, and there is no reasonable basis for Defendant to withhold such information, especially given the comprehensive Confidentiality Order entered by the Court over Defendant's objection. *See* Dkts. 125-126. Thus, Plaintiffs ask that the Court order the immediate and complete production of the six Databases by Defendant.

## LEGAL STANDARD

Rule 26 broadly permits parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Generally, the Federal Rules "permit liberal discovery in an effort to facilitate the trial or settlement of legal disputes." *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) (citing *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009)). This is equally true in the class action context. *See Jones v. Nat'l Council of Young Men's Christian Assocs. of U.S.*, No. 09-cv-6437, 2011 WL 1312162, at *2 (N.D. Ill. March 31, 2011). In class actions, at a minimum, "precertification discovery is appropriate concerning Rule 23's threshold requirements of numerosity, common questions/commonality, and adequacy of representation." *Gebka v. Allstate*

---

of the Court reluctantly granting the Parties more time to complete discovery (Dkt. 144)) is entirely unproductive and smacks of bad faith and delay-focused gamesmanship rather than good-faith negotiation.
[6] Rather than ask the Court to force Defendant to agree to Plaintiffs' requested stipulations (See Ex. C), Plaintiffs simply ask that the Court cleanly order production of the Databases pursuant to its wide discretion to control discovery.

4

*Corp.*, 2021 WL 825612, at *8 (N.D. Ill. March 4, 2021). Moreover, "the scope of discovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification. *Id*. Magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013).

If a motion to compel under Rule 37(a) "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

## ARGUMENT

The information sought through this Motion are (i) Union Pacific's driver registration databases, which are Microsoft SQL databases containing the biometrics and associated PII of Plaintiffs and the putative Class, and (ii) Union Pacific's "UP Driver Master File" database, which is linked to the driver registration databases and contains data related to whether and when an individual's purported consent was gained to collect their biometrics, and whether their biometrics were deleted by Defendant's system. These Databases are formally known as: the Central Driver Database, Global 1 Driver Database, Global 2 Driver Database, Global 3 Driver Database, Global 4 Driver Database and the UP Driver Master File. *See* Response to Plaintiff's Second Interrogatories at Resp. No 13, attached hereto as Exhibit F; Exhibit G data map showing linkage between the AGS site databases and the Central Driver Database to the UP Driver Master File.

The specific process by which drivers are registered into UP's AGS system and have their information stored in the Databases is described in detail in an AGS Clerk Console Reference Manual produced by Union Pacific in discovery. *See* Exhibit H, at UP00000263-UP00000265.

5

The Databases contain numerous categories of information relevant to the merits of Plaintiffs' claims, including all of the biometrics that are at the heart of this case, the date and times of Class Members' biometric registrations, information identifying the particular appendages from which the Class Members' fingerprints were captured, information indicating when and whether any purported consent was obtained to collect such biometrics, and information indicating when and whether biometrics were purged (deleted) by Defendant's Auto-Gate System. The Databases also contain other PII, including scans of putative Class members' drivers' licenses, address information, information identifying their employers, and other information related to their visits to Defendant's Illinois facilities.[7] All of this information is relevant and intertwined with numerous merits and class certification issues.

Put simply, this case is about the illegal collection of Plaintiffs' and the Class Members' biometrics, and the Databases sought here store clearly relevant information gathered through Defendant's biometric AGS registration process. This cannot reasonably be in dispute. Accordingly, Plaintiffs are entitled to review the complete contents of these Databases and to inspect every category of information contained therein. While Defendant may claim that the Databases also contain information that is itself not relevant, there can be no dispute that *all* of the information contained in the Databases was captured and created to serve the specific purpose of identifying drivers using biometrics, and all such information is thus tied to the Class Members' biometrics. Moreover, "discovery is not improper simply because a party's request is likely to unearth some documents that eventually prove to be irrelevant to that party's claim[.]" *Awalt v. Marketti*, 11-cv-6142, 2012 WL 6568242, at *5 (N.D. Ill. Dec. 17, 2012). And as the Court noted previously, it is not clear "what the district court judge will deem significant or perhaps even

---

[7] For a complete list of the data points captured by Defendant in registering drivers through the AGS, please see Defendant's Responses to Plaintiff's Interrogatory 13, attached hereto as Exhibit F.

relevant when the time comes for summary judgment or trial" such that it is appropriate to "err on the side of more rather than less." Dkt. 114 at 4. Put differently, because the entire purpose of the Databases was to store drivers' registration information, including all biometric registrations, and because such illegal registrations serve as the basis of Plaintiffs' claims, *all* the information contained in the Databases is relevant and should be produced, and the potential that some information may later be deemed irrelevant should not preclude the production of relevant information.

Of course, such Databases are also directly relevant to the Fed. R. Civ. P. 23 elements of commonality, typicality and ascertainability—elements that Defendant has refused to stipulate to in this litigation. If Defendant is going to challenge these elements, then it must provide the database evidence in its possession. First, the Databases are important for Plaintiffs to show that the information gathered from each putative Class member is similar, if not identical, in nature, thereby permitting them to prove that this case is suitable for class treatment. Access to such Databases is also crucial for showing that the identities of the putative Class members are specifically ascertainable. Here, class certification is expected to be straightforward. Indeed, at the same time that Defendant's AGS System violated the law, it carefully catalogued the identifying information for the individuals whose rights were violated. All putative Class members were subjected to the same procedure, all had their biometrics captured using the same system at Defendant's Illinois location(s), and all were uniformly deprived of their right to receive certain disclosures and provide informed written consent. *See* Ex. H at UP00000263-UP00000265. The Databases are thus highly relevant to the issues of class certification and should be produced immediately.

There is also a very low burden associated with copying and producing the Databases. Databases can be copied onto hard drives and produced with little to no administrative effort by Defendant. In fact, it is *less* burdensome to simply produce the entire Databases than it would be to parse through them and produce limited categories of Defendant's choosing. Moreover, on January 4, 2023, the Court entered a comprehensive Confidentiality Order[8] that provides for production and protection of Confidential Information, the definition of which covers all of the information stored by the Databases—and specifically provides for the production of biometrics. Dkt. 126 ¶ 2, 17. Defendant's refusal thus far to produce such Databases has been an exercise in frustrating class and merits discovery, not an attempt to reduce its discovery burden or protect confidentiality.

By this Motion, Plaintiffs are not requesting a groundbreaking production. By way of example, in a nearly identical case, *Rogers v. BNSF Railway Co.*, the railroad defendant BNSF owned and operated Auto-Gate Systems materially similar to those at issue in this case. 19-cv-03083 Dkt. 142 at 2-3 (N.D. Ill. Mar. 15, 2022). Such systems were procured by BNSF through a third party, Remprex LLC. *Id.* The same is true here. *See* Ex. H, at UP00000263-UP00000265. Also, in *BNSF*, the hardware and software comprising the Auto-Gate Systems, including the database design, was engineered at least in part by another third-party technology provider, Nascent Technologies. The same is true here. During discovery in that case, the plaintiff received the complete native driver databases, which were copied onto hard drives and produced as Plaintiffs have requested here. Such information was retained by plaintiff's counsel and his expert throughout such litigation and kept in accordance with the confidentiality order in that case, which

---

[8] Defendant's foot-dragging behavior with respect to the patently relevant data Plaintiffs seek echoes its refusal to enter into a simple Confidentiality Order in this case—efforts which the Court remarked were "not well-taken." Dkt. 125 at 2.

is nearly identical to the one entered here. *See* Dkt. 125 (referencing the confidentiality order in *BNSF*). Plaintiffs are essentially seeking the same information that was produced in the *BNSF* case pending before Judge Kennelly.

In the *BNSF* case, the plaintiff relied on an expert, Joseph Caruso of Global Digital Forensics, to analyze BNSF's databases. Mr. Caruso was able to utilize the tables contained in BNSF's databases to determine with specificity the total number of class members and, importantly, to identify them. His testimony also addressed merits issues such as the fact that the information contained in such databases included biometric identifiers *and* biometric information. Relatedly, at trial in the *BNSF* case, BNSF claimed to have been surprised that actual images of fingerprints had been stored in its AGS databases. It was only through having access to the actual unfiltered data that plaintiff Rogers was able to discover the true scope of BNSF's biometric collection and storage. Through analysis of the raw data, Mr. Caruso was also able to develop an opinion as to whether the data was stored in accordance with relevant technical safety standards, which was relevant to determining the defendant's state of mind—another claims issue which can be shown to be common to the whole class.

Plaintiffs have retained Joseph Caruso as an expert here as well, and he has already reviewed descriptions of the Databases. Mr. Caruso has a deep understanding of how databases store information, and Plaintiffs expect that his testimony will be relevant on the merits and with respect to Plaintiffs' forthcoming Motion for Class Certification—as it was in the *BNSF* case. A Declaration of Joseph Caruso is attached hereto as <u>Exhibit I</u>. Mr. Caruso is prepared and able to analyze the Databases to identify the members of the Class and to assess the data contained within such Databases in determining whether such information constitutes biometric identifiers or information under BIPA. It is also apparent that the various tables contained in these Databases

9

are interrelated and linked, meaning that absent production of such Databases in their native and unfiltered format, significant context (not to mention data) is lost with respect to Plaintiffs' experts' ability to analyze and assess these Databases both as to the numerous merits issues identified above and as to class certification.

Of course, the Court is well aware that Plaintiffs have long sought this information, with Plaintiffs first having filed a Motion to Compel on the question of the Class Data and Consent Data in October of last year. At that time, Defendant argued that the Parties had not yet sufficiently met-and-conferred. The Court denied Plaintiffs' first Motion to Compel on those grounds. Since that time, however, the Parties have met and conferred extensively, both in writing through multiple deficiency letters and in numerous telephonic meet-and-confers. Given the short time remaining for discovery in this case, and in light of Defendant's recent backtracking regarding production of the Databases, Plaintiffs are filing the instant Motion to Compel in hopes that the Court will reach the merits of this discovery dispute, as the data sought herein is patently relevant to this case and is complexly intertwined with both merits and class certification issues. Absent prompt production of these Databases, Plaintiffs will be prejudiced in their ability to analyze the relevant information in advance of conducting oral discovery, including the expected forthcoming FRCP 30(b)(6) deposition of Defendant, which Plaintiffs expect will contain several topics related to the Databases.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order:

1. Granting Plaintiffs' Motion to Compel Discovery;
2. Compelling Defendant to produce the Databases sought herein in their entirety;
3. Requiring Defendant to pay Plaintiffs' reasonable expenses and fees incurred in making this Motion; and

    4.    Granting such further and other relief the Court deems reasonable and just.

Dated: May 23, 2023

Respectfully submitted,

DAVID FLEURY and CHRISTOPHER NUNNERY, individually and on behalf of a class of similarly situated individuals,

By: /s/    *David L. Gerbie*
*One of Plaintiffs' Attorneys*

Evan M. Meyers
David L. Gerbie
Brendan Duffner
Joseph Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com
jdunklin@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

## PLAINTIFFS' RULE 37 CERTIFICATION

I hereby certify that I have met the requirements of Fed. R. Civ. P. 37 and L.R. 37.2, as well as this Court's Standing Order and Case Procedures, prior to filing this Motion. As the Court knows, Plaintiffs have been demanding all of the data captured through Defendant's AGS for months. Following the Court's denial of Plaintiff Fleury's first Motion to Compel without prejudice, the Parties met and conferred via telephone on November 22, 2022 and December 2, 2022 regarding what data would be produced from the Databases. The Parties also traded written proposals, with Defendant offering on December 12, 2022 to produce class size numbers according to various potential limitations periods, including Personally Identifiable Information (PII) associated with such drivers, consisting of: Driver names, CDL Numbers, and CDL Issuing State. Defendant only offered this information "contingent upon Plaintiff accepting this information as a full compromise of the disputes relating to RFP No. 4." This language was a red flag to Plaintiffs who did not know the full extent of the data in Defendant's possession.

As such, on December 16, 2022, Plaintiffs issued a letter to Defendant asking Defendant to identify the full extent of the data. In another letter dated January 20, 2023, Plaintiff reiterated the same request that Defendant identify the full extent of the data. In Defendant's February 9, 2023 response, Defendant completely ignored this request. Defendant refused to produce this information informally and instead demanded that Plaintiffs propound additional discovery requests identifying the full extent of the data in its possession—which Plaintiffs did on March 10, 2023. That same day, and in an effort to reach a compromise and avoid burdening the Court, Plaintiffs made an offer to Defendant which included a list of stipulations and again asked Defendant to identify the full extent of the data in its possession. *See* Ex. C. Subsequently, Defendant's attorneys Melissa Siebert and Lauren Gibbons switched law firms, from Shook Hardy

& Bacon, LLP to Cozen O'Connor, bringing this case with them to Cozen, where Chris Hennessy joined the case and filed an appearance on March 20, 2023. Despite the fact that Defendant retained several of its previous attorneys, this "transition" added significant additional delay.

On April 14, 2023, Defendant responded to Plaintiff's Second Set of Interrogatories, demonstrating that it in fact possesses categories of relevant data well beyond its previous offers of production. *See* Ex. F. On April 25, 2023, Plaintiffs' Counsel had a meet and confer with Defendant's Counsel, Christopher Hennessy, to discuss Plaintiff's March 10, 2023 deficiency letter. Despite having been in possession of the letter for at least several weeks, Mr. Hennessy was not in a position to substantively discuss Plaintiffs' letter or Plaintiffs' demand for data from the databases or alternative proposed stipulations. Plaintiffs followed up with Defendant shortly after such call and requested a further meeting to address outstanding issues and seek additional clarity as to what further documents Defendant expected to produce—including whether any such production would include the Databases. Thereafter, during a meet and confer on April 27, 2023 with Counsel for Defendant Lauren Gibbons and Brian Browne, Plaintiffs again asked that Defendant produce the Databases, as such Databases constituted responsive "Documents" under numerous of Plaintiffs' Document Requests, including the following:[9]

> Document Request No. 4: All Documents which Identify all individuals whose Biometric Identifiers or Biometric Information was collected, captured, stored, and/or used by You or on Your behalf during the Relevant Time Period.
>
> Document Request No. 5: All Documents Related To any written consent Related To the capture, collection, storage, use, or dissemination of biometrics by You or on Your behalf.
>
> Document Request No. 6: All Documents Related To any policy, procedure, or practice Related To the collection, capture, use, storage or dissemination of Biometric Identifiers and/or Biometric Information by You or on Your behalf.

---

[9] Importantly, Plaintiff's Document Requests clearly define "Documents" as including all "ELECTRONICALLY STORED INFORMATION" (computer generated information or data, of any kind, stored on computers, file servers, disks, tape or other devices or media, or otherwise evidenced by recording on some storage media, whether real virtual, or cloud based. ESI includes any associated METADATA).

13

>   Document Request No. 19: All documents Related To any and all purported defenses to any of the claims asserted in the Complaint.
>
>   Document Request No. 24: All Documents which Defendant contends Plaintiff Fleury has signed or has otherwise executed or manifested his assent towards, including all electronic, digital, and hard-copy physical formats of such Documents.
>
>   Document Request No. 37: All Documents, including all data, sufficient to Identify all occasions (including date, time and location) that each Putative Class Member utilized a biometric fingerprint reader (for example, by using a driver registration station, as depicted in UP-00005346-48, or an ingate kiosk that would display a screen similar to UP-00003723) at one of Defendant's Illinois facilities during the Relevant Time Period, regardless of whether such utilization was for purposes of providing an initial fingerprint registration or a subsequent fingerprint scan.
>
>   Document Request No. 38: All Documents, including all data, contained in the UP Driver Master File (as identified in UP-00007231) for each Putative Class Member.

The Parties were scheduled to have a follow up meet-and-confer on May 2, 2023, where Defendant was to give a definitive answer as to whether or not it would produce such Databases in full. Defendant's Counsel did not circulate dial-in information for the call and did not respond to emails from Plaintiffs' Counsel attempting to go forward with the call. Plaintiffs' Counsel subsequently followed up with Defendant's Counsel several times to reschedule that meet and confer, but Defendant's Counsel refused to respond. *See* Ex. E. After failing and refusing to meet and confer, Defendant sent a letter on Friday, May 5, offering to produce a purported class list based on a class definition Defendant had substantially *narrowed* unilaterally—while withholding the vast majority of other relevant data contained in the Databases and refusing all stipulations. *See* Ex. D. Defendant's "compromise" was to artificially narrow the proposed Class to only include individuals with *Illinois* commercial drivers' licenses (CDLs), even though Plaintiffs' proposed Class includes *all* individuals whose biometrics were captured at any of Union Pacific's Illinois facilities regardless of the issuing state of their CDL, and even though Defendant's previous offers to produce data from the Databases were considerably less narrow. *See* SAC Dkt. 135 ¶ 28; Exs.

14

B, D, and E. Upon receiving Defendant's May 5 correspondence, Plaintiffs' Counsel responded, identified that Defendant's offer was insufficiently narrow and improperly withheld relevant information, again requested a meet-and-confer, and informed Defendant that Plaintiffs would be filing a Motion to Compel absent production of the Databases. Plaintiffs' Counsel followed up numerous times, and again received no reply or offer to discuss the numerous outstanding discovery issues. *See* Ex. E.[10]

Defendant has still not produced even the insufficiently narrow data set that it promised in its May 5 correspondence to produce by May 19. *See* Ex. D. With the discovery deadline fast approaching and with Defendant clearly refusing to produce in full the most relevant information in this case, Plaintiffs were forced to file the instant Motion.

/s/ *David L. Gerbie*

---

[10] While this Motion is limited to asking the Court to compel the production of certain of Union Pacific's Databases, it is likely that further motions to compel or potentially even further extension of the discovery deadline will be required if Defendant refuses to even respond to Plaintiffs' genuine efforts to conduct discovery in a timely manner. For example, Defendant has consistently refused to indicate whether it will produce communications from additional custodians identified by Plaintiff, and this refusal is delaying oral discovery. Nonetheless, Plaintiffs would like to fully exhaust all meet-and-confer efforts in earnest before seeking the Court's involvement in any further discovery disputes.

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 23, 2023, I caused the foregoing *Plaintiffs' Motion to Compel Production of Data in Discovery* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *David L. Gerbie*