# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID FLEURY and CHRISTOPHER NUNNERY, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>Defendant. | Case No. 1:20-cv-00390<br><br>Hon. Jorge L. Alonso<br><br>Magistrate Judge Jeffrey Cole |

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCITON OF DATA IN DISCOVERY**

Defendant Union Pacific Railroad Company, for its Opposition to Plaintiffs' Motion to Compel Production of Data in Discovery (Doc. #156), states as follows:

## I.   INTRODUCTION

Under the guise of a motion to compel information to which Plaintiffs claim, at length, that they are entitled, Plaintiffs perhaps hope this Court will not recognize that what Plaintiffs really seek in their Motion is far beyond the scope of Plaintiffs' own over-broad class definition and is beyond the scope of any LR 37.2 meet and confer that the parties held. Plaintiffs further seek that this Court make fundamental class determinations that far exceed the scope of the referral regarding discovery. For all these reasons, as outlined below, Plaintiffs' Motion should be denied.

## II.   BACKGROUND FACTS

As outlined in Plaintiffs' Motion, this case involves alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"). In short, Plaintiffs claim that Union Pacific violated BIPA through its use of an Auto-Gate System at "Illinois railyards owned and operated by [Union

Pacific]." (Doc. #135 ¶ 19). In their Second Amended Class Action Complaint, Plaintiffs seeks to bring this action on behalf of themselves and "similarly situated individuals" defined as follows:

> All persons who, after December 13, 2014, had their fingerprints registered or scanned by Defendant's Automatic Gate System in Illinois without first providing written consent to Defendant.

(Doc. #135 ¶ 28).

Ostensibly to that end, Plaintiffs seek the production of six Union Pacific databases that purportedly contain "Class Data" and "Consent Data" (1) for alleged use by Plaintiffs' expert (i) to opine on whether Union Pacific violated BIPA and (ii) to identify the class; and (2) to prove the elements of Fed. R. Civ. P. 23 for class certification. In their Motion, Plaintiffs cite to several "meet and confers" to discuss the production of these databases, and now seek this Court's intervention to order them to be produced.

### III. ARGUMENT

As an initial matter, Plaintiffs' motion is mooted by the fact that Union Pacific already identified all the categories of data contained in its databases in response to Plaintiffs' Interrogatory No. 12 (Doc. #156-6 at 7-16) and Union Pacific produced a class list of over 23,000 drivers to Plaintiffs on May 26, 2023.[1] Furthermore, Union Pacific had already provided the relevant data for Plaintiff Fleury[2] on February 9, 2023. (Motion, Ex. B, Doc. #156-2 at 2). Plaintiffs thus have sufficient information to determine what information is stored in the databases, and the class list is certainly sufficient to permit Plaintiffs to identify the class. Further, although Union Pacific will not waive its defenses to class certification, Plaintiffs never needed the databases to

---

[1] The class list shows the following information for all drivers with an Illinois Commercial Driver's License ("CDL") who registered at one of Union Pacific's Auto-Gate Systems in Illinois: Driver Name, CDL Number, First Illinois Scan Date, First Illinois Scan Carrier, First Illinois Scan Ramp, Last Illinois Scan Date, Last Illinois Scan Carrier, Last Illinois Scan Ramp, Driver Consent Value, and Consent Timestamp.
[2] Union Pacific was unable to locate any records of a driver with an Illinois CDL connected to Plaintiff Nunnery having ever accessed any of Union Pacific's intermodal facilities within Illinois. (Doc. #146-2).

demonstrate that "the information gathered from each putative Class member is similar" or for demonstrating ascertainability, as they argue.

Undeterred, Plaintiffs claim that the databases they seek have been requested before and the subject of multiple "meet and confer" sessions between counsel. **They have not**. Plaintiffs claim that the databases are critical to their assessment of class data and directly relate not only to the issues in the case but their retained expert's opinions. **They assuredly are not.** Finally, Plaintiffs omit the fundamental issue that the information they seek is premised on a class definition that is beyond the scope of this Court's referral. In the end, what Plaintiffs do not tell this Court is that -- according to the very documents attached to Plaintiffs' Motion -- the Central Driver Database and Driver Master File[3] contain far more information than even Plaintiffs' over-expansive class definition. Plaintiffs can establish no basis to compel such production.

A.  **The databases are not within the scope of Plaintiffs' discovery requests as negotiated by the parties during the meet and confer process**

As an initial matter, Plaintiffs' Motion is procedurally improper. Plaintiff's Motion to Compel ignores the history of the parties' discovery conferences by adding a belated request for databases that have neither been requested nor discussed in a meet and confer, ostensibly for use in expert discovery. Plaintiffs argue the following three discovery requests support the production of the databases:

> **DOCUMENT REQUEST NO. 4**: All Documents which Identify all individuals whose Biometric Identifiers or Biometric Information was collected, captured, stored, and/or used by You or on Your Behalf during the Relevant Time Period.
>
> **DOCUMENT REQUEST NO. 5**: All Documents Related To any written consent Related To the capture, collection, storage, use, or dissemination of biometrics by You or on Your behalf.

---

[3] Plaintiff does not allege that Union Pacific's Central Driver Database or Driver Master File are stored or kept in Illinois.

LEGAL\63951140\1

**DOCUMENT REQUEST NO. 8**: Any Documents, Communications, and Correspondence Related To Biometrics.

On their face, none of the requests seek production of databases. Union Pacific timely objected to each request, and the parties conferred as to each. Those conversations – meet and confers – solely involved data, not databases. In Fleury's[4] first discovery letter to Union Pacific, he did not contend he sought any database. Rather, stated that with Document Request No. 4 he merely sought **data sufficient to identify the members of the putative class and to support a determination on class certification** (the so-called "Class Data"). Union Pacific has provided that information. Union Pacific produced a class list and identified the categories of data in its databases. Union Pacific even produced the finger scan template for Fleury and offered to stipulate that the Auto-Gate System ("AGS") creates a finger-scan template using the same process for each person that enrolls.[5] Regardless, Plaintiffs have recently decided to expand Document Request No. 4's reach beyond what the Parties ever contemplated or discussed, to seek production of entire "databases," in contradiction to the parties' discussions and efforts to resolve this issue.

In the parties' correspondence and during the parties' discussions over these three Requests, Plaintiffs never contended that the databases were necessary to support their expert's opinion on whether BIPA was violated or to identify the class. **This is a new argument, raised for the first time in Plaintiffs' Motion to Compel**. Indeed, had Plaintiffs actually raised the issue of the Central Driver Database and Driver Master File in previous discussions, Union Pacific could have pointed out that the majority of locations from which information is drawn for those two databases are not even located in Illinois, thus making those requests extend far beyond even

---

[4] "Fleury" is used in lieu of "Plaintiffs" here because Nunnery had yet to be added to the Complaint at the time.
[5] This offer undermines Plaintiffs' argument that the databases are important "to show that the information gathered from each putative Class member is similar, if not identical, in nature." (Motion at 7).

4

Plaintiffs' overbroad class definition. Plaintiffs' Motion does not suggest otherwise. For that reason alone, Plaintiffs' Motion should be denied as procedurally improper.[6]

### B. The Court should deny Plaintiffs' request to compel irrelevant information

The vast majority of sources of information for the databases that Plaintiffs seek are beyond the scope of Plaintiffs' claim definition and thus irrelevant to Plaintiff's claims. Rule 26(b)(1) limits discovery to information "that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). *See Motorola Solutions, Inc. v. Hytera Communications Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) ("[r]elevance focuses on the claims and defenses in the case, not its general subject matter"). While relevance is the starting point, "relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26." *Gebka v. Allstate Corp.*, No. 19-CV-06662, 2021 WL 825612, at *2 (N.D. Ill. Mar. 4, 2021). Factors such as proportionality can shield otherwise relevant evidence from discovery. *Id.*

#### 1. Production of the databases far beyond the scope of even Plaintiffs' class definition is not proportional to the needs of the case

As set forth in detail above, Union Pacific has already identified each category of data in the databases for Plaintiff and produced a class list identifying the over 23,000 Illinois drivers who registered via AGS at one of Union Pacific's intermodal facilities in Illinois. Union Pacific told Plaintiffs that it would provide this information and it did. Undeterred -- and disregarding Union Pacific's representations -- Plaintiffs proceeded to file the instant Motion.

Yet Plaintiffs have not explained why the information Union Pacific agreed to and did produce is insufficient to support their claims. Plaintiffs have never articulated a compelling need

---

[6] Plaintiffs also argue -- at some length, and supported by a declaration from their putative expert -- that the databases are essential for expert discovery. Not only is this similarly an entirely new argument raised for the first time in a motion to compel, it is decidedly premature given that expert discovery has not commenced.

LEGAL\63951140\1

for, for example, each driver's birthdate or an image of their CDL, when that information has no bearing on a BIPA claim. Nor have Plaintiffs shown why they require data on the many drivers in Union Pacific's Central Driver Database and Driver Master File who do not meet their class definition of persons who, during the relevant period, registered or had their finger scanned at an AGS in Illinois without first providing consent. (Doc. #135 at ¶ 28).

Plaintiffs also contend that the information is needed to establish the elements of class certification. Not so. Again, Union Pacific reserves its defenses to class certification, but that does not mean Plaintiffs are free to obtain irrelevant information. As set forth above, Plaintiffs already have the class list, which is all they should need to "show[] [whether] that the identities of the putative Class members are specifically ascertainable." (Motion at 7). Further, Plaintiffs argue they need the databases to show that the information gathered from each putative class member is similar, but Plaintiffs failed to inform the Court that Union Pacific already provided to Plaintiffs all of the categories of information stored, from which Plaintiffs' retained expert can assuredly opine on whether it meets the definition of "biometric information."

Plaintiffs' Motion is betrayed by the very documents on which it is based. Plaintiffs contend that "[t]he specific process by which drivers are registered into Union Pacific's AGS system and have their information stored in the Databases **is described in detail** in an AGS Clerk Console Reference Manual provided by Union Pacific in discovery. *See* <u>Exhibit H</u> … ." (Doc. #156 at 5) (emphasis added). Plaintiffs do not explain how a document that uses neither the word "database" nor the name "Union Pacific" can "describe in detail" how drivers are registered into Union Pacific's system. The fact is -- again, according to the very documents that Plaintiffs' cite in support of their demand for this information -- that the Central Driver Database receives information from all of Union Pacific's AGS databases, the majority of which are located outside

6
LEGAL\63951140\1

of Illinois.[7] As set forth in more detail below, because BIPA does not apply extraterritorially, none of the additional information Plaintiffs seek in compelling the databases is relevant.

This then leads to Plaintiffs' final argument -- because a different defendant in a different case produced a driver database, similar production should be compelled here. (Motion at 8). Whether a different defendant in a different case under a different set of facts produced its database is irrelevant. The fact remains that Plaintiffs seek to unnecessarily expand the scope of discovery beyond all proportionality with its claims, and without any reasonable justification. The Court should deny its Motion on that basis alone.

### 2. The databases contain irrelevant information regarding drivers with no connection to Illinois

Keeping with their theme of not telling this Court the whole story, the very documents on which Plaintiffs base their claim for the databases reveals that they contain information far beyond the borders of Illinois, and thus well outside even Plaintiffs' over-broad class definition Illinois statutes are "without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). BIPA does not express such an intent, and thus it does not have extraterritorial effect. *See Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017). A plaintiff must therefore demonstrate that any alleged BIPA violations took place in Illinois. *Id.*; *see also McGoveran v. Amazon Web Servs., Inc.*, No. CV 20-1399-LPS, 2021 WL 4502089, at *6 (D. Del. Sept. 30, 2021) (dismissing BIPA claims based on alleged storage of Illinois resident's biometric information in data centers outside of Illinois because BIPA does not apply extraterritorially).

---

[7] The document on which Plaintiffs rely to establish "the linkage between the AGS site databases and the Central Driver Database to the Union Pacific Driver Master File" (Doc. #156-7 at 5) reflects on its face that **two-thirds** of the information in the Central Driver Database -- and, in turn, the Union Pacific Driver Master File -- are not from "Defendant's railyards in Illinois" (Doc. #156 at 1).

7

As a preliminary matter, Union Pacific disputes that it captured, collected, stored, obtained, or transferred any biometric identifiers or biometric information as part of its AGS. But even if Union Pacific did, such actions did not violate BIPA to the extent they occurred outside of Illinois or involve drivers from other states. Yet Plaintiffs' Motion omits that 6 of the 9 components of the Central Drive Database and Driver Master File -- again, according to documents that Plaintiffs provide this Court in support of their Motion -- are outside Illinois. Plaintiffs do not and cannot articulate any reasonable basis for such an expansion of the data they claim to need to support their claim, and do not even pretend to in their Motion.

### C. The issue of class scope is beyond the scope of discovery and thus beyond the scope of this Court's referral

Setting aside every other deficiency in Plaintiffs' Motion, there is the fundamental issue that what Plaintiffs seek is premised on an expansive class definition, which is a substantive issue for a Court to decide. Plaintiff's Motion to Compel seeks to exceed the scope of the Court's referral to the Magistrate Judge for discovery supervision by seeking a definitive ruling on the scope of the putative class –namely whether it includes drivers with a commercial driver's license ("CDL") from outside of Illinois. Respectfully, that issue may only be decided by the District Judge.

As background, upon the removal of this matter to this Court in January 2020, this case was assigned to Judge Alonso and designated to Magistrate Judge Cole pursuant to 28 U.S. Code § 636(b) and Local Rule 72.1. On June 2, 2022, the Court specifically referred this case to Magistrate's calendar "for the purpose of holding proceedings related to: discovery supervision; settlement conference." (Doc. #90).

Under 28 U.S. Code § 636(b), a magistrate judge is prohibited from determining a motion "to dismiss or to permit maintenance of a class action[.]" *See also* Fed. R. Civ. P. 72 (limiting magistrate judge's authority to issue orders on nondispositive matters). The limits of a magistrate's

referral are regularly enforced. *See e.g.*, *Campbell v. HSA Managed Care Sys., Inc.*, No. 97 C 1622, 1998 WL 417505, at *6 (N.D. Ill. July 21, 1998) (sustaining objection to magistrate's decision on basis it was outside scope of referral); *3Com Corp. v. D-Link Sys., Inc.*, No. C 03-2177 VRW, 2006 WL 8457955, at *1 (N.D. Cal. Jan. 24, 2006) (vacating magistrate decision as beyond scope of referral). Here, Plaintiffs seek a ruling on the extraterritorial application of BIPA to drivers with out-of-state (i.e., non-Illinois) CDLs. Such a ruling would ultimately become determinative of Plaintiff's class certification motion, and thus is far beyond the scope of the referral for discovery supervision. The Court should thus deny Plaintiffs' improper Motion to Compel.

## IV. CONCLUSION

For the foregoing reasons, Union Pacific respectfully requests that this Court deny Plaintiffs' Motion to Compel Production of Data in Discovery.

Dated: May 30, 2023

Respectfully submitted,
**UNION PACIFIC RAILROAD COMPANY**

 /s/ Christopher S. Hennessy
One of Its Attorneys

Melissa A. Siebert (6210154)
Christopher S. Hennessy (6237293)
Lauren Gibbons (*pro hac vice*)
Cozen O'Connor
123 N. Wacker Drive, 18th Fl.
Chicago, IL 60606
Tel: (312) 382-3100
msiebert@cozen.com
chennessy@cozen.com
lgibbons@cozen.com