IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID FLEURY and CHRISTOPHER NUNNERY, individually and on behalf of similarly situated individuals, | |
| Plaintiffs, | 20-cv-00390 |
| v. | Hon. LaShonda A. Hunt |
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, | Magistrate Judge Jeffrey Cole |
| Defendant. | |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DAMAGES DATA**

Plaintiffs David Fleury and Christopher Nunnery ("Plaintiffs"), pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure, hereby move to compel the production of data that Defendant has refused to produce. In support of this Motion, Plaintiffs state as follows:

**INTRODUCTION**

This is a putative class action alleging Defendant violated the Biometric Information Privacy Act, 740 ILCS 14/ *et seq.* ("BIPA"). Plaintiffs allege Defendant, a national railroad, violated BIPA by unlawfully collecting, storing and disseminating Plaintiffs' (and other truck drivers') biometric identifiers and/or biometric information[1] in the form of their fingerprints. Specifically, truck drivers were required to scan their fingerprints to verify their identity in order to access Defendant's Illinois railyards through Defendant's Automatic Gate System ("Auto-Gate System").

---

[1] Biometric identifiers and biometric information are collectively referred to herein as "biometrics."

Binding case law provides that a separate BIPA violation occurs upon each illegal scan or transmission of an individual's biometrics. *Cothron* v. *White Castle Sys., Inc.,* No. 2023 IL 128004 ¶ 1.[2] Because BIPA provides for liquidated damages "for each violation" of the statute, in order to establish the full extent of statutory damages available, Plaintiffs have requested evidence of each time putative Class members entered through Defendant's Auto-Gate System in Illinois and had their fingerprints scanned. Specifically, on March 10, 2023, following the *Cothron* decision, Plaintiffs issued a document request for this information.[3] The request reads:

> **DOCUMENT REQUEST NO. 37:** All Documents,[4] including all data, sufficient to Identify all occasions (including date, time and location) that each Putative Class Member utilized a biometric fingerprint reader (for example, by using a driver registration station, as depicted in UP-00005346-48, or an ingate kiosk that would display a screen similar to UP-00003723) at one of Defendant's Illinois facilities during the Relevant Time Period, regardless of whether such utilization was for purposes of providing an initial fingerprint registration or a subsequent fingerprint scan.

Defendant has refused to produce the information sought in Plaintiffs' Document Request 37, despite claiming in its Responses that it would do so on a rolling basis. On July 12, 2023, Plaintiffs also propounded an interrogatory that seeks the same information.[5] It reads:

> **INTERROGATORY NO. 20:** Identify all occasions (including name of the individual, date, time, and location) that each Putative Class Member utilized a biometric fingerprint reader (for example, by using a driver registration station, as depicted in UP-00005346-48, or an ingate or outgate kiosk that would display a screen similar to UP-00003723) at Defendant's Illinois facilities during the Relevant Time Period, regardless of whether such utilization was for purposes of providing an initial fingerprint registration or a subsequent fingerprint scan, and where such registration or scan occurred prior to the earliest date that such individual's Driver Consent Value (such as that which is depicted in Column "I" shown in UP_00008744) indicates a Driver Consent Value of "yes."

---

[2] While *Cothron* arose in the context of determining claim accrual, the Illinois Supreme Court's analysis of what constitutes a violation under the statutory language is equally applicable to damages given the statute's provision of liquidated damages "for each violation." 740 ILCS 14/20.
[3] Defendant's Responses to Plaintiffs' Third Requests for Production are attached hereto as Exhibit A.
[4] The term "Document," as used in Plaintiffs' discovery requests, was specifically defined to include all ESI, and Plaintiffs specifically requested Data.
[5] Defendant's Responses to Plaintiffs' Fourth Set of Interrogatories are attached hereto as Exhibit B.

Defendant has refused to provide the information sought by Interrogatory No. 20. The information sought by Document Request No. 37 and Interrogatory No. 20 is herein referred to as "Damages Data." As set forth below, there is no reasonable basis for Defendant to withhold the Damages Data, which is directly relevant to determining the number of times Defendant violated BIPA with respect to the putative Class. Nonetheless, Defendant has refused to produce this relevant information, which – as with their lack of cooperation on other items that have already been the subject of previously-filed motions to compel – has unreasonably and frustratingly delayed this litigation by many months. Accordingly, the Court should order that the Damages Data be produced and award Plaintiffs their costs.

## **LEGAL STANDARD**

Rule 26 broadly permits parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Generally, the Federal Rules "permit liberal discovery in an effort to facilitate the trial or settlement of legal disputes." *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) (citing *Bond v. Utreras,* 585 F.3d 1061, 1075 (7th Cir. 2009)). This is equally true in the class action context. *See Jones v. Nat'l Council of Young Men's Christian Assocs. of U.S.*, No. 09-cv-6437, 2011 WL 1312162, at *2 (N.D. Ill. March 31, 2011). Magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart, Ind.,* 737 F.3d 1107, 1115 (7th Cir. 2013).

If a motion to compel under Rule 37(a) "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney

3

advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

## ARGUMENT

### A. Defendant Should be Compelled to Produce the Damages Data.

#### 1. *The Damages Data Is Relevant.*

Pursuant to this Court's July 14, 2023 Order, Defendant has produced a class list containing the names of approximately 42,000 individuals whose BIPA rights it has violated.[6] Dkt. 174. However, Defendant has not produced Damages Data demonstrating how many times it scanned those 42,000 individuals' fingerprints in violation of BIPA. This evidence is directly relevant to the question of how many BIPA violations Defendant has committed. Without this information, Plaintiffs have no way of knowing how many BIPA violations occurred across the 42,000 putative Class members, and thus no way to calculate the statutory liquidated damages.

Plaintiffs requested the Damages Data on the heels of the Illinois Supreme Court's decision in *Cothron v. White Castle Systems, Inc.,* No. 2023 IL 128004, which held that a separate and distinct claim accrues each time an entity violates BIPA. *Cothron,* ¶¶ 1, 23-24. Specifically, the Illinois Supreme Court held that: "We agree with the federal district court that '[a] party violates Section 15(b) when it collects, captures, or otherwise obtains a person's biometric information without prior informed consent. This is true the first time an entity scans a fingerprint or otherwise collects biometric information, *but it is no less true with each subsequent scan or collection.*" *Cothron,* ¶ 24 (emphasis added) (quoting *Cothron v. White Castle Systems, Inc.*, 477 F. Supp. 3d 723, 732 (N.D. Ill. 2020)). The Illinois Supreme Court reached the same conclusion with respect

---

[6] Defendant has not, however, produced the actual biometric data it collected from each class member, despite this Court's Order that "if there is relevant data it must be produced." Dkt. 174 at 12. Defendant's refusal to comply with the Court's Order is the subject of Plaintiffs' pending motion to compel and for sanctions. Dkt. 193.

4

to BIPA Section 15(d), ultimately holding that "the plain language of section 15(b) and 15(d) demonstrates that such violations occur with every scan or transmission." *Cothron*, ¶ 30. So naturally, Plaintiffs want Damages Data to understand how many violations Defendant committed.

Defendant is aware of the *Cothron* decision, as it has used the *Cothron* case as a basis for this case to be stayed on multiple occasions and for long periods of time. Dkts. 50, 81.[7] Indeed, Defendant has implicitly conceded the applicability of *Cothron's* analysis to this action, as its list of putative class members includes truck drivers whose fingerprints Defendant *first* collected more than five years prior to the filing of this lawsuit, but who returned to one of Defendant's Illinois facilities (and thus had their fingerprints again collected) within the statute of limitations period.

In *Cothron*, each "subsequent scan" in violation of BIPA was a fast food employee using a fingerprint scanner to access their pay stubs and computers. *Cothron*, ¶¶ 4, 23-24. Here, each "subsequent scan" in violation of BIPA is a truck driver entering one of Defendant's Illinois railyards using their fingerprint. In both cases, distinct violations occurred each time a fingerprint was used. *See id.*, ¶¶ 1, 24. And because BIPA provides for liquidated damages "for each violation," the Damages Data will establish how many times each putative Class member entered or exited Defendant's Illinois railyards during the relevant time period by using their fingerprint, and thus how many separate violations occurred for each putative Class member. As such, the Damages Data sought is directly relevant to the determination of the full extent of Defendant's liability and the putative Class's damages here.

### 2. The Damages Data Exists And Is Producible.

Defendant has in its possession the date and location that each putative Class Member entered or exited one of Defendant's facilities in Illinois using their fingerprint. Indeed, Defendant

---

[7] Counsel for Defendant also represented the *Cothron* appellant (which lost its appeal and its subsequent petition for rehearing).

has demonstrated that it has the Damages Data, and did not argue during the Parties' meet-and-confers that such data is unduly burdensome, or even difficult, to produce. *See* Dkt. 1-2 (Union Pacific affirmatively stating that Plaintiff Fleury visited Union Pacific's Global 4 location and scanned his finger "at least 45 times" between Nov. 6, 2018 and the present). Defendant has also produced a version of this data for Plaintiff Nunnery. With respect to Plaintiff Nunnery, Defendant produced data showing the numerous dates on which Plaintiff Nunnery has visited Union Pacific's facilities in Illinois. Though Plaintiff Nunnery's visits occurred prior to Defendant's use of fingerprint biometrics in its Auto-Gate System, Defendant's production of this data demonstrates that Defendant can identify each time a given truck driver has visited its facilities. Accordingly, Plaintiffs seek production of data sufficient to demonstrate the remaining ~42,000 putative Class members' visits to Defendant's Illinois railyards during the relevant time period so that Plaintiffs can quantify the number of times Defendant has violated BIPA.

### B. Plaintiffs Should Be Awarded Costs Because Defendant's Refusal To Produce The Damages Data Is A Bad Faith Attempt To Hide Its Substantial Liability.

When Plaintiffs first sought the Damages Data via Document Request No. 37, Defendant (after asserting numerous meritless boilerplate objections) indicated that "Union Pacific will produce non-privileged documents responsive to this Request within its possession, custody, or control that it can locate after a reasonable search on a rolling basis." Ex. A at 7.

But after initially agreeing to produce the Damages Data "on a rolling basis," Counsel for Defendant purposely and systematically avoided producing such information, while also avoiding providing Plaintiffs with a concrete refusal to produce it that Plaintiffs could use as a basis for a motion to compel. Indeed, as set forth more fully in Plaintiffs' L.R. 37 certification below, Plaintiffs sought the Damages Data in numerous letters *and* during numerous telephonic meet-and-confers throughout the past six months. *See* Dkt. 156-3 pg. 3 (Plaintiffs' March 10, 2023 Letter

referencing and demanding the Damages Data for the first time); Dkt. 156-4 ¶ 1 (Defendant's May 5, 2023 Letter to Plaintiffs purporting to respond to Plaintiffs' March 10, 2023 Letter but ignoring the Damages Data); Exhibit C hereto at 2 (Plaintiffs' May 12, 2023 Letter demanding the Damages Data); Dkt. 193-4 (Plaintiffs' July 17, 2023 letter requesting the Damages Data); Exhibit D hereto (Plaintiffs' numerous unanswered email overtures on this topic following telephonic meet-and-confers where the Damages Data was sought).

In addition to Document Request No. 37 and the numerous letters and telephone conversations, Plaintiffs also sought the Damages Data pursuant to Interrogatory No. 20. Aside from more meritless boilerplate objections, Defendant makes two objections to Interrogatory No. 20. Defendant first objects to Interrogatory No. 20 on the basis that each subsequent finger scan does not create a new claim for damages under BIPA. Ex. B at 10. But Defendant's justification for refusing to produce the Damages Data is incompatible with *Cothron*—binding authority from the Illinois Supreme Court. *Cothron* held that a new claim accrues with each subsequent scan in violation of BIPA. *Cothron,* ¶ 23 ("With the subsequent scans, the fingerprint is compared to the stored copy of the fingerprint. Defendant fails to explain how such a system could work without collecting or capturing the fingerprint every time the employee needs to access his or her computer or pay stub.") There is thus no reasonable legal basis for Defendant's first objection.

Defendant's second objection to Interrogatory No. 20 is that Plaintiffs cannot seek the Damages Data because seeking damages on a per-scan basis is unconstitutional. Ex. B at 10. This objection is nonsensical considering *Cothron* explicitly found that BIPA claims accrue with each subsequent scan of an individual's biometrics in violation of the law, yet it obviously did not find BIPA unconstitutional. *Cothron,* ¶ 23. Defendant's position is also completely backwards, as <u>this is a discovery motion,</u> *i.e.* no damages have been sought by motion or awarded. It completely puts

7

the cart before the horse to preclude discovery into the number of violations on the basis that an *eventual* damages award based on that discovery *might* be unconstitutional. Accordingly, there is no reasonable legal basis for Defendant's second objection either.[8]

To summarize Defendant's behavior in refusing to produce the Damages Data, Defendant has: (1) reneged on its initial agreement to produce the Damages Data; (2); falsely claimed to be working on a written response to Plaintiffs' request for Damages Data when it in fact was not; (3) wasted months by repeatedly vowing to confer internally about producing the Damages Data without giving a definitive answer; and (4) issued legally baseless and monetarily-motivated grounds for refusing to produce the Damages Data.

Each time the Court has had to extend the discovery cutoff in this case, it has expressed surprise and disappointment at the need to do so. Dkts. 97, 144. Defendant's behavior with respect to the Damages Data and other issues is why those extensions have been necessary. The seemingly endless delays caused by Defendant's lack of cooperation is as frustrating to Plaintiffs as it is to the Court. Dating back to the Court's first Order on Plaintiffs' October 21, 2022 Motion to Compel data, which denied Plaintiffs' motion without prejudice as premature (Dkt. 113) Defendant has abused the L.R. 37 meet and confer requirement. Indeed, the biometric data sought by Plaintiffs' October 21, 2022 Motion to Compel (data that is the entire subject of this case) has *still* not been produced and is now the subject of Plaintiffs' Sept. 21, 2023 Motion to Compel. The Court should put an end to Defendant's behavior by awarding fees here.

---

[8] The real reason Defendant has refused to produce the Damages Data is to minimize the potential scope of damages in this case. Defendant does not want to have to answer for the (likely) hundreds of thousands of times it has violated individuals' privacy rights. This same monetary motivation to reduce damages drove Defendant's legally unfounded refusal to produce a class list that included the truck drivers with non-Illinois CDLs whose fingerprints Defendant collected in Illinois. As the Court will recall, it correctly rejected Defendant's argument regarding such class members because the offending conduct occurred in Illinois. Dkt. 174. It should go without saying that fear of a high damages award is not a valid basis to withhold relevant discovery.

8

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order:

1. Granting Plaintiffs' Motion to Compel Discovery;

2. Compelling Defendant to provide the Damages Data sought in Plaintiff's Document Request No. 37 and Plaintiff's Interrogatory No. 20;

3. Requiring Defendant to pay Plaintiffs' reasonable expenses and fees incurred in making this Motion; and

4. Granting such further and other relief the Court deems reasonable and just.

Dated: October 3, 2023

Respectfully submitted, DAVID FLEURY and CHRISTOPHER NUNNERY individually and on behalf of a class of similarly situated individuals,

By: /s/          *Brendan Duffner*
*One of Plaintiffs' Attorneys*

Evan M. Meyers
David L. Gerbie
Brendan Duffner
Joseph Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

9

## RULE 37 CERTIFICATION

I hereby certify that I have met the requirements of Fed. R. Civ. P. 37 and L.R. 37.2, as well as this Court's Standing Order and Case Procedures, prior to filing this Motion.

On March 10, 2023, following *Cothron*, Plaintiffs issued Document Request 37, seeking:

Document Request No. 37: All Documents, including all data, sufficient to Identify all occasions (including date, time and location) that each Putative Class Member utilized a biometric fingerprint reader (for example, by using a driver registration station, as depicted in UP-00005346-48, or an ingate kiosk that would display a screen similar to UP-00003723) at one of Defendant's Illinois facilities during the Relevant Time Period, regardless of whether such utilization was for purposes of providing an initial fingerprint registration or a subsequent fingerprint scan.

That same day, Plaintiffs referenced this document request in a letter to Defendant informing Defendant of the Damages Data Plaintiffs seek. Dkt. 156-3 pg. 3 Plaintiffs' March 10 Letter, at 3. On March 29, 2023, in discussing an extension of the discovery schedule here, Counsel for Plaintiffs, David Gerbie, reminded Defendant of its obligation to produce the Damages Data. On April 27, 2023, the Parties had a meet-and-confer call where Plaintiffs' Counsel requested the Damages Data. Counsel for Defendant said it would confer internally regarding this request and scheduled another meet-and-confer for May 3, 2023.[9] *See* Party Correspondence, attached as Exhibit D hereto. On May 2, 2023, Mr. Gerbie again specifically requested an update regarding the Damages Data and an update regarding the scheduled May 3 call. *Id.* Counsel for Defendant blew off the call. On May 3, 2022, Mr. Gerbie followed up again. *Id.* Later that day, Counsel for Defendant, Christopher Hennessy, stated in an email that Defendant was working on a response to Plaintiffs' March 10, 2023 letter "and other issues raised in meet and confers or by email from [Plaintiffs'] office." *Id.* Yet on May 5, 2023, Counsel for Defendant served a letter on Plaintiffs

---

[9] Counsel for Plaintiff's May 2, 2023 email contains a typo, and refers to Wednesday, May 2 rather than Wednesday May 3.

that did not address the Damages Data at all. *See* Dkt. 156-4 Defendant's May 5 Letter. On May 12, 2023, Plaintiffs again requested this data in a letter. *See* Ex. C Plaintiffs' May 12 Letter.

On July 12, 2023, Plaintiffs propounded Interrogatory 20, reading:

> **INTERROGATORY NO. 20:** Identify all occasions (including name of the individual, date, time, and location) that each Putative Class Member utilized a biometric fingerprint reader (for example, by using a driver registration station, as depicted in UP-00005346-48, or an ingate or outgate kiosk that would display a screen similar to UP-00003723) at Defendant's Illinois facilities during the Relevant Time Period, regardless of whether such utilization was for purposes of providing an initial fingerprint registration or a subsequent fingerprint scan, and where such registration or scan occurred prior to the earliest date that such individual's Driver Consent Value (such as that which is depicted in Column "I" shown in UP_00008744) indicates a Driver Consent Value of "yes."

Ex. B, pg. 9. Following the Court's July 14, 2023 Order (Dkt. 174) granting Plaintiffs' most recent Motion to Compel in part and the Court's subsequent denial of Defendant's Rule 72 Objection (Dkt. 179), the Parties met-and-conferred on July 31, 2023. During this meet-and-confer, the Parties negotiated, and Defendant later produced a Class List that includes individuals with non-Illinois CDLs who visited Defendant's Illinois railyards. So, Plaintiffs can now identify the size of the Class (approximately 42,000 individuals) and identify its members with particularity but cannot quantify how many violations occurred for those members.

On July 17, 2023, Plaintiffs again requested the Damages Data in a letter to Defendant. Dkt. 193-4. On July 31, 2023, Plaintiffs again requested the Damages Data in a meet-and-confer call with Defendant. Counsel for Defendant said they would confer internally about it. On August 3, Plaintiffs sent Defendant another email requesting the Damages Data. Dkt. 193-5. On August 7, and 8, Plaintiffs followed up, again requesting this data. (Dkt. 193-6). On September 22, 2023, Defendant finally, in a telephonic meet-and-confer, concretely refused to produce the Damages Data such that Plaintiffs could pursue it without running afoul of L.R. 37.

Dated: October 3, 2023                                By: /s/ *Brendan Duffner*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 3, 2023, I caused the foregoing Plaintiffs' Motion to Compel Production of Damages Data to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Brendan Duffner*