## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DAVID FLEURY and ALVIN TURNER individually and on behalf of a class of similarly situated individuals, ) ) ) ) | |
| *Plaintiffs*, ) ) | Case No. 20-cv-00390 |
| v. ) ) | Hon. LaShonda A. Hunt |
| UNION PACIFIC RAILROAD COMPANY, ) a Delaware Corporation, ) ) | Magistrate Jeffrey Cole |
| *Defendant*. ) ) | |

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs David Fleury and Alvin Turner ("Plaintiffs"), individually and on behalf of other similarly situated individuals, bring this Third Amended Class Action Complaint against Defendant Union Pacific Railroad Company ("Union Pacific" or "Defendant") for its violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for all persons injured by Defendant's conduct. Plaintiffs allege as follows based on personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys.

### INTRODUCTION

1. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints and hand geometry. 740 ILCS 14/10. "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. Collectively, biometric identifiers and biometric information are known and referred to herein as "biometrics." *Id.*

1

2. Defendant is one of the largest freight railroad networks and railroad operators in North America.

3. Defendant requires truck drivers who visit its facilities located in Illinois, including Plaintiffs, to provide their biometric identifiers in the form of fingerprints and their related biometric information in order to access to such facilities on subsequent visits.

4. The unique nature of biometrics allows private entities such as Defendant to gather an accurate "signature" of visitors to its facilities.

5. BIPA provides, *inter alia*, that a private entity, such as Defendant, may not collect, capture, purchase, receive through trade, or otherwise obtain an individual's biometric identifiers, such as fingerprints and hand scans, or any biometric information, including any data regardless of the manner it is converted or stored, unless it first:

   a. informs that person in writing that biometric identifiers or biometric information will be collected or stored;

   b. informs that person in writing of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored and used; and

   c. receives a written release from the person for the collection of their biometric identifiers or biometric information.

740 ILCS 14/15(b)(1)-(3).

6. Indeed, "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information," (740 ILCS 14/5), and therefore require special treatment compared to traditional private personal information. For example, even sensitive information like Social Security numbers, when compromised, can be changed. "Biometrics, however, are

biologically unique to each individual and therefore, once compromised, such individual has no recourse, is at a heightened risk for identity theft in, and is likely to withdraw from biometric facilitated transactions." 740 ILCS 14/5.

7. Furthermore, BIPA requires private entities that possess biometrics to publish a publicly-available written policy outlining the retention schedule and destruction guidelines for such biometrics. 750 ILCS 14/15(a). BIPA also requires entities that capture and collect biometrics (and that thereby come into possession of biometrics) destroy those biometrics when the initial purpose for the collection has been satisfied. *Id*.

8. Private entities are also prohibited from disclosing an individual's biometrics to third parties without informed consent. 740 ILCS 14/15(d).

9. Plaintiffs bring this action for statutory damages and other remedies as a result of Defendant's conduct in violating their biometric privacy rights under BIPA.

10. Compliance with BIPA is straightforward and minimally burdensome. The necessary disclosures and consent may be accomplished through a single signed sheet of paper or its electronic equivalent.

11. BIPA's requirements bestow a right to privacy in biometrics and a right to make an *informed* decision when individuals determine whether they will provide or withhold their biometrics.

12. On behalf of themselves and the proposed Class defined below, Plaintiffs seek an award of statutory damages to the Class members in an amount to be determined at trial, together with costs and reasonable attorneys' fees, and an injunction requiring Defendant to comply with BIPA.

## PARTIES

13. Defendant is a Delaware company that conducts, and is licensed by the Illinois Secretary of State to conduct, business in Illinois. Defendant is headquartered in Nebraska and conducts business throughout Illinois and Cook County.

14. At all relevant times, Plaintiffs have been residents and citizens of the state of Illinois and visited Defendant's facilities in Illinois, including within this District.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over the majority of this matter pursuant to the Class Action Fairness Act, 28 U.S.C. §1322(d) *et seq.*, because this case is a class action in which the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant's states of citizenship; and none of the exceptions under subsection 1332(d) apply to this instant action.

16. Plaintiffs maintain that the Court may not have subject matter jurisdiction over some of the claims Plaintiffs bring under Section 15(a) of BIPA.

17. This Court may assert personal jurisdiction over Defendant because it conducts substantial business throughout Illinois, including in this District.

## FACTS SPECIFIC TO PLAINTIFFS

18. During the relevant time period, Plaintiffs worked as non-union truck drivers for third-party companies.

19. In their work as truck drivers, Plaintiffs visited Illinois railyards owned and operated by Defendant. At Defendant's Illinois facilities, Plaintiffs were required to register their

4

biometrics into biometrically-enabled "kiosks," which are part of "Auto-Gate Systems" that partially control ingress at Defendant's facilities.

20. Using its Auto-Gate Systems, Defendant collected, captured, received through trade, or otherwise obtained biometric identifiers and associated biometric information ("biometrics") from Plaintiffs as part of the registration process for the Auto Gate Systems.

21. As part of the registration process Defendant also captured and stored other Personally Identifiable Information, including scans of such drivers' commercial driver's licenses.

22. Such registrations also identified the employers/carriers on whose behalf Plaintiffs were visiting Union Pacific's facilities.

23. Thus, the initial purpose of the collection of Plaintiffs' biometrics was to facilitate their entry into Defendant's facilities when delivering or picking up freight on behalf of a specific employer (also known in the industry as a "carrier").

24. Thereafter, on subsequent visits to Defendant's Illinois facilities, Plaintiffs were asked to again provide their fingerprint biometrics to Defendant for scanning, and Defendant captured, collected, received through trade, or otherwise obtained their biometrics on each occasion that their identities were verified using Defendant's biometrically-enabled Auto-Gate Systems.

25. Although Defendant collected, captured, received through trade, or otherwise obtained the biometrics of Plaintiffs, it failed to first provide any written disclosures describing the purpose and duration of such collection and use and failed to obtain informed written consent from Plaintiffs and other truck drivers prior to collecting, capturing, and storing such information, as required by BIPA.

26. In the course of installing, maintaining, operating, and customizing its Auto-Gate Systems in Illinois, Defendant engaged multiple third-party technology providers.

27. Through these engagements, Defendant disclosed, redisclosed and/or disseminated Plaintiffs' and the Class members' biometrics to these third-party technology providers, or otherwise provided them access to such biometrics, without first gaining Plaintiffs' and the Class members' consent.

28. Eventually, and after violating BIPA for many years with respect to both Plaintiffs and the Class, Defendant made efforts to partially comply with BIPA.

29. Only after Plaintiff Fleury filed this suit seeking redress for Defendant's violations of BIPA, Defendant belatedly sought and received Plaintiff Fleury's purported written consent to collect, capture, receive through trade, or otherwise obtain his biometrics when he visited one of Defendant's Illinois facilities.

30. Defendant never received any written consent to collect, capture, receive through trade, or otherwise obtain biometrics from Plaintiff Turner.

31. However, despite its compliance efforts, Defendant still retained Plaintiff Turner's and Subclass members' biometrics for longer than the legally permitted period, in this case, after the initial purpose of the collection and possession of his biometrics was satisfied.

32. Specifically, Defendant received information in near real-time from an Intermodal Association of North America ("IANA") database, including information indicating when a driver was no longer driving for a carrier.

33. After a driver is no longer working for a carrier, they are no longer reasonably expected to transport freight on its behalf, and thus Union Pacific has no legitimate purpose to

retain such drivers' biometrics, as the "initial purpose" of the collection (delivering or picking up freight on behalf of a specific carrier) had been satisfied.

34. However, despite being informed that Plaintiff Turner and Subclass members were no longer hauling freight on behalf of their previously identified employer, Defendant still failed to timely destroy their biometrics.

35. Instead, Defendant retained Plaintiff Turner's and Subclass members' biometrics for months or years *after* being informed by IANA that the "initial purpose" for collecting or obtaining their biometrics in the first place (delivering or picking up freight on behalf of a specific carrier) had been satisfied, in violation of BIPA.

## CLASS ALLEGATIONS

36. Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of themselves and a Class and Subclass of similarly situated individuals (the "Class" and "Subclass") defined as follows:

> Class: All persons who, after December 13, 2014, had their fingerprints registered or scanned by Defendant's Automatic Gate Systems in Illinois without first providing written consent to Defendant.
>
> Subclass: All persons who had their fingerprints registered or scanned by Defendant's Automatic Gate Systems in Illinois after December 13, 2014 and whose biometrics were retained after the initial purpose of Defendant's possession of their biometrics was satisfied according to Defendant's records.

37. Excluded from the Class and Subclass are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

38. There are at least tens of thousands of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder of all members is impracticable.

39. Plaintiffs' claims are typical of the claims of the Class and Subclass they seek to represent, because the basis of Defendant's liability to Plaintiffs and the Class and Subclass is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiffs and to the Class and Subclass.

40. There are many questions of law and fact common to the claims of Plaintiffs and the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include, but are not limited to, the following:

   a. Whether the Auto-Gate Systems collect, capture, or otherwise obtain biometrics;

   b. Whether Defendant obtained written consent from the Class before capturing, collecting, receiving through trade, or otherwise obtaining their biometrics;

   c. Whether Defendant obtained consent from the Class before disclosing, redisclosing, and/or disseminating their biometrics;

   d. Whether Defendant timely developed posted the publicly-available retention schedule with respect to its possession of truck drivers' biometrics.

   e. Whether Defendant destroyed biometrics of the Subclass when its initial purpose for collecting such information was satisfied;

   f. Whether Defendant's conduct violates BIPA;

   g. Whether Defendant's BIPA violations were willful or reckless; and

   h. Whether Plaintiffs and the Class are entitled to damages and injunctive relief.

41. Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy.

The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

42. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class and Subclass they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

43. Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

## COUNT I
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)**
**(On behalf of Plaintiffs and the Class and against Defendant)**

44. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

45. Defendant is a private entity under BIPA.

46. Defendant collects, captures, receives through trade, or otherwise obtains Plaintiffs' and Class members' fingerprint biometrics through its Auto-Gate Systems in Illinois.

47. Prior to first collecting, capturing, purchasing, receiving through trade, or otherwise obtaining Plaintiffs' and the Class members' biometrics, Defendant failed to inform Plaintiffs and the Class members: (1) that biometrics were being collected or stored; (2) the specific purpose for

9

which such biometrics were being collected, stored or used; and (3) the length of time for which such biometrics would be collected, stored or used. Each such failure constitutes a violation of 740 ILCS 14/15(b).

48. Defendant failed to receive informed written consent, and thus failed to obtain a written release, from Plaintiffs and the Class members prior to first collecting, capturing, purchasing, receiving through trade, or otherwise obtaining their biometrics, also in violation of 740 ILCS 14/15(b).

49. Defendant also captured, collected, received through trade, or otherwise obtained the biometrics of Plaintiffs and the Class members on each subsequent occasion they had their fingerprints scanned using Defendant's biometrically-enabled Auto-Gate Systems in Illinois.

50. Defendant thus violated Section 15(b) on each occasion that it captured, collected, received through trade, or otherwise obtained biometrics from Plaintiffs and the Class members in Illinois.

51. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of the BIPA.

52. Defendant has known it was violating BIPA since at least January 2019, if not earlier.

53. At some point in or around 2020, Defendant engaged in efforts to become compliant with some of BIPA's requirements.

54. Similarly, while Defendant ultimately sought to comply with the law by designing and implementing software changes to its biometrically-enabled Auto Gate Systems, such compliance efforts took many months, if not years, to be implemented. In the meantime, Defendant failed or refused to implement a paper-consent compliance regime. As a result, Defendant

knowingly, recklessly, and/or intentionally violated Section 15(b) of BIPA every time an individual's biometrics were collected, captured, received through trade, or otherwise obtained through one of its Illinois Auto Gate Systems.

55. Once Defendant's biometric consent regime was ready, it *still* continued to violate Section 15(b) by implementing its consent regime through a "soft-launch," which was not mandatory for drivers, who were still having their biometrics captured, collected, received through trade, or otherwise obtained at Defendant's Illinois facilities without their informed written consent.

56. Only after Plaintiff Fleury filed this suit did Defendant attempt to implement mandatory BIPA consent procedures.

57. Defendant's violations of BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements, which have been in place since 2008. Alternatively, Defendant negligently failed to comply with Section 15(b) of BIPA in the course of its conduct or omissions as set forth herein.

58. Accordingly, Plaintiffs, on behalf of themselves and the proposed Class, pray for the relief set forth below.

## COUNT II
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)**
**(On behalf of Plaintiffs and the Class and against Defendant)**

59. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

60. Defendant is a private entity under BIPA.

61. Defendant possesses and stores Plaintiffs' and the Class members' biometrics that are captured, collected, received through trade, or otherwise obtained through its Auto-Gate Systems in Illinois.

11

62. Thus, Defendant was obligated to develop and post a publicly-available biometric retention and destruction schedule in accordance with Section 15(a) of BIPA.

63. Defendant has known it was violating BIPA through the operation of its Auto-Gate Systems since at least January of 2019, if not earlier.

64. However, despite knowing it was not in compliance with BIPA, Defendant still failed to timely comply with Section 15(a)'s requirement that it develop and maintain a publicly-available biometric retention and destruction schedule.

65. Defendant thus violated Section 15(a) of BIPA with respect to Plaintiffs and the Class members.

66. Publishing such a policy on Defendant's website and/or at its Illinois locations (which were still collecting biometrics) would have taken very little effort and could have easily been accomplished within weeks of learning of BIPA, particularly for a company with Defendant's resources.

67. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of the BIPA.

68. Defendant's awareness of BIPA's requirements, and its failure to develop and post such a policy for many months, if not years, after becoming aware of the law, amounts to intentional or reckless violations of Section 15(a) of BIPA, which has been in effect since 2008. Alternatively, Defendant negligently failed to comply with Section 15(a) of BIPA in the course of its conduct or omissions as set forth herein.

## COUNT III
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)**
**(On behalf of Plaintiff Turner and the Subclass and against Defendant)**

69. Plaintiff Turner incorporates the foregoing allegations as if fully set forth herein.

70. Defendant is a private entity under BIPA.

71. During the relevant time period Defendant collected or obtained, and therefore came into possession of, Plaintiff Turner's and the Subclass's biometrics when they registered their fingerprints.

72. The initial purpose of collecting and obtaining Plaintiff Turner's and the Subclass's biometrics was to permit their entry for the purpose of picking up and/or dropping off their employers' freight.

73. Defendant was subsequently notified in near-real time when Plaintiff Turner and the Subclass members were no longer registered to haul freight on behalf of the employer associated with their biometric registrations.

74. However, despite being informed that the initial purpose for the biometric collection had been satisfied with respect to Plaintiff Turner and the Subclass, Defendant still retained their biometrics for months or years thereafter in violation of BIPA.

75. Defendant's failure to comply with BIPA Section 15(a)'s biometric destruction mandate was reckless and/or intentional because Defendant was aware of BIPA's biometric destruction mandate and nevertheless knowingly implemented procedures which it knew would result in the retention of biometrics of Plaintiff Turner and the Subclass for long after the initial purpose of their collection had been satisfied.

76. Alternatively, Defendant's illegal retention of Plaintiff Turner's and the Subclass's biometrics was negligent for the reasons outlined above.

77. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

## COUNT IV
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(d)
### (On behalf of Plaintiffs and the Class and against Defendant)

78. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

79. Defendant is a private entity under BIPA.

80. During the relevant time period, Defendant engaged multiple third-party technology providers to assist Defendant in installing, maintaining, operating and customizing its Auto-Gate Systems in Illinois.

81. Through these engagements, including after 2019, Defendant disclosed, redisclosed, and/or disseminated Plaintiffs' and the Class members' biometrics to these third-party technology providers without first gaining Plaintiffs' and the Class members' consent.

82. Defendant thus violated Section 15(d) of BIPA on each occasion that it disclosed, redisclosed, and/or disseminated Plaintiffs' and the Class members' biometrics which were collected, captured, received through trade, or otherwise obtained in Illinois.

83. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of the BIPA.

84. Given Defendant's awareness of BIPA's requirements, its disclosures, redisclosures, and/or disseminations after becoming aware of the law amounts to intentional or reckless violations of Section 15(d) of BIPA, which has been in effect since 2008. Alternatively, Defendant negligently failed to comply with Section 15(d) of BIPA in the course of its conduct or omissions as set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class and Subclass, respectfully request that this Court enter an Order:

a. Certifying the Class and Subclass as defined above, appointing Plaintiffs as Class representatives, Plaintiff Turner as Subclass representative, and the undersigned as class counsel;

b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Class and Subclass by requiring Defendant to comply with BIPA;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

f. Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: October 12, 2023

Respectfully Submitted,

DAVID FLEURY and ALVIN TURNER, individually and on behalf of a Class and Subclass of similarly situated individuals

By: /s/ David L. Gerbie
*One of Plaintiffs' Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner

15

Joseph Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com
jdunklin@mcgpc.com


Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

*Attorneys for Plaintiffs and the Putative Class and Subclass*