# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DAVID FLEURY and ALVIN TURNER, individually and on behalf of similarly situated individuals, | No. 20-cv-00390 |
| *Plaintiffs*, | Hon. LaShonda A. Hunt |
| v. | Magistrate Judge Jeffrey Cole |
| UNION PACIFIC RAILROAD COMPANY a Delaware corporation, | |
| *Defendant*. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND CLASS ALLEGATIONS

## I. INTRODUCTION

In this case brought under the Illinois Biometric Information Privacy Act ("BIPA"), Defendant's Motion to Amend Class Allegations ("Motion") asks the Court to perform a speculative constitutional analysis and preclude discovery regarding the total number of times it violated the law. Defendant knows that it has violated the law many times, and in a thinly-veiled attempt to avoid disclosing the extent of its illegal conduct, Defendant has jammed a constitutionality argument into the *discovery* stage, couching it as a "threshold issue" and arguing that a finding in Defendant's favor will render "per-scan" discovery unnecessary. Defendant's Motion should be seen for what it is: an attempt to preclude discovery on an obviously relevant issue in order to avoid providing the basis for a computation of its total potential liability. This argument should be rejected as premature and improper.

First, from a procedural perspective, even if/when per-scan data is produced, Plaintiffs are long way from *any* damages award at all. Regardless of how many violations Defendant has committed, there is no guarantee that *any* damages will be awarded to Plaintiffs and the Class, much less an *unconstitutional* damages award. Defendant is trying to have its cake and eat it too, arguing that BIPA damages should be completely discretionary (and maybe even $0 or some *de minimis* amount) while at the same time stonewalling discovery into the number of violations it has committed. Even if Defendant were correct (it is not) the appropriate remedy for unconstitutionally excessive damages is not a ban on the discovery that determined the factual basis for the award. Rather, the appropriate remedy for an unconstitutional award is—as demonstrated by Defendant's own cited cases—a downward adjustment of that award. In contrast, granting Defendant its requested relief will prejudice Plaintiffs because they will artificially be

1

barred from discovery into the damages authorized by BIPA and thus unable to argue at trial for the maximum amount of damages within the limits of due process.

Aside from being premature, the entire premise for Defendant's Motion is moot because discovery into how many times Defendant violated BIPA with respect to the putative Class and Subclass is independently relevant *outside* of the damages context. Defendant's own Motion and its Answer and Affirmative Defenses demonstrate this. Accordingly, and pursuant to established doctrines of judicial restraint, the Court should not reach Defendant's constitutionality argument.

But even if the Court does decide to reach the merits of Defendant's constitutionality argument, the Court will find no such merit. Indeed, Defendant cites a series of oddball authorities including dissents, unresolved briefing on class certification motions, uphill briefing on motions to reconsider, and references to inapplicable out-of-circuit decisions. Defendant has no choice but to cite such "authority" because the relevant, appropriate authority on this issue is squarely in Plaintiffs' favor. Moreover, as set forth below, Defendant's requested relief contradicts the plain language of BIPA and is internally inconsistent. Defendant's Motion should be denied in its entirety, and Defendant should be ordered to produce the per-scan discovery.

## II.     LEGAL STANDARD

Rule 26 broadly permits parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1).

## III.    ARGUMENT

### A.     Per-scan Discovery is Independently Relevant to Issues Aside from Damages so Defendant's Constitutionality Argument Should not be Reached.

The Court should not reach Defendant's constitutionality argument because discovery into the total number of BIPA violations is independently relevant to merits issues outside of the damages context such that discovery relating to the total number of times the putative Class were

scanned (and had their biometrics captured) is warranted no matter how or when the Court decides the constitutionality issue. The Supreme Court has long held that district courts, including those sitting in diversity and applying state substantive law, should refrain from weighing in on constitutional issues in a speculative or advisory capacity. *See County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 154 (1979) (courts have a "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration"); *Matal v. Tam*, 582 U.S. 218, 230-31 (2017) ("We have often stressed that it is important to avoid the premature adjudication of constitutional questions") (cleaned up); *Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable"); *United States v. Kaluna*, 192 F.3d 1188, 1197 (9th Cir. 1999) (en banc) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision. This is a fundamental rule of judicial restraint") (quoting *Jean v. Nelson*, 472 U.S. 846, 854 (1985)) (internal quotation marks omitted).

From a merits perspective, Defendant claims that Plaintiffs' repeated use of its Automatic Gate Systems constitutes implied "consent" under BIPA. (Mot. at 1; Dkt. 131, Answer and Affirmative Defenses at 13-14.) Defendant has often stressed this defense, asserting it at the pleading stage, in each answer it has filed, in multiple other filings, and has sought to develop this defense in oral discovery. (Dkts. 36 at 19-20; 64 at 13-14; 131 at 13-14; Mot. at 1.) While this defense is facially at odds with the text of BIPA (which requires *informed written* consent) it is a defense that Defendant has continued to assert, and Plaintiffs are entitled to investigate its merit in discovery, just as Defendant has. 740 ILCS 14/15(b). The total number of times that truck drivers

scanned their fingers is certainly relevant to this defense—as evidenced by Defendant's numerous citations to Plaintiffs' "repeated use" of their Automatic Gate Systems as evidence of supposed implied consent. *Id.* The same goes for Defendant's numerous similar Affirmative Defenses, such as: release, waiver, ratification, acquiescence, unclean hands, and primary assumption of the risk. (Dkt. 131 at 13-14.) These defenses similarly revolve around Plaintiffs' and the putative Class and Subclass Members' repeated use of the biometric Automatic Gate Systems and have been asserted in each of Defendant's Answers. (Dkts. 64, 131.) Accordingly, per-scan evidence relating to the number of times that putative class members used the Automatic Gate System is independently relevant to Defendant's Affirmative Defenses and is discoverable. Fed. R. Civ. P. 26(b)(1).

The entire premise of Defendant's Motion (that the Court must first decide a "threshold" constitutional issue because its resolution will render per-scan discovery irrelevant) is thus moot. (Mot. at 3.) The Court should deny Defendant's Motion in its entirety on this basis rather than needlessly reach constitutional issues.

### B. The Relief Defendant Requests is not Appropriately Sought Under the Cases and Rules Defendant Cites.

Defendant's Motion lacks a legal standard section—perhaps because Defendant's requested relief is not available under Defendant's cited authorities. Defendant's airy invocations of the Court's general power to control discovery and ensure that litigation proceeds in an efficient manner do not provide the Court with sufficient basis to conduct a speculative constitutional analysis during discovery. (Mot. at 4, quoting Fed. R. Civ. P. 1 and 23(d).) The cases Defendant cites similarly provide no basis to engage in this premature constitutional analysis.

For example, Defendant cites a handful of rulings wherein class allegations were completely struck on the basis that the case could not be maintained as a class action. (Mot. at 4, citing *Cholly v. Uptain Group, Inc.,* 2017 WL 449176 (N.D. Ill.); *Garvey v. Am. Bankers Ins. Co.*

4

*of Fla.*, 2019 WL 2076288 (N.D. Ill.); *Pumputiena v. Deutsche Lufthansa, AG,* 2017 WL 66823 (N.D. Ill. Jan.); *Cowen v. Lenny & Larry's, Inc.,* 2017 WL 4572201 (N.D. Ill.)) These cases are examples of proper uses of Rule 23(d), which applies when class treatment is facially inappropriate. By contrast, Defendant does not ask that Plaintiffs' class claims be struck entirely here, nor does Defendant argue that Plaintiffs cannot maintain a class action.[1] (*See* Mot. at 14-15.) Defendant's authorities are simply inapposite, and notably contain no constitutional analysis at all.

Defendant also cites irrelevant case law concerning bifurcated proceedings where courts directed discovery related to threshold merits issues, such as standing, to proceed in advance of class discovery. (Mot. at 5, citing *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.,* 2018 WL 347444 (N.D. Ill. July 19, 2018); *Lauren v. PNC Bank, N.A.,* 296 F.R.D. 389 (W.D. Pa. 2014); *Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003)). No bifurcation or modification of discovery has been sought, ordered or would be appropriate here because there are no threshold merits issues (such as standing) to resolve. These cases, which demonstrate district courts' ability to delay class discovery where there are threshold *merits* concerns that may obviate class discovery altogether, do not demonstrate that the Court can perform a speculative and hypothetical constitutional analysis during discovery.

Defendant's premature Motion is a rather transparent attempt to limit discovery that would disclose how many violations it has committed. Damages are, naturally, one of the last issues to be resolved in any given case. Yet Defendant is asking the Court to make a substantive legal ruling (on constitutional grounds no less) during discovery and prior to any damages being sought by

---

[1] Though Defendant says in passing that Plaintiffs' putative classes are uncertifiable, Defendant does not develop this argument or even identify *how* Plaintiffs' putative classes might be uncertifiable. (Mot. at 13.) Nor does Defendant request that the Court completely strike Plaintiffs' class claims—just that the Court amend them. That sort of "argument consist[ing] of a single sentence" is "underdeveloped" and "constitutes waiver." *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004).

5

motion, before a class has been certified, and prior to trial. Defendant's branding of its constitutionality argument as a "threshold procedural issue" does not make it one. Defendant makes no attempt to explain how a constitutional argument surrounding damages can be "procedural," let alone how it can be procedurally appropriate to address theoretical damages concerns during discovery—prior to knowing how many violations Defendant has committed and what damages Plaintiffs are actually seeking. (Mot. at 13-14.) The decisions Defendant cites, which apply to threshold merits issues such as standing and facial pleadings issues that make class treatment under Rule 23 impossible, are not analogous or instructive here.

      **C.    Pursuant to the Plain Language of the Statute and *Cothron*, Per-Scan Discovery is Relevant to Determine Damages.**

Even if Defendant's constitutional arguments were ripe, they are without merit. *Cothron* provides that a separate BIPA violation occurs upon each illegal scan or transmission of an individual's biometrics. *Cothron v. White Castle Sys., Inc.,* No. 2023 IL 128004 ¶¶ 1, 23-24. Because BIPA provides liquidated damages "for each violation" of the statute, Plaintiffs have requested evidence of each time putative Class members entered through Defendant's Auto-Gate Systems in Illinois and had their fingerprints scanned in order to establish how many violations occurred and, thus, the extent of potential statutory damages available. *Id.*; 740 ILCS 14/20.

Defendant's argument that *Cothron* was limited to claim accrual (Mot. at 11) does not survive even a casual reading of the Illinois Supreme Court's opinion in the case. *Cothron* discusses at length the implications of multiple claim accrual with respect to damages, including the reduction of potentially unconstitutional awards. No. 2023 IL 128004 ¶¶ 40-42.[2] Defendant's forced distinction between claim accrual and damages does not contain a difference, especially

---

[2] Nowhere in *Cothron* does the Illinois Supreme Court imply that this constitutional analysis can be appropriately conducted during discovery and prior to the Parties and the Court having any idea of the full extent of Defendant's liability.

given *Cothron's* references to multiple accruals as separate "violations"—a word that is used expressly in BIPA, which provides liquidated damages "for each violation." *Id.* ¶ 30; 740 ILCS 14/20. Thus, in *Cothron,* the Illinois Supreme Court clearly considered the implications of its holding to damages and it did so through the lens of its constant requirement to interpret statutes (which are presumed constitutional) in a manner that preserves such constitutionality. *People v. Hollins*, 2012 IL 112754, ¶ 13, 971 N.E.2d 504, 508. Defendant provides no legal reasoning for why a "violation" that results in a separate BIPA claim accruing would somehow not be a "violation" warranting statutory or actual damages "whichever is greater." 740 ILCS 14/20. The dissents Defendant cites are *not* law and should not be confused with "holdings" as they are in Defendant's Motion. (Mot. at 7.) Rather, the dissents necessarily constitute language and opinions that were not shared by the majority and are not binding. After all, "comments in [a] dissenting opinion" about legal principles and precedents "are just that: comments in a dissenting opinion." *Georgia v. Public.Resource.Org, Inc.,* 140 S. Ct. 1498, 1511 (2020). In fact, the *Cothron* appellant raised Defendant's constitutionality concerns in its petition for rehearing—which was denied.

With this in mind, and pursuant to the axiom that the Federal Rules permit broad-ranging discovery, Plaintiffs simply seek to discover and quantify Defendant's BIPA violations. Defendant claims that it was not on sufficient notice such that the quantification of its total BIPA violations is unfair. (Mot. at 10.) Defendant is wrong. The basis for this quantification has been in plain English since 2008 and has been repeatedly affirmed since then. *Cothron v. White Castle Sys., Inc.,* 477 F. Supp. 3d 723, 732 (N.D. Ill. 2020), aff'd, 79 F.4th 894 (7th Cir. 2023) ("A party violates Section 15(b) when it collects, captures, or otherwise obtains a person's biometric information without prior informed consent. This is true the first time an entity scans a fingerprint or otherwise collects biometric information, but it is no less true with each subsequent scan or collection");

7

*Rogers v. BNSF Railway Co.,* No. 19 C 3083, 2022 WL 787955, at *8 (N.D. Ill. Mar. 15, 2022) ("At bottom, the plain language of the statute controls. The clock for Rogers's BIPA claims resets upon each violation, meaning his claim in the present case is timely, as BNSF is claimed to have continued to scan his fingerprints dozens of times within the five years preceding this suit"); *Cothron,* No. 2023 IL 128004 ¶¶ 1, 23-24. Thus, for Defendant to be able to ascertain the extent of its liability, and as suggested by Judge Cole, Defendant need only "read the statute, read the statute, read the statute." Dkt. 174 at 9-10, citing Henry J. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes, Benchmarks* 196, 202 (1967).

Perhaps more revealing of Defendant's objective awareness as to the propriety of per-scan damages are Defendant's own filings in this case. In Defendant's <u>very first filing</u> here, its Notice of Removal, Defendant calculated the amount in controversy using a per-scan theory of damages. Dkt. 1 at 11-12 ("Union Pacific's records indicate that David Fleury used the complained-of clock at least 45 times. Because Plaintiff seeks up to $5,000 per violation, the amount in controversy is $225,000, not including attorney's fees or any other relief sought") (internal citation omitted); *see also* Dkt. 36, Defendant's Motion to Dismiss at 20 ("It appears from Plaintiff's complaint that he asserts a claim for each time he scanned his finger at a Union Pacific facility in Illinois.")

Defendant's feigned "notice" concerns fall particularly flat here, where Defendant's own lawyers pressed and lost the *Cothron* appeal, arguing the entire time that multi-claim accrual could lead to large damages awards. *See Cothron* Defendant-Appellant Brief (filed 3.3.2022) at 44 ("If Plaintiff were to succeed in proving her claims at trial, that could result in damages between $1.8 million and $9 million for Plaintiff alone despite the fact that Plaintiff has not alleged a data breach or any costs associate with identity theft or compromised data . . . Multiplying $1.8 million by 9,500 class members, class-wide damages could equate to $17.1 billion or more.") The mere fact

that finality from the Illinois Supreme Court in *Cothron* did not come until February 2023 does not mean that Defendant lacked notice here – particularly in light of its filings setting forth its own per-scan liability as a basis for this Court's jurisdiction. (Dkt. 1 at 11-12.)

### D.     Per-scan Damages do not Render a Class Uncertifiable.

Settled law establishes that individual damages issues do not prevent class certification. *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 815 (7th Cir. 2012); *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill.App.3d 538 at 549 ("[i]ndividual questions of injury and damages do not defeat class certification.") Thus, the potential for individualized damages in this case based on per-scan discovery does not affect the certifiability of the putative classes. Defendant makes no justification for why per-scan damages might necessitate a departure from the general rule, and only loosely claims that the putative classes are "uncertifiable," without supporting this argument with logic, case law where a court found BIPA claims uncertifiable, reference to any part of Rule 23, or even asking the Court to strike Plaintiffs' class allegations. (Mot. at 13.)

In its Motion, Defendant claims that other courts in this District are "grappling with the constitutionality issues that plague a request for class-wide application of per-scan damages post-*Cothron.*" (Mot. at 12.) But even if that were true, it would be no reason for this Court to address the issue *now*—well before Plaintiffs have even moved for class certification. The *Svoboda* and *Tapai-Rendon* cases Defendant cites are distinguishable from the instant case on this basis; they are at the class certification stage. *Svoboda v. Amazon.com, Inc.*, No. 21-05336, (N.D. Ill.); *Tapia-Rendon* v. *Easyworkforce Software, LLC,* No. 21-3400, (N.D. Ill.). By contrast, the Parties here just obtained a 120-day extension of fact discovery, which will be followed by expert discovery.

Defendant's citations to briefing on a motion to reconsider in *Tapia-Rendon* are particularly unpersuasive, as motions to reconsider are rarely granted and Judge Kennelly recently

9

rejected the defendant's *Cothron*-based class certification arguments. *Tapia-Rendon,* No. 21-3400, Dkt. 167 at 11-15. Using the per-scan discovery at issue in Plaintiffs' Motion to Compel (Dkt. 201), Plaintiffs seek to provide Defendant a mathematical computation of the recovery that Plaintiffs may (not must) ultimately seek. (Mot. at 9.) The Court should wait until there is a full record before wading into issues that are only appropriate at subsequent stages of litigation.

### E. Per-scan Discovery will not Necessarily Result in an Unconstitutionally Large Damages Award.

Defendant asserts that per-scan discovery should be banned because it will necessarily result in an unconstitutionally large damages award. (Mot. at 13) ("Were the Court to permit Plaintiffs to proceed with a class action seeking "per scan" damages, it would ensure an unconstitutional outcome given the multiple hundreds of thousands of scans, if not over one million scans, at issue in this case.") But that is not true. And even if it were, Defendant should not get to avoid otherwise relevant and reasonable discovery just because it fears what it might reveal.

Expert discovery in this case will confirm what everyone already knows to be fact—that Defendant (an extremely profitable and wealthy company) can easily withstand a large damages award. Union Pacific is one of the largest and oldest railroads in existence and operates in a tightly held and only semi-competitive industry. However, there is, of course, a limit. Plaintiffs anticipate engaging a damages expert to review Defendant's SEC filings and opine on Defendant's present and future capacity to withstand a damages award. As Defendant's Motion necessarily concedes, the damages award here is the province of the jury, not the Court—and certainly not at the discovery stage. (Mot. at 6-7.) The jury will have the discretion, after Plaintiffs have demonstrated both Defendant's maximum legal exposure and its ability to withstand a judgment, to make an appropriate damages award. This sort of right-sizing a damages award so as to be substantial but not annihilative was expressly considered in the Illinois Supreme Court's *Cothron* decision and is

also reflective of its *Rosenbach* decision. No. 2023 IL 128004 ¶¶ 40-42; *Rosenbach v. Six Flags Entertainment Corp.,* No. 123186 ("The second [way the General Assembly achieves its goal] is by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses 'for each violation' of the law whether or not actual damages, beyond violation of the law's provisions, can be shown") (internal citation omitted).

After an award is issued, the Court can then of course appropriately review that award at Defendant's request. Discovery (even per-scan discovery that could *theoretically* lead to an unconstitutional damages award) is not unconstitutional in and of itself. And the specter of a potentially large damages award is certainly not sufficient justification to sweep relevant and damaging evidence under the rug.

### F. The Remedy for an Unconstitutional Damages Award is not a Preemptive Ban on Discovery that Might Lead to the Award.

The remedy for an unconstitutional damages award is simply a lowering of the award—it is not a ban on damaging discovery. Large aggregate statutory damages awards are not unique to BIPA; they occur under other statutes as well. *See, e.g., United States v. Dish Network L.L.C.,* 954 F.3d 970, 979–80 (7th Cir. 2020) (analyzing an aggregate statutory damages award under the TCPA)*; Wakefield v. ViSalus, Inc.,* 51 F.4th 1109, 1112 (9th Cir. 2022), cert. denied, 143 S. Ct. 1756, (2023) (same).

In these instances, analysis of the constitutionality of an aggregate damages award does not occur during discovery where such analysis would be completely theoretical; it occurs only <u>after</u> any such award is determined.[3] As demonstrated by Defendant's Motion, which assumes that

---

[3] Defendant's own cited authorities expose its Motion as premature, as all concern analyses of damages awards *after* the award was issued. (Mot. at 8, citing *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd*., 980 F.3d 1117, 1142 (7th Cir. 2020); *Wakefield v. ViSalus, Inc.,* 51 F.4th 1109, 1120 (9th Cir. 2022)).

11

a class of 41,000 individuals has been certified and then pulls per-scan estimates from thin air, it is inherently speculative to analyze a *potential* aggregate award during discovery. (Mot. at 1, 3-4.) In analyzing and *affirming* an aggregate damages award under the TCPA in *United States v. Dish Network, LLC*, the Seventh Circuit recently found that "[l]egislatures have 'a wide latitude of discretion' to set civil penalties. Someone whose maximum penalty reaches the mesosphere only because the number of violations reaches the stratosphere can't complain about the consequences of its own extensive misconduct." 954 F.3d 970, 979–80 (7th Cir. 2020) quoting *St. Louis, Iron Mountain & Southern Ry. v. Williams*, 251 U.S. 63, 66, (1919). The Court should not permit Defendant to dodge damaging discovery on the basis that the end result might be costly to Defendant due to Defendant's own misconduct. Defendant is free to raise issues with a damages award at the appropriate time.

Indeed, analysis of the constitutionality of an aggregate damages award should not even occur at the class certification stage, let alone during discovery. *See Bateman v. American Multi-Cinema, Inc*. 623 F.3d 708, 723 (9th Cir. 2010) (evaluation of a potential statutory damages award at class certification is "unduly speculative" "[b]ecause we do not know what amount of damages [plaintiff] will seek nor how many individuals will ultimately claim the benefit of any damages awarded should plaintiffs prevail"); *Parker v. Time Warner Ent. Co., L.P.,* 331 F.3d 13, 22 (2d Cir. 2003) (noting that in a class action in which statutory damages are awarded as a matter of strict liability, "the due process clause might be invoked, <u>not to prevent certification</u>, but to nullify [a distortedly high award of statutory damages] and reduce the aggregate damage award" in a "sufficiently serious case") (emphasis added). Defendant has not offered a shred of case law suggesting that it is appropriate at this stage of the case to speculate regarding the constitutionality

of a yet-to-be-awarded aggregate statutory award with respect to yet-to-be-certified putative classes based on yet-to-be-discovered facts.

### G. Defendant's Requested Relief Contradicts the Statute.

In conclusory fashion, Defendant asks the Court to amend Plaintiffs' Complaint so that paragraphs (d) and (e) of the Prayer for Relief seek statutory damages of "up to" the stated amounts for "each … initial violation of BIPA," as opposed to "each … violation of BIPA." (Mot. at Conclusion.) This "up to" language, which implies that damages can be awarded in a fluid range from $0 - $5,000, is not in the statute. 740 ILCS 14/20. Moreover, the idea that damages can be awarded in a range is inconsistent with BIPA's use of the term "liquidated damages," which has an established legal meaning as a fixed amount. *Karimi v. 401 N. Wabash Venture, LLC*, 2011 IL App 102670, ¶16, 952 N.E.2d 1278, 1290 ("The nature of a liquidated damages provision is such that the set amount may at times exceed actual damages, and other times actual damages may exceed the set amount"); *Int'l Capital Corp. v. Mayer,* 347 Ill. App. 3d 116, 124, 806 N.E.2d 1166, 1172 (2004) ("Moreover, 'liquidated damages' means 'an amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches'") (quoting Black's Law Dictionary 395 (7th ed. 1999)).

Other Courts have rejected attempts to read this "up to" language into the statute. *Rogers v. BNSF Railway Co.,* No. 19-cv-03083, 2023 WL 4297654, at *8 (N.D. Ill. June 30, 2023) ("The statute does not include the words "up to" or any other language suggesting that the Illinois legislature intended damages to be a range. Rather, it states that a prevailing party may recover the greater of actual damages or "liquidated damages *of*" $1,000 or $5,000") (emphasis in original).[4]

---

[4] These issues were briefed just prior to trial in the *Rogers* case—after class certification and summary judgement. *Rogers,* No. 19-cv-03083, Dkts. 272, 273. The Court should decline to prematurely address these issues here.

Rather than reading a range into the statute where there is none, the Court should decide this issue according to the Illinois Supreme Court's and Illinois Appellate Court's established pattern of analyzing BIPA. *Straits Financial LLC v. Ten Sleep Cattle Co.,* 900 F.3d 359, 369 (7th Cir. 2018) ("[I]f a question of law has not yet been decided by that court, we are to make a prediction of how the Supreme Court of [the state] would rule on it....") (internal quotation *1146 marks omitted). In its seminal *Rosenbach* decision, the Illinois Supreme Court construed BIPA's damages provision by comparing it to the nearly identical damages provision in the Illinois AIDS Confidentiality Act, 410 ILCS 305/1 *et seq,* citing the Illinois Appellate Court's decision in *Doe v. Chand.* 335 Ill. App. 3d 809, 822 (2002). In *Do*e *v. Chand*, the Illinois Appellate Court concluded that: "[T]he [AIDS Confidentiality] Act provides that a person may recover liquidated damages in the amount of $1,000 for negligent violations of the Act and $5,000 for intentional or reckless violations. Such amounts can be recovered without proof of damages. Our legislature further provided that a plaintiff could recover actual damages if such damages exceeded the amounts provided for in section 13." *Id.*at 822. Accordingly, the Illinois Appellate Court, in interpreting a right of action section nearly identical to BIPA's, did not find that such damages could be awarded in a completely discretionary range. *Id*.[5] *See also Sekura v. Krishna Schaumburg Tan, Inc.,* 2018 IL App (1st) 180175, ¶ 69 (holding "[BIPA] provides for either 'liquidated damages' or 'actual damages,' thereby establishing that actual damages are not required to obtain relief under the Act.") *Id.* ¶ 51 (emphasis added). This either/or language similarly does not support the range idea that Defendant has read into *Cothron.* Accordingly, to the extent that the Court reaches this issue, it is clear that Defendant's interpretation of BIPA is conflicts with BIPA's text.

---

[5] Though the *Chand* court reversed and remanded, it did so on the basis that the trial court did not specify "what the[] violations were, how many there were, or which violations were negligent and which were intentional or reckless." 335 Ill. App. 3d at 822. There was no remand for determination of the appropriate amount of an award pursuant to a range of damages. *Id.* This Court should also permit Plaintiffs to find out how many violations have occurred here.

### H. Defendant's Requested Relief Contradicts Itself.

Defendant's requested relief is also internally inconsistent. As set forth in Section G above, Defendant asks that the Court edit Plaintiffs' Complaint in accordance with Defendant's position that the jury can set the value for each violation at any number between $0 - $1,000 for a negligent violation and between $0 - $5,000 for a reckless violation. But if the jury can award, say, $1.00 for each BIPA violation, then per-scan discovery would certainly *not* bring about an unconstitutional result. Defendant does not contend with this contradiction at all in its Motion or justify why the Court must both edit Plaintiffs' Complaint in accordance with Defendant's position that damages should be awarded according to a fluid monetary range between $0 and $5,000 and ban per-scan discovery at the same time. Defendant's requested relief is internally inconsistent.

### I. Defendant's Requested Relief Would Prejudice Plaintiffs.

If the Court bars discovery into the number of total violations of BIPA, Plaintiffs would be prejudiced with respect to their right to achieve the highest constitutional damages award. And just as a jury should certainly be able to know the number violations of law in issuing a damages award, the Court should know how many violations have occurred in the event it is asked to review that award. The only way to ensure that all relevant facts are available pretrial, during trial and post-trial is to ensure that per-scan discovery occurs now.

## IV. CONCLUSION

During the Parties' October 12, 2023 hearing, the Court instructed the Parties to tone down the excessive motion practice, denied Defendant's request for a pre-trial conference, and emphasized to Defendant that Judge Cole would be deciding discovery disputes. Yet only three days later, Defendant filed its Motion which is premature, legally unfounded, but unfortunately unsurprising. Defendant's Motion should be denied in its entirety and Defendant should be ordered

to produce per-scan discovery. Defendant should not be given an opportunity to re-brief Plaintiffs' Motion to Compel Damages Data and thereby start that process anew in the most inefficient manner possible.

Dated: November 6, 2023

Respectfully submitted, DAVID FLEURY and ALVIN TURNER individually and on behalf of a class of similarly situated individuals,

By: /s/          *Brendan Duffner*
*One of Plaintiffs' Attorneys*

Evan M. Meyers
David L. Gerbie
Brendan Duffner
Joseph Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

# CERTIFICATE OF SERVICE

I hereby certify that, on November 6, 2023, I caused the foregoing Plaintiffs' Opposition to Defendant's Motion to Amend Class Allegations to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Brendan Duffner*