IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DAVID FLEURY and ALVIN TURNER, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-cv-00390 |
| v. | ) ) | Hon. LaShonda A. Hunt |
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, | ) ) ) ) | Magistrate Jeffrey Cole |
| Defendant. | ) ) | |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TO DEEM PLAINTIFFS' REQUEST FOR ADMISSION NO. 4 ADMITTED**

Plaintiffs David Fleury and Alvin Turner ("Plaintiffs"), through the undersigned and pursuant to Fed. R. Civ. P. 26, 34, 36, 37 and L.R. 37.2, move for entry of an Order: (1) compelling Defendant to produce documents it has shared with Remprex and Nascent, its third-party service providers; (2) compelling Defendant to produce documents improperly withheld on grounds of attorney-client privilege and/or the attorney work product doctrine; (3) deeming Plaintiffs' Request for Admission No. 4 admitted; and (4) awarding Plaintiffs their fees and costs associated with bringing the instant Motion. In support of their Motion, Plaintiffs state as follows:

**I.      INTRODUCTION AND BACKGROUND**

This case is a putative class action for violations of the Biometric Information Privacy Act, 740 ILCS 14/ *et seq.* ("BIPA"), by a national railroad, Union Pacific Railroad Company ("Union Pacific" or "Defendant"), stemming from its illegal collection and retention of truck drivers' biometric identifiers and biometric information at Defendant's railyards in Illinois.[1] During the

---

[1] Biometric identifiers and biometric information are collectively referred to herein as "biometrics."

class period, Defendant required truck drivers to register their fingerprints with Defendant's Automatic Gate System ("AGS") so Defendant could identify them upon subsequent visits via their fingerprints. Defendant's Automatic Gate System consists of hardware (fingerprint readers, kiosks, computers, servers, etc.) and software that runs on the hardware and connects it together.

**A. Correspondence with Remprex and Nascent**

Defendant purchased and licensed its Automatic Gate System (AGS) from two third parties: Nascent Technology, LLC and Remprex, LLC. As a general matter, Nascent licensed the AGS software to Union Pacific, and Remprex sold the AGS hardware to Union Pacific. After knowingly violating BIPA and then being sued for it, Defendant eventually attempted to comply. In discovery, Plaintiffs have sought from Defendant documents created during and around this period of Defendant's knowing noncompliance, which are directly relevant to Plaintiffs' claims.

Indeed, at summary judgment and at trial, Plaintiffs intend to argue that Defendant intentionally, or at least recklessly, violated BIPA. *See* 740 ILCS 14/20 (differentiating between negligent and reckless/intentional BIPA violations and applying a 5x damages multiplier to the latter). Accordingly, Plaintiffs have sought documents and communications between Defendant and its third-party service providers, including those created post-suit.[2] Plaintiffs have requested:

**DOCUMENT REQUEST NO. 29**

> **All Correspondence and Communications with counsel for Remprex, LLC or counsel for Nascent Technology, LLC which Relate to the above-captioned litigation.**

In response to Plaintiffs' third-party subpoenas, Nascent and Remprex have identified various documents which were exchanged with Defendant on their Fed. R. Civ. P. 45 privilege logs.[3] Thus, Plaintiffs know that Defendant is in possession of such documents. In a misguided

---

[2] Defendant's Responses to Plaintiffs' Second Set of Requests for Production are attached hereto as Exhibit A.

[3] Nascent's and Remprex's (very thin and noncompliant) privilege logs are attached hereto as Exhibit B.

attempt to avoid producing these documents, which have obviously been shared with third parties Remprex and Nascent, Defendant has taken the position that these documents are privileged. But it is black letter law that documents shared with third parties are not privileged. In an attempt to get around this, Defendant claims that the documents are protected under the common interest privilege and has refused to produce <u>or even identify them on its own privilege log.</u>

Defendant's position is wrong for two reasons. First, Defendant's refusal to even list *any* of the withheld documents shared with Nascent and Remprex on its privilege log is in knowing contravention of Rule 26(b)(5)(A)(ii).[4] The Court should order production of these documents (and award fees) on this basis alone. But Defendant is also wrong on the merits. The common interest privilege does not shield Defendant's communications with its service providers because these entities' legal interests are *adverse*, not identical, as is required to find common interest privilege.

### B. <u>Documents Improperly Withheld on Grounds of Traditional Privilege</u>

Defendant has also listed a number of documents on its privilege log which Defendant is improperly withholding pursuant to claims of traditional attorney-client privilege and/or work product protection. Specifically, Defendant is withholding numerous documents that were shared with other third parties or were prepared well before this litigation began and in the ordinary course of business. Such documents are not privileged or exempt from production and must be produced.

### C. <u>Improper Response to Request to Admit No. 4</u>

Lastly, Defendant has reneged on its agreement to provide an amended response to Plaintiffs' Request for Admission No. 4.[5] Plaintiffs' Request for Admission No. 4 reads:

> **Admit that you did not obtain Plaintiff David Fleury's informed written consent to collect his Biometrics prior to the first occasion he underwent the AGS Driver Registration Process at one of Your Illinois facilities.**

---

[4] Defendant's third amended privilege log is attached hereto as <u>Exhibit C.</u>
[5] Defendant's Responses to Plaintiffs' First Requests for Admission are attached hereto as <u>Exhibit D.</u>

3

Defendant's Response states:

> **RESPONSE: Union Pacific objects to this Request to the extent it is based on an assumption or implies that consent was required, that consent cannot be obtained electronically consistent with the Illinois Uniform Electronic Transactions Act (IUETA), 815 ILCS 333/2(8), or that Union Pacific collects Biometrics. Such assumptions or implications are denied. Union Pacific further objects to the defined term "AGS Driver Registration Process" as defined by Plaintiffs as confusing, vague, and ambiguous, and it will be assumed to have its common meaning. Subject to and without waiving the foregoing objections, denied that Union Pacific did not obtain Plaintiff's informed consent, including implied and actual consent via the driver enrollment process. Any remaining assertions are denied.**

Defendant's Response plainly does not comport with Fed. R. Civ. P. 36(a)(4)'s requirement to "fairly respond to the substance of the matter [of the request]" because it ignores and avoids the words "informed written" and "prior to the first occasion." The Court should deem this Request "admitted" because Plaintiffs have given Defendant every opportunity to amend its response.

Accordingly, the Court should enter an Order granting the relief set forth in the Conclusion.

## II. LEGAL STANDARD

Rule 26 permits discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "Compliance with Rule 26(b)(5)(A) is not optional." *Rossman v. EN Engineering, LLC,* 335 F.R.D. 171, 172–73 (N.D. Ill., 2020) (Cole, J.).

The Seventh Circuit has stressed that "privilege is in derogation of the search for the truth and, therefore, must be strictly confined." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). Knowing disclosure to a third party almost invariably surrenders the privilege. *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 237 (N.D. Ill., 2014) (Cole, J.) citing *United States v. Nobles*, 422 U.S. 225, 239 (1975); *United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 2013). Simply copying a lawyer on an otherwise nonprivileged communication will not transform the non-privileged document into a privileged one. *McCullough*, 304 F.R.D. 232, at 237.

4

On finding that an answer to a request for admission does not comply with Rule 36, the court may order either that the matter is admitted or that an amended answer be served. Fed. R. Civ. P. 36(a)(6). A party "can either prepare a privilege log or waive any claim of privilege." *Mosley v. City of Chicago*, 252 F.R.D. 445, 449 (N.D. Ill. 2008) (Cole, J.). If a motion to compel under Rule 37(a) "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

### III.    ARGUMENT

**A.    The Court Should Compel Production of all Documents Being Withheld on the Basis of the Common Interest Privilege Because Defendant has Improperly Refused to List Such Documents on its Privilege Log.**

Defendant's refusal to even *identify* the withheld documents on its privilege log makes the Court's decision whether to require their production very simple. Rule 26(b)(5)(A)(ii) requires that when a party withholds discovery on the basis of privilege, it must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." "Compliance with Rule 26(b)(5)(A) is not optional." *Rossman,* 335 F.R.D. at 172–73 citing *Motorola Sols., Inc. v. Hytera Commc'ns Corp.,* 2018 WL 1281393, at *2 (N.D. Ill. 2018). "Failure to comply often results in a waiver of the attorney-client privilege." *Id.* citing *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005) ("'To withhold materials without such notice is contrary to the rule, subjects the party to

5

sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection'") (quoting Rule 26(b)(5) Advisory Committee's note (1993 Amendments)).

As set forth in Plaintiffs' L.R. 37.2 Certification, Defendant has produced three versions of its privilege log as a result of the Parties' extensive meet-and-confers. None identifies *any* documents Defendant is withholding on the basis of the common interest privilege. Importantly, after Plaintiffs flagged this issue following Defendant's production of its first privilege log and provided Defendant the rule requiring mandatory compliance with Rule 26, Defendant initially agreed to identify these withheld documents on its then-forthcoming second privilege log. But Defendant reneged on this agreement. (Plaintiffs' Oct. 2, 2023 Letter to Defendant, attached hereto as Exhibit E; Correspondence attached hereto Exhibit F, at Nov. 1-4 2023 telephonic meet-and-confer follow-up emails, Dec. 13, 2023 email.) Defendant's refusal to identify withheld documents violates both Rule 26 and the Court's Case Procedures. Fed. R. Civ. P. 26(b)(5)(A)(ii).

The Seventh Circuit has stressed that "privilege is in derogation of the search for the truth and, therefore, must be strictly confined." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). The common interest doctrine, even if it applied here, would thus not protect all documents in a blanket fashion. Unless the party asserting the "common interest" establishes that the withheld documents are otherwise privileged, the "common interest" doctrine does not come into play. *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 240 (N.D. Ill., 2014); *see also Motorola Sols., Inc.*, 17 C 1973, 2018 WL 1804350, at *4 (N.D. Ill. Apr. 17, 2018) ("Whether the privilege exists is a fact intensive inquiry . . . and cannot be solved by simply looking to the identity of the sender or recipient of the communication.") "[T]o be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest." *McCullough,* at 239, citing *In re Teleglobe Communications Corp.,* 493

6

F.3d at 364. (emphasis in original) Sharing a privileged communication directly with a member of the community of interest may destroy the privilege. *Id*. For the common interest doctrine to apply, the person with whom the privileged information is shared with must have an identical—not merely similar—legal interest in the subject matter of the communication, which must be made in the course of furthering the ongoing, common enterprise. *Id.* citing *BDO Seidman*, 492 F.3d at 816; *Pampered Chef v. Alexanian*, 737 F.Supp.2d 958, 963 (N.D. Ill. 2010).

These rules governing the common interest privilege circumscribe a very narrow privilege that: (1) requires a finding of identical (not merely similar) legal interests between the parties claiming privilege; (2) only applies to communications that are otherwise privileged; (3) only applies to communications shared between attorneys, not those that are shared with a member of the community of interest;[6] (4) only applies to communications made in the course of furthering the ongoing common enterprise; and (5) places the burden of proof on the party asserting privilege to demonstrate that the common interest privilege applies.

Because Defendant has refused to identify the withheld documents on a privilege log, Defendant necessarily has failed to demonstrate, as it must, that the withheld documents are privileged. Defendant's only justification for refusing to identify withheld documents is that "There are no communications between counsel for Union Pacific and counsel for either Remprex or Nascent that pre-date the litigation over which Union Pacific is claiming privilege pursuant to common interest. Under the terms of the ESI protocol to which the parties agreed, communications involving counsel that post-date the filing of the complaint need not be placed on a privilege log."[7]

---

[6] Several Documents listed on Remprex's Privilege Log run afoul of this rule, as they were shared with individuals aside from counsel. (Ex. B at Priv 001, 003, 005, 006). Remprex also fell well short of providing enough description to permit Plaintiffs or the Court to fully analyze the claims of privilege. However, rather than pursuing non-party Remprex for documents that Defendant also possesses, Plaintiffs appropriately seek identification and production of these documents by Union Pacific—which has refused to do either.

[7] Defendant's complaint that the documents sought were created post-suit is meaningless, as Defendant was

(Ex. F at Dec. 13, 2023 email.) This is nonsensical, as the Parties did not enter into a formal or informal ESI protocol with any such a limitation. And even if the Parties had, ESI protocols identify the individuals whose devices will be searched for producible ESI and which search terms will be used; they do not limit a party's obligation to search for and produce documents that have been requested. Moreover Defendant has already identified numerous communications on its privilege log that involve its counsel and post-date the filing of the Complaint and carry dates into 2023. (Ex. C at Privilege Log Entries Nos. 186, 189, 414 amongst many others.) Thus, Defendant's refusal to do the same for the documents it is withholding on the basis of the common interest privilege is internally inconsistent. (*Compare id.* with Ex. F at Dec. 13, 2023 email.) It is a bare attempt to shield dubious and unfounded claims of privilege from scrutiny.

Defendant, which is represented by sophisticated counsel, made a choice not to identify the withheld documents. It has done so knowingly and repeatedly, producing three deficient privilege logs despite Plaintiffs' citations to case law holding that compliance with Rule 26 is not optional. (Ex. E at 1; Ex. F at Nov. 10, 2023 correspondence.) Thus, the Court should order Defendant to produce all documents it is withholding on the basis of the common interest privilege without giving Defendant a fourth chance to comply.[8]

> **B.    The Court Should Compel Production of all Documents that are being Withheld on the Basis of the Common Interest Privilege Because the Common Interest Privilege does not Apply Here.**

As set forth above, Plaintiffs and the Court can barely even begin to assess Defendant's assertions of common interest privilege because Defendant has refused to list any such withheld documents in its privilege log. However, Plaintiffs and the Court are able to assess one necessary

---

in knowing noncompliance with BIPA during this time period such that the documents sought are relevant.
[8] To the extent that Defendant agrees to identify these documents only after the filing of this Motion, Plaintiffs should be awarded their fees incurred in bringing the instant Motion. Fed. R. Civ. P. 37(a).

8

condition of the common interest privilege in spite of Defendant's obstruction, and this is enough to find that the common interest cannot apply here. For the common interest privilege to apply, the subject entities must share an identical—not merely similar—legal interest. *McCullough,* 304 F.R.D. 232, at 239. There is no identical legal interest where the subject entities have an incentive to blame each other for the alleged wrongful conduct. *McNally Tunneling Corp. v. City of Evanston, Illinois,* No. 00 C 6979, 2001 WL 1246630, at *3 (N.D. Ill. Oct. 18, 2001).

Here, the incentive for Union Pacific to blame its service providers (which results from their adverse legal interests) not only exists but has been acted upon. This case turns on the collection and storage of biometric data. 740 ILCS 14/15(a)-(b). Central to this issue is determining which entity controls, possesses, and/or owns the biometric data. During discovery, Union Pacific has clearly and repeatedly tried to shift blame to its service providers. *See* Excerpt from the June 20, 2023 deposition of Jeremy Hayden: ▮

▮

▮

▮ ; Excerpt from the January 10, 2024 deposition of Lori Lentsch: ▮

▮

▮

▮ Through its attorneys, Defendant has also disclaimed ownership of the biometric data, leaving its service providers as the purportedly culpable parties. (Ex. D at Defendant's Response to RFA No. 5.) ▮

▮ Excerpt from the October 25, 2023 deposition of Lynda Parillo ▮

9

██████████████████████████████████████████████████████████

████████████████████████████████████████████[9] Clearly, there is no common defense amongst Defendant and its service providers. Indeed, in its Rule 26(a)(1) disclosures, Defendant has asserted that it is owed indemnification from both Remprex and Nascent. (*See* attached Exhibit G, Defendant's Third Amended 26(a)(1) Disclosures, at 5.)[10] Plainly, the legal interests of railroad BIPA defendants and their service providers Nascent and Remprex are not aligned, let alone identical. They are *opposed.*

Defendant is trying to have its cake and eat it too. It has both blamed its service providers *and* sought to withhold documents shared with them on the basis of a common interest privilege. This prejudices Plaintiffs, who are being told simultaneously by Defendant that the BIPA violations are the service providers' fault, while at the same time, that Plaintiffs are not permitted to see what Defendant shared with the service providers regarding the BIPA violations. This derogates the search for the truth. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000).

The purpose of privilege is to encourage clients to make full and frank disclosure to their attorney. *LG Electronics U.S.A., Inc. v. Whirlpool Corp.,* 661 F.Supp.2d 958 (N.D. Ill. 2009). Because the cost of privilege is the withholding of relevant information from the courts, privilege must be strictly confined and upheld only where doing so supports its purpose. *Id.* citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir.2007).

Here, the purpose of privilege is not supported by shielding Union Pacific's communications with Nascent and Remprex because there is no reason for these entities to share

---

[9] Remprex has not yet been deposed in this matter.
[10] Nascent has confirmed that Union Pacific has sent it letters seeking indemnification. *See* Correspondence attached hereto as Exhibit H. Indemnity communications, which do not advance any common enterprise but rather directly embody the opposing interests between Union Pacific and Nascent, could not be withheld even where a common interest otherwise exists. *McCullough,* at 239.

legal advice. ████████████████████████

████████████████████████████████ (*See* attached Exhibit I, at UP-00652602, ████

████████████████████████████████████████████████████████);

Deposition of Lynda Parillo of Nascent: ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

There is no evidence that Remprex provided any such guidance, either.

Indeed, there was no need for Union Pacific, with all its market power and status as the multi-billion-dollar railroad client, to share or seek legal guidance from its much smaller service providers Remprex and Nascent. Rather, given its disparate bargaining power, Defendant could simply direct Remprex and Nascent to do its bidding without disclosing legal strategy. *LG Electronics U.S.A.,* 661 F.Supp.2d 958 at 966-967 (finding no common interest privilege where the client held "firm control over the relationship" and where the entities simply routinely dealt with each other and none desired to be sued). When Union Pacific attempted to gain truck drivers' consent to collect their biometrics, it did so through its own channels (on its own smartphone app UPGO and on its own website) not through the AGS kiosks. Where Union Pacific needed its service providers to act, it could simply direct them to do so without disclosing legal strategy. The Court should not protect communications between entities who have no reason to communicate under the auspices of privilege (other than to hide bad facts pursuant to their rooting interest in lowering damages in this lawsuit). Union Pacific's, Nascent's, and Remprex's mere "rooting interest" in lowering the total amount of damages here is not enough to form a common interest and is no cause to derogate the search for truth. *Id.; McNally,* 2001 WL 1246630, at *3.

11

In connection with its purported common interest, Union Pacific executed "common interest agreements" with its service providers. Confusingly, Defendant produced its agreements with Nascent, but not Remprex. (*See* attached as <u>Exhibit J</u>, Nascent Agreements.)[11] As set forth above, Defendant has failed to list its agreement with Remprex on its privilege log, so it must be produced on that basis. *Rossman,* 335 F.R.D. 171, 172–73 (Cole, J.) ("Compliance with Rule 26(b)(5)(A) is not optional.") Notably, every entry on the Nascent Privilege Log pre-dates by months even the earliest signature on the common interest agreements between Defendant and Nascent. These documents are thus not covered by the agreements, which cannot be read to apply retroactively.[12] While these contracts will certainly be used to evidence witness bias at trial, they are not outcome determinative with respect to whether the common interest privilege exists here because Union Pacific cannot force a common interest into existence simply by drawing up a contract to that effect. A common interest must be established by the facts and circumstances presented by reality; it is not a legal fiction to be taken at face value. *LG Electronics U.S.A.,* at 966-67. To do so would swallow the rule because it would permit all corporations, which naturally fear litigation, to conceal evidence under the auspices of privilege. *Id.*

Because no common interest exists, the Court should order production of all documents withheld on this basis.

### C. The Court Should Also Compel Production of All Other Documents Improperly Withheld as Privileged.

Defendant is also improperly claiming privilege over documents that have been shared with third parties. This is improper because "[i]t is clearly established black letter law that a party

---

[11] It is unclear why there are two common interest agreements between Nascent and Union Pacific or why one is unsigned by Nascent.
[12] *See* Ex. J ¶ 3.

waives the attorney-client privilege when the otherwise privileged documents are disclosed to a third party." *In re Dealer Mgmt. Sys. Antitrust Litig.,* 335 F.R.D. 510, 514 (N.D. Ill. 2020) (internal quotation and citation omitted); *Jenkins v. Bartlett,* 487 F.3d 482, 490 (7th Cir. 2007) ("[O]rdinarily, statements made by a client to his attorney in the presence of a third party do not fall within the privilege, even when the client wishes the communication to remain confidential"). Merely copying an attorney on a communication does not make it privileged. *McCullough*, at 237.

The entries on Defendant's privilege log that correspond with documents sent to third parties are: UP-PRIV-0157, 0174, 0205, 0227, 0228, 0230, 0232, 0234, 0247, 0261, and 0292. Each entry shows communications shared with either Anthony Chavira or Ramakrishna Kothapally. These individuals' public LinkedIn pages show no employment history at all with Union Pacific. Rather, at the time of the communications, Mr. Chavira was an employee of RDS Logistics Group and Mr. Kothapally was a third-party contractor.[13] Communications with such individuals are not privileged. *Jenkins,* 487 F.3d at 490. They must be produced.

Defendant is also improperly withholding documents that were prepared in the normal course of business. The entries on Defendant's privilege log at issue are: UP-PRIV-0014, 0025, 0050, 0055, 0136, 0137, 0138, and 0204. These communications are between non-attorneys. The dates corresponding with 0014, 0025, 0050, 0055 predate this lawsuit by over a year. The descriptions of each document and the fact that no attorneys were copied on the communications demonstrate that any input from the legal department (if the documents even contain any) was primarily "business advice," not "legal advice." Such "business advice" is not privileged because "the privilege is limited to situations in which the attorney is acting as a legal advisor—business

---

[13] Given that Mr. Kothapalli was using an @upcontractor.up.com email address, Plaintiffs sought additional information from Union Pacific that might support a claim of privilege, both informally and in document requests. Defendant refused to produce anything and has thus not met its burden to demonstrate privilege.

13

and financial advice are not protected." *Burden–Meeks v. Welch,* 319 F.3d 897, 899 (7th Cir. 2003). Indeed, content maps (which are the subject of most of these communications) are not legal tools or documents—they are business tools. Similarly, audits and server evaluations (which may have been the very servers on which the fingerprints Defendant captured from Plaintiffs and the putative class were stored), such as those mentioned in 0014, 0025 and 0204, occur in the normal course of business and are not privileged. Nor are facts gathered and ultimately relayed to attorneys privileged. *Miller UK Ltd. v. Caterpillar, Inc.,* 2015 WL 13652752, at *1 (N.D. Ill., 2015) (Cole, J.) ("[C]ommunicating with, mentioning, or copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication or attachment into a privileged one, even if the otherwise non-privileged communication was at the behest of the lawyer.") Accordingly, these documents must also be produced.

        **D.    The Court Should Deem Plaintiffs' Request for Admission No. 4 "Admitted."**

After this suit was filed, Defendant attempted to implement a BIPA-compliant consent regime related to its collection of biometrics. However, BIPA requires informed *written* consent *prior to* the collection of biometrics. 740 ILCS 14/15(b). Accordingly, Plaintiffs propounded RFA No. 4 to narrow the issues for summary judgment by confirming that Defendant admits that it failed to obtain informed written consent prior to Plaintiff's fingerprint registration:

> **Admit that you did not obtain Plaintiff David Fleury's informed written consent to collect his Biometrics prior to the first occasion he underwent the AGS Driver Registration Process at one of Your Illinois facilities.**

As stated in Plaintiffs' counsel's correspondence with counsel for Defendant, Defendant's Response (pasted in full on pg. 4, *supra*) ignores the words "informed written" and "prior to the first occasion" and thus does not fairly respond to the substance of Request No. 4, which contains clear timing and writing elements. Fed. R. Civ. P. 36(a)(6) ("On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended

14

answer be served.") Defendant's repeated failure to supplement its Response to Plaintiffs' Request for Admission No. 4 is completely unfounded given the crystal-clear record on this issue set forth in Plaintiffs' L.R. 37.2 Certification below where Defendant specifically agreed to supplement its response months ago, but has since refused to do so despite repeated requests. Accordingly, the Court should deem Plaintiffs' RFA No. 4 admitted.

      **E.    The Court Should Award Plaintiffs' Fees Incurred in Connection with the Instant Motion.**

As detailed in the L.R. 37 Certification below, Defendant has engaged in an inappropriate pattern of behavior whereby its counsel initially agrees to produce information, only to renege on its agreements months later after causing substantial cost and delay. This poor-faith strategy prejudices Plaintiffs' ability to depose witnesses with all relevant information. Defendant should be required to pay Plaintiffs' fees incurred in connection with this Motion.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

1. Granting Plaintiff's Motion to Compel Discovery;

2. Compelling Defendant to produce all documents it has improperly withheld pursuant to its purported "common interest privilege," including all documents listed on Remprex and Nascent's privilege logs that are being withheld on the basis of a common interest privilege with Union Pacific and all improperly withheld documents that have been exchanged since the effective dates of such logs;

3. Compelling Defendant to produce the improperly withheld documents identified as: UP-PRIV-0014, 0025, 0050, 0055, 0136, 0137, 0138 0157, 0174, 0204, 0205, 0227, 0228, 0230, 0232, 0234, 0247, 0261, and 0292 on its privilege log;

4. Deeming Plaintiffs' Request for Admission No. 4 "Admitted";

5. Requiring Defendant to pay Plaintiffs' reasonable expenses incurred in making this Motion; and

6. Granting such further and other relief the Court deems reasonable and just.

Dated: March 4, 2024

Respectfully submitted,

DAVID FLEURY and ALVIN TURNER, individually and on behalf of similarly situated individuals,

By: /s/ *Brendan Duffner*
*One of Plaintiffs' Attorneys*

Evan M. Meyers
David L. Gerbie
Brendan Duffner
Joseph M. Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com
jdunklin@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

*Attorneys for Plaintiffs and the Putative Classes*

**Rule 37 Certification**

I hereby certify that I have met the requirements of Fed. R. Civ. P. 37 and L.R. 37.2, as well as this Court's Case Procedures re: Privilege Disputes prior to filing this Motion. Indeed, Defendant has recently acknowledged that the Parties have sufficiently met and conferred on the subjects herein. (Dkt. 244, ¶ 15.)

*Meet-and-Confer Efforts Regarding Privilege Disputes*

In early September 2023, Plaintiffs' counsel requested that Defendant produce a privilege log due to several privilege-related issues. On certain documents, Defendant over-redacted, shielding communications that were not attorney advice, and that were also shared with a third party. On other documents, Defendant under-redacted, which Plaintiffs identified to Defendant. Plaintiffs also sought a privilege log due to Defendant's dubious use of a seldom-invoked privilege doctrine—the common interest privilege.

On September 22, 2023, Defendant produced its first privilege log. On October 2, 2023, Plaintiffs issued Defendant a deficiency letter due to numerous issues with Defendant's first privilege log, including its noncompliance with the Court's Case Procedures and Rule 26, and its failure to identify any communications it was withholding on the basis of the common interest privilege. (Ex. E Oct. 2. Letter.) The Parties met and conferred on this letter on November 1, 2023. During the Parties' meet and confer, Defendant agreed to identify all communications it was withholding on the basis of the common interest privilege. (Ex. F at Nov. 3, 2023 confirmation email recapping call with Defense Counsel's edits in red, reflecting Defendant's agreement that "In its forthcoming amended privilege log, Union Pacific will identify the communications between it and Nascent and Remprex that it is withholding on the basis of privilege.") Defendant also agreed to perform an independent search for such communications. (Ex. F at Nov. 8-10

17

emails.) Plaintiffs sought for Defendant to commit to a date certain whereby it would produce a privilege log containing this information. Defendant did not commit to such a date. (*Id.*) On November 10, 2023, Defendant produced its second privilege log, which again did not identify any communications it was withholding on the basis of the common interest privilege. That same day, Plaintiffs' counsel again asked for this information to be identified. (*Id.*)

On December 13, 2023, Defendant produced its third amended privilege log, which again did not identify any communications it was withholding on the basis of the common interest privilege. (*See* Ex. C.) In doing so, Defendant reversed its position and refused to identify which communications it was withholding on the basis of the common interest privilege. (Ex. F at Dec. 13, 2023 correspondence) Following the holidays and on January 16, 2024, Plaintiffs informed Defendant that they would be moving to compel on this issue. (Ex. F at Jan. 16, 2024 correspondence.) As of the date of filing, Defendant has not responded to this statement other than to acknowledge that the Parties have sufficiently met and conferred. (Dkt. 244, ¶ 15.)

### *Meet-and-Confer Efforts Regarding Plaintiffs' Request for Admission No. 4*

During a telephonic meet-and-confer on September 22, 2023, Defendant specifically agreed to supplement its response to fully address Plaintiffs' Request for Admission by September 29, 2023 and then confirmed this in writing that same day. (*See* Correspondence attached hereto as Exhibit K.) Defendant did not do so. On November 10, 2023, Defendant acknowledged this failure in a Joint Status Report filed with the Court. (Dkt. 218 at 2 reading "In a September 22, 2023 email, Defendant agreed to supplement its response to Plaintiffs' first requests to admit by the end of business on September 29, 2023. Defendant has not done so.") Following the filing of the Joint Status Report, Plaintiff reminded Defendant again. (Ex. K at Nov. 20, 2023 correspondence.) On January 16, 2024, Plaintiffs informed Defendant that they would be moving

to compel on this issue. (Ex. F at Jan. 16, 2024 correspondence.) As of the date of filing, Defendant has not responded to this statement other than to acknowledge that the Parties have sufficiently met and conferred. (Dkt. 244, ¶ 15.)

/s/ *Brendan Duffner*
*One of Plaintiffs' Attorneys*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 4, 2024, I caused the foregoing *Plaintiffs' Motion to Compel Production of Documents and to Deem Plaintiffs' Request for Admission No. 4 Admitted* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Brendan Duffner*
*One of Plaintiffs' Attorneys*