IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DAVID FLEURY and ALVIN TURNER, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 20-cv-00390 |
| v. | ) ) | Hon. LaShonda A. Hunt |
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, | ) ) ) ) | Magistrate Jeffrey Cole |
| *Defendant*. | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND TO DEEM PLAINTIFFS'
REQUEST FOR ADMISSION NO. 4 ADMITTED**

Plaintiffs David Fleury and Alvin Turner ("Plaintiffs"), through the undersigned and for their Reply in Support of Motion to Compel Production of Documents and to Deem Plaintiffs' Request for Admission No. 4 Admitted, hereby state as follows:

**I.     INTRODUCTION**

Defendant's Response in Opposition to Plaintiffs' Motion to Compel ("Opposition," Dkt. 250) attaches no evidence to support any of its arguments and ignores several categories of documents completely. This proves fatal to Defendant's arguments, and ultimately to its attempt to conceal relevant documents, because it is Defendant's burden to establish that the documents Plaintiffs seek are privileged and Defendant's deficient privilege log falls well short of doing so on its own.

To justify its failure to identify *any* withheld communications with Remprex and Nascent on its third amended privilege log, Defendant claims that the Parties entered into an ESI protocol permitting Defendant to not identify post-suit communications involving counsel. But Defendant

attaches no evidence that the parties agreed to any such restriction, either in the parties' discussions of ESI or otherwise. That is because no such agreement exists. This type of bad-faith argument has become unfortunately typical.

With regard to the eleven withheld documents that were shared with third parties, Defendant does not produce evidence that these individuals were retained to assist attorneys in providing legal advice or submit an affidavit from the in-house attorney copied on the communications stating that the communications were made to assist in rendering legal advice.[1]

With respect to production of the eight documents that were prepared in the normal course of business and feature no attorney sender or recipient (four of which bear dates predating this lawsuit by more than a year), Defendant offers no argument at all related to the specific documents, and improperly relies on blanket references to general privilege rules.

To avoid the Court deeming RFA No. 4 admitted, Defendant claims that it advised Plaintiffs that it intended to stand on its answer to RFA No. 4. But Defendant again attaches no evidence of such a communication—because no such communication was ever made.

Lastly, in an attempt to dodge an award of attorneys' fees, Defendant claims that Plaintiffs' Motion to Compel is premature, that Plaintiffs failed to meet and confer, and that a genuine dispute exists.[2] But Defendant failed to submit *any* evidence in support of its arguments and has admitted in a court filing that the Parties met and conferred. (Dkt. 244 ¶ 15.) There is no genuine dispute.

---

[1] Defendant apparently does not have enough confidence in its claims of privilege to offer the purportedly privileged documents for *in camera* review. The Court may deem any such request waived, though it of course retains the discretion to order *in camera* review *sua sponte*. *Gerba v. National Hellenic Museum*, 351 F.Supp.3d 1097, 1100 (N.D. Ill., 2018) (Cole, J.) (denying subsequent request for *in camera* review that was not made during briefing)

[2] Defendant's reference to the number of motions to compel filed by Plaintiffs is too cute by half. As the Court is aware, Plaintiffs' motions to compel have largely resulted in orders compelling Defendant to produce the information requested by Plaintiffs. Thus, Plaintiffs' prior motions to compel are indicative not of Plaintiffs "seek[ing] this Court's intercession prematurely and inappropriately," but rather of Defendant's long-standing bad faith refusal to comply with its discovery obligations.

Plaintiffs' Motion should be granted in its entirety and the Court should enter an Order: (1) requiring Defendant to produce all unidentified and withheld correspondence with counsel for Remprex and Nascent; (2) requiring Defendant to produce all improperly withheld documents sought in Plaintiffs' Motion to Compel; (3) deeming Plaintiffs' Request for Admission No. 4 admitted; and (4) awarding Plaintiffs their attorneys' fees incurred in bringing the instant Motion.

### III. ARGUMENT

**A. The ESI Protocol Referenced by Defendant Does Not Exist, so Defendant's Failure to Identify Withheld Documents in Accordance with Rule 26(b)(5)(A) is Unjustified.**

Defendant's justification for its refusal to even *identify* the withheld documents on its privilege log is that under the terms of the ESI protocol to which the parties agreed, communications involving counsel that post-date the filing of the complaint need not be placed on a privilege log. But in their Motion to Compel, Plaintiffs stated that no such ESI protocol language exists. (Mot. to Compel at 7.) Defendant, rather than attaching or citing to anything at all (even a self-serving affidavit), simply claims that this phantom ESI protocol language exists. Defendant has failed to establish, as it must, that these materials have been properly withheld from its privilege log. *Shaffer v. AMA*, 662 F.3d 439, 446 (7th Cir. 2011) ("The burden of proof is always on the party claiming privilege.")

It is notoriously difficult to prove a negative fact such as the fact that the ESI protocol language Defendant references does not exist. Especially because the Parties did not enter into a formal ESI protocol in this case.[3] It is also not Plaintiffs' burden to prove this negative. *Id.* Nonetheless, numerous contradictions exist that demonstrate Defendant's position cannot be true. For example, Defendant does not explain why, if the supposed ESI protocol language existed,

---

[3] The parties did discuss at length – and ultimately come to agreement on – specific ESI search terms and the custodians subject to Defendant's ESI search.

3

Defendant initially agreed during the Parties' November 1, 2023 telephonic meet-and-confer to identify withheld post-suit communications with Nascent and Remprex on its privilege log. (Dkt. 248-6 at Nov. 1, 2023 confirmation email recapping call (Defendant's Counsel's edits in red), reflecting Defendant's agreement that "In its forthcoming amended privilege log, Union Pacific will identify the communications between it and Nascent and Remprex that it is withholding on the basis of privilege.") And Defendant's own conduct reveals that it has not been "operating under [the] understanding" (Opp. at 5) that it did not have to identify post-suit communications involving counsel on its privilege log. Specifically, Defendant listed dozens of *other* post-suit communications involving both in-house and litigation counsel (though not those being withheld on the basis of common interest privilege) on its privilege log. (See Dkt. 248-3 at Entries Nos. 123, 125, 126, 186, 189, 414 amongst many others.) Defendant unsurprisingly offers no explanation for this discrepancy. The only reasonable inference is that Defendant was either being purposely dilatory in initially agreeing to identify the communications, knowing it would renege, or Defendant doesn't believe its own phantom ESI protocol argument.

      Defendant's failure to even list its communications with Remprex and Nascent on its privilege log prevents Plaintiffs and the Court from fully assessing Defendant's privilege claims through the narrowly-construed common interest privilege, whose numerous necessary conditions are set forth in Plaintiffs' Motion to Compel. (Mot. to Compel at 6-7.) In doing so, Defendant has failed to uphold its burden to demonstrate that the underlying documents are privileged. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) ("The privilege is construed narrowly and the party asserting it has the burden of establishing all of its essential elements.") Accordingly, the documents must be produced.

4

Though Defendant asks the Court to enable its dilatory tactics and order it only to amend its privilege log (Opp. at 8), this is not the appropriate result considering Defendant's conduct. An order that even privileged documents be disclosed as a sanction is appropriate where the party that authored the log has displayed willfulness, bad faith or fault. *Muro v. Target Corp.*, 250 F.R.D. 350, 365 (N.D. Ill., 2007). Defendant clearly has done so here, and as set forth below, the withheld documents are not even privileged. Accordingly, the Court should order the communications produced rather than giving Defendant a *fourth* chance to submit a compliant privilege log.

**B.     Defendant has not Met its Burden to Establish that a Common Interest Exists.**

Defendant dismisses Plaintiffs' citations to and discussion of numerous exhibits and testimony from this case (including from Defendant's own employees) as "inaccurate and self-serving" and "contrary to the law regarding the common interest privilege" without making a single counterpoint, citation, or substantive comment in response. (Opp. at 6.) But the legal relevance of Plaintiffs' citations is clear: they demonstrate the complete lack of an "ongoing common enterprise" between Defendant and its service providers that is necessary to find a common interest. *United States v. BDO Seidman, LLP,* 492 F.3d 806, 816 (7th Cir.2007).

Defendant also confusingly accuses Plaintiffs of seeking duplicative discovery, but Plaintiffs are not seeking anything that has been produced already, so Defendant's accusation is, again, simply untrue. Instead, Plaintiffs are complying with Rule 45 by seeking documents from the party in this case, Union Pacific, rather than non-parties Remprex and Nascent. Indeed, pursuant to Rule 45, a party must take reasonable steps to avoid imposing undue burden or expense on non-parties subject to subpoena. *See* Fed. R. Civ. P. 45(d)(1) and (e)(1)(D). So Plaintiffs are correct to seek these documents from Defendant.

When it finally gets around to citing case law, Defendant hangs its hat on one readily distinguishable case. (Opp. at 7, citing *Terra Foundation for American Art v. Solomol + Bauer + Giambastiani Architects, Inc.*, 2015 WL 1954459, at *1 (N.D. Ill. Apr. 29, 2015)). *Terra* states that the common interest doctrine extends to "communications made in the presence of third parties for the purpose of coordinating a defense strategy or pooling information for common legal purpose." *Id.* at *4. However, there is *no evidence* of a coordinated defense strategy here and Defendant has produced none. In fact, there is only evidence of *uncoordinated* defense strategies in the form of directly contradictory testimony. (Mot. at 9-10.) This lack of coordination is laid bare by Nascent's statements in emails and subsequent sworn testimony that it does not and has not advised Union Pacific regarding BIPA. (Mot. to Compel at 10-11.) Defendant has not shown, as the parties did in *Terra,* any coordinated defense with Remprex and Nascent. Accordingly, Defendant has failed to "demonstrate actual cooperation toward a common legal goal" as required by *Terra. Id.* at 5. Because Defendant has failed to demonstrate this necessary condition, there is no common interest here and all documents withheld on this basis must be produced. But even if the Court were to find a common interest, Defendant must still produce the documents itemized immediately below for which other necessary conditions of the common interest privilege are not present.

      **C.**    **The Court Should Compel Production of All Documents Withheld on the Basis of the Common Interest Privilege that Defendant's Opposition Ignores.**

In the Seventh Circuit, as in most jurisdictions, a claim of privilege generally "must be made and sustained on a question-by-question or document-by-document basis." *Towne Place Condominium Association v. Philadelphia Indemnity Insurance Company,* 284 F.Supp.3d 889, 894 (N.D. Ill., 2018) (Cole, J.) citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

6

Defendant's Opposition ignored Plaintiffs' arguments with respect to three categories of documents, detailed below. The Court should order these unaddressed documents produced.

First, Plaintiffs' Motion to Compel sought indemnity letters sent from Union Pacific to Nascent. (Mot. to Compel at 10.) Such letters, which embody Union Pacific and Nascent's directly *opposed* interests, would not be covered by a common interest privilege even if a common interest is found because the common interest doctrine only shields communications that are "made in the course of furthering the ongoing, common enterprise." *McCullough v. Fraternal Order of Police, Chicago Lodge 7,* 304 F.R.D. 232, 240 (N.D. Ill., 2014) (Cole, J.) citing *BDO Seidman*, 492 F.3d at 816; *Pampered Chef v. Alexanian*, 737 F.Supp.2d 958, 963 (N.D. Ill. 2010). Indemnity demands are directly adversarial and are thus not made in the course of furthering any ongoing common enterprise. Defendant made no argument with respect to these documents, so the Court should compel their production even if the Court otherwise finds a common interest.

Second, Plaintiffs argued that because every document listed on the Nascent Privilege Log predates even the *earliest* signature on Union Pacific's Common Interest Agreements with Nascent, and that the Common Interest Agreements cannot be read to apply retroactively, such documents would not be covered by a common interest privilege, even if a common interest is found. (Mot. to Compel at 12.) Indeed, Union Pacific's Common Interest Agreement with Nascent does not reference these earlier communications even though they clearly existed prior to the Common Interest Agreements' executions. (*Id.*) Because Defendant made no argument with respect to these documents, the Court should order that they be produced even if the Court finds a common interest.

Third, Plaintiffs identified four documents listed on Remprex's privilege log that are being withheld by Defendant despite having been inappropriately shared with a member of the

7

community of interest. (Mot. to Compel at 7 referencing documents sent to Remprex employee James Shondel.) Even if a common interest existed here, it would not protect these documents because "to be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest." *McCullough,* at 239, citing *In re Teleglobe Communications Corp., 493 F.3d at 364.* (emphasis in original) Sharing a privileged communication directly with a member of the community of interest may destroy the privilege. *Id.* Again, given Defendant's failure to even address these documents, the Court should order their production even if the Court finds a common interest.[4]

Defendant, in failing to even address the foregoing three categories of documents, has failed to uphold its burden to establish that they are privileged. *Towne Place Condominium Association,* 284 F.Supp.3d at 894. Thus, they must be produced.

### D. Defendant has not Met its Burden to Establish that the Eleven Documents it Shared With Third Parties are Privileged.

Defendant attempts to protect the eleven documents it shared with third parties by claiming that because an attorney is copied on the documents, they are privileged. But the case law Defendant cites is inapposite. For example, *Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, did not concern documents that had been shared with third parties. 2020 WL 3977944, at *4 (N.D. Ill. July 14, 2020). And simply copying a lawyer on a communication shared with a third party does not magically make it privileged. *McCullough,* 304 F.R.D. 232, at 237.[5] As it must,

---

[4] Even if the Court finds that a common interest exists, it should require Defendant to update its privilege log so that Plaintiffs can assess Defendant's privilege claims on an appropriate document-by-document basis. Indeed, Plaintiffs have no clue how many communications post-date the issuance of the Nascent and Remprex privilege logs and are being withheld—or whether such claims of privilege would withstand scrutiny under the numerous necessary conditions that circumscribe the common interest privilege if Defendant were to identify them on its privilege log.

[5] Courts repeatedly have held that "neither the mere presence of the lawyer's name on a document nor the copying of counsel on an email automatically makes an item privileged." *Terra Foundation for American Art v. Solomol+Bauer+Giambastiani Architects, Inc.,* 2015 WL 1954459, at *3 (N.D.Ill., 2015) citing *Wierciszewski v. Granite City Ill. Hosp. Co. LLC,* 2011 WL 5374114, at *1–2 (S.D.Ill. Nov. 7, 2011); *Steele v. Lincoln Fin. Group,*

Defendant concedes that the third parties at issue, Anthony Chavira and Ramakrishna Kothapally, do not work for Union Pacific. (Opp. at 3.) Nor have they ever.

With respect to the documents shared with Mr. Chavira, Union Pacific general counsel Reha Dallon was merely CC'd on communications exchanged between Mr. Chavira and Defendant's employee Ms. Katrina King-Lopes. (Dkt. 248-3 at 0157, 0230, 0232.) This is unsurprising as according to Ms. King-Lopes herself, it was common for her to CC in-house counsel as a general practice. (*See* Relevant Excerpts of the January 31, 2024 Deposition of Katrina King-Lopes at 116:4-14, attached hereto as Exhibit A.) But doing so does not make her communications with third parties privileged. *McCullough,* 304 F.R.D. 232, at 237. It is thus completely unclear why Defendant attempts to claim that "Union Pacific's in-house counsel's communication with this third party contractor was necessary to give appropriate legal advice in connection with its gating systems." (Opp. at 3) when Defendant's privilege log shows that Ms. Dallon did not author *any* of the emails to Mr. Chavira and thus made no communication. (Dkt. 248-3 at 0157, 0230, 0232.) It is unlikely that any advice from Ms. Dallon is contained in the emails. Notably, Defendant has not even attempted to offer any supposedly privileged documents to the Court for *in camera* review.

With respect to the documents shared with Mr. Kothapally, Defendant has produced nothing to support its claims of privilege. Defendant deceptively cites Mr. Kothapally's possession of a "UPC email address" as an indicator that his receipt of the communications should not destroy privilege. (Opp. at 4.) But the privilege log shows that Mr. Kothapally actually bore a @UPcontractor.com email address. (Dkt. 248-3 at 0227, 0228, 0234, 0247, 0261.) This sets him *apart* from Union Pacific employees, who bear @UP.com email addresses. In any case, Mr.

---

2007 WL 1052495, at *1 (ND. Ill. April 3, 2007); *Bell Microproducts, Inc. v. Relational Funding Co.,* 202 WL 31133195, at *1 (N.D. Ill. Sept. 25, 2002).

9

Kothapally's email address does not change the undisputed fact that he is a third-party and has never worked for Union Pacific. This fact operates to destroy privilege here. *In re Dealer Mgmt. Sys. Antitrust Litig.,* 335 F.R.D. 510, 514 (N.D. Ill. 2020) (holding that knowing disclosure to third parties destroys privilege)

With respect to Messrs. Chavira and Kotahapally, Defendant argues that "because both individuals were assisting Union Pacific, the privilege extends to those communications." (Opp. at 4.) But that is not a correct legal conclusion according to the Seventh Circuit opinion Defendant cites. In *Jenkins v. Bartlett*, the Seventh Circuit limited its enumeration of third-party individuals whose communications may be privileged to: "paralegals, investigators, secretaries and members of the office staff responsible for transmitting messages between the attorney and client, and to outside experts *engaged to assist the attorney in providing legal services* to the client, such as accountants, interpreters or polygraph examiners." 487 F.3d 482, 491 (7th Cir. 2007) (emphasis added). Messrs. Chavira and Kothapally fall into none of these categories, as they were not engaged to assist attorneys in providing legal services to the client. Mr. Chavira worked for a third-party logistics company and Mr. Kothapally worked for a third-party software developer. Defendant's assertion that the communications are privileged merely because Messrs. Chavira and Kothapally were "assisting Union Pacific" (rather than its attorneys) is a gross oversimplification of the limited exception set forth in *Jenkins.* Permitting such communications to be considered privileged would swallow the general rule that communications with third parties are not privileged. Indeed, Defendant's oversimplification would extend the exception to all situations where third parties are arguably "assisting" the defendant in some capacity rather than assisting attorneys in providing legal advice.

Accordingly, these eleven documents must be produced,

### E. Defendant has not Met its Burden to Establish that the Eight Documents Prepared in the Normal Course of Business are Privileged.

With respect to the eight documents being withheld that do not include an attorney recipient or sender,[6] Plaintiffs expected to see a significant amount of external evidence submitted to support Defendant's claims of privilege because documents shared between non-attorneys (half of which predate the litigation by more than a year) are almost certainly not privileged. The descriptions of the eight documents discuss audits, content maps, and routine server evaluations, and half were prepared well pre-suit. (*See* UP-PRIV-0014, 0025, 0050, 0055, 0136, 0137, 0138, and 0204.) It is no wonder that no attorneys were copied—these are everyday occurrences in the normal course of business. Though Defendant claims on its privilege log that Documents 050, 055, 0136, 0137 were prepared at the behest of counsel, this is not apparent from the subject of those emails. And even if that were true, it would not render them privileged. *Miller UK Ltd. v. Caterpillar, Inc.,* 2015 WL 13652752, at *1 (N.D. Ill., 2015) (Cole, J.)

In its attempt to shield these eight documents, Defendant submitted nothing more than a string cite to general privilege case law without applying those propositions to the specific documents sought. (Opp. at 4-5.) Apparently, Defendant believes that the mere fact that it included these documents in its privilege log and marked them as privileged wins the day. "But, 'saying so doesn't make it so.'" *Gerba v. National Hellenic Museum*, 351 F.Supp.3d 1097, 1099 (N.D. Ill., 2018) (Cole, J.) *Allen v. GreatBanc Tr. Co*., 835 F.3d 670, 679 (7th Cir. 2016). Moreover, "[t]he party hoping to withhold evidence from the proceedings - and, to degrees that vary from case to case, thwart the fact-finders' efforts at uncovering the truth - necessarily has the burden of establishing the applicability of the privilege it asserts on a document-by-document basis. Blanket claims of privilege are impermissible in all contexts." *Urban 8 Fox Lake Corporation v.*

---

[6] These documents are: UP-PRIV-0014, 0025, 0050, 0055, 0136, 0137, 0138, and 0204.

11

*Nationwide Affordable Housing Fund 4, LLC,* 334 F.R.D. 149, 156 (N.D. Ill., 2020) (Cole, J.) Defendant has failed to uphold its burden; the Court should order these documents produced.

**F.     The Court Should Deem Plaintiffs' Request for Admission No. 4 "Admitted."**

In another of its unsupported arguments, Defendant falsely claims that it "advised Plaintiffs that it intended to stand on its answer to Request No. 4." (Opp. at 10.) Defendant does not say where, how, or when it advised Plaintiffs of this. Defendant does not attach an email exhibit, provide an affidavit, or cite any evidence in support of its claim. Even worse, Defendant argues that Exhibit K to Plaintiffs' Motion, which is an email attachment showing a September 22, 2023 email from Defendant's Counsel does not contain "any representation from Union Pacific that it agreed to revise its answer." (Opp. at 10 citing Dkt. 248-11.) It is hard to call this argument anything other than a lie, given that in a Joint Status Report filed November 10, 2023, Defense Counsel made the exact *opposite* representation regarding this same September 22 email, stating: "In a September 22, 2023 email, Defendant agreed to supplement its response to Plaintiffs' first requests to admit by the end of business on September 29, 2023. Defendant has not done so." Dkt. 218 at 2. Defendant's Opposition completely ignores both the representations it made in Dkt. 218, and the clear language in the email attached as Dkt. 248-11. If Defendant had actually advised Plaintiffs that it was standing on its answer to RFA No. 4, it certainly could have said so following Plaintiffs' Counsel's emails on November 20, 2023 and January 16, 2024 that sought the updated response that was promised on September 22, 2023 and threatened to move the Court for an admission. (Dkts. 248-6, 248-11.) Defendant did not. Nor did Defendant claim anywhere but its Opposition that it believed Plaintiffs had failed to meet-and-confer fully on this issue. Instead, Defendant said the opposite. (Dkt. 244 ¶ 15.)

12

Lastly, Defendant claims in a footnote that Plaintiffs seek inappropriate relief because Plaintiffs do not request a ruling on the sufficiency of Defendant's Response. But Plaintiffs plainly do provide the Court with a clear analysis outlining the deficiency of Defendant's Response to RFA No. 4. (Mot. To Compel at 3-4; 14-15.) To reiterate, Defendant's Response ignores the words "informed written" and "prior to the first occasion" and thus does not fairly respond to the substance of Request No. 4, which contains clear timing and writing elements. (*Id.*) Plaintiffs even go a step further, requesting specific relief in the form of an admission. (*Id.* at 15.) This follows directly from Rule 36. Fed. R. Civ. P. 36(a)(6) ("On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.") Accordingly, Plaintiffs' request for relief contains no defects and Defendant's dilatory failure to supplement its Response to Plaintiffs' Request for Admission No. 4 and its subsequent misrepresentations to the Court regarding same warrant a finding that Defendant's Response is insufficient and is admitted.

### G. Fees are Warranted here.

This is a clear-cut instance where an award of attorneys' fees is warranted, as Defendant has thumbed its nose at its obligations in discovery for many months. To recap, Defendant has:

- Refused to identify documents that it is withholding in discovery in direct contravention of Rule 26;
- Failed to attach any evidence that an ESI protocol exists and says what Defendant claims.
- Reneged on multiple concrete representations that it would supplement its privilege log and its Response to RFA No. 4;
- Argued directly contrary to its signed representation to the Court in Dkt. 218 that: "In a September 22, 2023 email, Defendant agreed to supplement its response to Plaintiffs' first requests to admit by the end of business on September 29, 2023. Defendant has not done so."; and
- Argued directly contrary to its signed representation to the Court in Dkt. 244 that the Parties "previously met and conferred" on issues that were raised in Plaintiffs' Motion to Compel.

13

To avoid an award of fees here, Defendant argues that Plaintiffs failed to "strictly comply" with Local Rule 37.2, claiming that Plaintiffs omitted material facts and oversimplified dialogue between the parties. But Defendant does not specify in what way Plaintiffs did this, state how it prejudiced Defendant, or attach any evidence that these things happened at all. Of course, Defendant's claims in its March 18, 2024 Opposition that Plaintiffs had not sufficiently met and conferred makes absolutely no sense given that Defendant was informed on January 16, 2024 that Plaintiffs intended to move to compel on the privilege and RFA issues—and Defendant completely failed to respond. To remove all doubt, after saying nothing in reply to Plaintiffs' January 16, 2024 email, Defendant then represented to the Court that the parties had met and conferred and that Plaintiffs had informed Defendant that they would be filing their Motion to Compel. (Dkt. 244, ¶ 15.) For reasons unclear, Defendant then makes the easily dispelled argument that Plaintiffs did not specify the date, time, and place of telephonic conversations—though Plaintiffs plainly have. (See L.R. 37.2 Certification identifying multiple calls with Defendant.) Indeed, Plaintiffs have done far more than they should have to with respect to Defendant's dubious claims of privilege, having forced Defendant to drop nearly three dozen claims of privilege thus far without court intervention. (Dkt. 248-6 at Nov. 10 email listing 35 dropped claims of privilege.) Defendant's wild knot of privilege claims asserted across three privilege logs has been, frankly, a giant mess and headache for Plaintiffs' counsel, requiring dozens of hours of attorney work to untangle. For Defendant to suggest that Plaintiffs have not sufficiently met and conferred on these issues is completely absurd.

Lastly, and despite being unable to cite *any* evidence that either supports its own arguments or contradicts Plaintiffs' arguments, Defendant argues that it should not be required to pay attorneys' fees because a "genuine dispute" exists here. (Opp. at 11.) Given the long briefing

14

schedule entered with respect to Plaintiffs' Motion to Compel, there is no excuse for Defendant's failure to offer any evidence in support of any of its positions. There is no "genuine dispute" where Defendant relies only on references to a phantom ESI protocol and arguments that contain no evidence and directly contradict Defendant's signed representations to the Court in Dkts. 218 and 244. Accordingly, an award of fees is appropriate.

IV. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

1. Granting Plaintiff's Motion to Compel Discovery;

2. Compelling Defendant to produce all documents it has improperly withheld pursuant to its purported "common interest privilege";

3. Compelling Defendant to produce the improperly withheld documents corresponding with entries UP-PRIV-0014, 0025, 0050, 0055, 0136, 0137, 0138 0157, 0174, 0204, 0205, 0227, 0228, 0230, 0232, 0234, 0247, 0261, and 0292 on its privilege log;

4. Deeming Plaintiffs' Request for Admission No. 4 "Admitted";

5. Requiring Defendant to pay Plaintiffs' reasonable expenses incurred in making this Motion; and

6. Granting such further and other relief the Court deems reasonable and just.

Dated: March 25, 2024

Respectfully submitted,

DAVID FLEURY and ALVIN TURNER, individually and on behalf of similarly situated individuals,

By: /s/ *Brendan Duffner*
*One of Plaintiffs' Attorneys*

Evan M. Meyers
David L. Gerbie
Brendan Duffner
Joseph M. Dunklin
MCGUIRE LAW, P.C.

15

55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com
jdunklin@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

*Attorneys for Plaintiffs and the Putative Classes*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 25, 2024, I caused the foregoing *Plaintiffs' Reply in Support of Motion to Compel Production of Documents and to Deem Plaintiffs' Request for Admission No. 4 Admitted* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record:

/s/ *Brendan Duffner*
*One of Plaintiff's Attorneys*