IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID FLEURY, individually and on behalf of similarly situated individuals,** | ) ) ) | |
| Plaintiff, | ) ) | No. 20 C 390 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| **UNION PACIFIC RAILROAD COMPANY,** a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff has filed a "Motion to Compel Production of Documents and to Deem Plaintiffs' Request for Admission No. 4 Admitted." [Dkt. ##247, 248].

It is well to remember at this point in this long, contentious litigation that this is (at least on one level) a seemingly uncomplicated case about whether truckers entering the defendant's Illinois facilities put their thumbs into gate access scanners for identification purposes and whether they did so consensually. While it seems simple enough, it has engendered four tries at an operative Complaint and fairly regular and repeated court involvement in discovery. [Dkt. ##63, 114, 125, 174, 197, 238]. At this point, from an objective perspective, one has to wonder if discovery in this case hasn't passed the tipping point in terms of being "proportional to the needs of the case." Fed. R. Civ. P. 26 (b)(1). Indeed, the problem illustrated by often excessive and needless discovery was recently addressed in a thoughtful article by Tom Melsheimer & Stephen Susman:

> "Experienced trial lawyers know that the vast majority of discovery never makes its way to court, which is another way of saying that most of what happens in discovery is not important to the outcome of the case. Yet too much effort is dedicated and too much money

1

is spent on discovery…. Litigation is slow and expensive because lawyers waste so much time fighting. Not only does this drain clients' pocketbooks but it also imposes a strain on courts that do not have time to sort out all of the disputes that are generated by pre-trial posturing."

Tom Melsheimer & Stephen Susman, *Trial by Agreement A Professional Approach Improves Results and Saves the Jury System,* 78 Tex. B.J. 716 (2015).1

In any event, as this case moved into its *fifth* year, the parties did not meet another fact discovery deadline – a deadline they had selected. It was the sixth one they had missed and, at their behest, discovery was extended a *final* time for another 45 days to April 15, 2024. [Dkt. #245]. We don't know everything the parties have been doing with that extra time, but we do know that it has allowed them an opportunity to bring another discovery dispute to court. Actually, it allowed them the opportunity to bring *two* more discovery disputes to court, because no sooner had they finished briefing this one, they got into another one involving a deposition. [Dkt. #255, 256]. The return on investment of granting discovery extensions has been disappointing, to say the least.

Nonetheless, the plaintiff insists he has not received sufficient discovery -- and wants more.

---

1 Professor Imwinkelried has put it this way:

> By 2008, American litigation was well into the era of "documents cases." Pretrial discovery had eclipsed trial as the most important phase of the litigation process; in the new era of "the vanishing trial" there were relatively few trials, and the vast majority of cases were disposed of without trial on the basis of the developments during pretrial discovery. In United States v. IBM, the attorneys produced over sixty-four million pages of documents in the first five years of pretrial discovery. In another federal case, the Washington Public Power Supply System Litigation (the WPPSS case), involving a default on the bonds sold to finance a nuclear power plant project, "more than 200 million pages of documents were produced." Businesses' reliance on electronically stored information increased the problem exponentially….

*The Debate over the Permissibility of Selective Privilege Waiver Orders Under Federal Rule of Evidence 502(d): The Crucial Scope Issues*, 73 SMU L. Rev. 779, 793–94 (2020).

The defendant insists the plaintiff has all he is entitled to and declines to produce more. There are documents the defendant exchanged with the companies involved in providing the defendant with the automated gate systems at their facilities. The defendant oddly insists these are privileged. There are documents the defendant shared with other third parties. The defendant says these, too, are privileged. And, there is the defendant's response to one of plaintiff's Requests to Admit. The plaintiff insists it is improper. As with the previous half-dozen discovery feuds these parties have had, resolution of this one involves an exercise of the extremely broad discretion a court has over discovery matters. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022). Mindful of the governing principles we turn to the present controversy.

## I.

We begin with the dispute over defendant's response to one of the plaintiff's twenty-three requests for admission. In Request No. 4, the plaintiff asked:

> 4. Admit that you did not obtain Plaintiff David Fleury's informed written consent to collect his Biometrics prior to the first occasion he underwent the AGS Driver Registration Process at one of Your Illinois facilities.
>
> To this seemingly simple request the defendant responded:
>
> RESPONSE: Union Pacific objects to this Request to the extent it is based on an assumption or implies that consent was required, that consent cannot be obtained electronically consistent with the Illinois Uniform Electronic Transactions Act (IUETA), 815 ILCS 333/2(8), or that Union Pacific collects Biometrics. Such assumptions or implications are denied. Union Pacific further objects to the defined term "AGS Driver Registration Process" as defined by Plaintiffs as confusing, vague, and ambiguous, and it will be assumed to have its common meaning. Subject to and without waiving the foregoing objections, denied that Union Pacific did not obtain Plaintiff's informed consent, including implied and actual consent via the driver enrollment process. Any remaining assertions are denied.

[Dkt. #247-4, Page 6/12].

3

The defendant's response came *more than eight months ago* on August 11, 2023. [Dkt. #247-4, Page 11/12]. It didn't cause much of a stir as the parties had only one meet-and-confer regarding it, *more than seven months ago* on September 23, 2023. [Dkt. #247, at 18-19]. In any event, under Fed. R. Civ.P. 36(a), a responding party can either answer or object, and if answering, may: (1) admit the matter; (2) deny the matter; or (3) state "in detail" why he "cannot truthfully admit or deny" it. Fed. R. Civ. P. 36(a)(4), (5). *See also Aharon v. Babu*, No. 22 CV 4502, 2023 WL 5955844, at *1 (N.D. Ill. Aug. 21, 2023); *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 C 3166, 2023 WL 2429010, at *1 (N.D. Ill. Mar. 9, 2023); *Symbria, Inc. v. Callen*, No. 20 C 4084, 2021 WL 4987185, at *2 (N.D. Ill. Aug. 2, 2021); *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, No. 15 CV 9323, 2021 WL 1165089, at *1 (N.D. Ill. Mar. 25, 2021). The defendant clearly denied the plaintiff's request. The plaintiff thinks the defendant ignored the words "informed written" and "prior to the first occasion," but the defendant both specifically denied the request and fairly responded to its substance. Fed. R. Civ. P. 36(a)(4). This portion of the plaintiff's motion is denied.

## II.

Next, the plaintiff wants eleven documents that the defendant claims are privileged, arguing that the defendant shared those documents with third parties. The parties' non-compliance with Local Rule 37.2 as to this dispute is worse than their non-compliance with the common interest dispute. Judging by the parties' emails of the first week of November 2023, and December 13, 2023 and January 16, 2023, the issue did not come up until plaintiff reviewed defendant's privilege log of December 13th and responded to it on January 16th. [Dkt. #247-6]. The only meeting the parties had regarding their privilege disputes was months ago on November 1, 2023.

4

[Dkt. #247, at 17-18]. If these quarrels are not important enough for the attorneys (six for the plaintiff and four for the defendants) who have substantial resources at their disposal (four law firms from three cities) to actually sit down and negotiate *in good faith* more than once, one has to wonder exactly how important they are.

In any event, the entries for these documents on the defendant's privilege log show they were sent to either Anthony Chavira (logistics) or Ramakrishna Kothapally(software). Both were third-party contractors for the defendant with whom the defendant's counsel were communicating regarding privacy policy involved with the defendant's gate security systems. Although statements made to attorneys in the presence of third parties typically are not privileged, an exception applies where a third party is "present to assist the attorney in rendering legal services." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) said it this way:

> This exception applies both to agents of the attorney, such as paralegals, investigators, secretaries and members of the office staff responsible for transmitting messages between the attorney and client, and to outside experts engaged "to assist the attorney in providing legal services to the client," such as accountants, interpreters or polygraph examiners. Additionally, this exception reaches retained experts, other than those hired to testify, when the expert assists the attorney by transmitting or interpreting client communications to the attorney or formulating opinions for the lawyer based on the client's communications.

Obviously, in a case like this one, attorneys are going to need assistance from experts in how these complicated systems work and affect shipping and security logistics. While software and logistics don't appear to fall in the category of legal advice, the legal advice in this case has to be informed by individuals whose expertise falls outside of the realm of motions to compel discovery. If that's not apparent, one need only go back to the Memorandum Opinion and Order of December 13, 2023. *Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2023 WL 8621957, at *3

5

(N.D. Ill. Dec. 13, 2023). Perhaps plaintiff's counsel is sufficiently well-versed in this technology and in binary large objects and hex, but it's likely that many, if not most, lawyers are not. Thus, it is to be expected that folks like Anthony Chavira and Ramakrishna Kothapally might be consulted and involved in legal advice regarding these types of topics. This part of the plaintiff's motion is also denied.

### III.

The final problem in this edition of the parties' discovery difficulties is the fact that plaintiff wants a look at correspondence that the defendant had with counsel for Remprex and/or counsel for Nascent Technology. We are told that Nascent licensed the automatic gate system software to defendant, and that Remprex sold the automatic gate system hardware to defendant. In response to plaintiffs' third-party subpoenas, Nascent and Remprex identified various documents which were exchanged with defendant on their Fed. R. Civ. P. 45 privilege logs. As these communications or documents were shared among the three, the plaintiff argues that they were not confidential, and, therefore, any privilege was waived. The defendant, however, claims the three parties shared a "common interest," so the privilege remained intact.

According to the plaintiff's submission, the parties met and conferred just once over this issue five months ago on November 1, 2023. [Dkt. #247, at 17]. The rest of their interactions was in a handful of emails. [Dkt. # 247, at 17-18]. As far as compliance with Local Rule 37.2 goes, emails, of course, don't count. The Rule specifically requires "consultation in person or by telephone ...." N.D.Ill.LR. R. 37.2. *See also Bilek v. Fed. Ins. Co.*, No. 21 CV 1651, 2023 WL 8270362, at *8 (N.D. Ill. Nov. 29, 2023)("Written correspondence is insufficient to demonstrate that the parties exhausted their meet and confer obligations ...."); *Lukis v. Whitepages Inc.*, 535 F.

6

Supp. 3d 775, 799 (N.D. Ill. 2021)("Courts in this District routinely enforce the requirement that the consultation take place orally."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("The command in the rule could not be more explicit. Emails and letters are not enough under Rule 37.2."). Perhaps, after so much discovery, this last little bit wasn't important enough to have more than one meeting, or to meet sometime in the four months before filing a motion to compel. But, it has to be said, especially in a case where the attorneys have required more than the usual amount of judicial involvement in discovery – what some judges might call hand-holding. S*ee, e.g., Garrard v. Rust-Oleum Corp.*, No. 20 C 00612, 2023 WL 1475164, at *2 (N.D. Ill. Feb. 2, 2023)("The referral from [the district court] was for "discovery supervision," not hand-holding."); *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, No. 3:15-CV-122 (CDL), 2022 WL 11237724, at *1 (M.D. Ga. Oct. 19, 2022)("... the drafters of the Rules provided a logical, straightforward process that should be easily navigable by good lawyers without extensive hand-holding by the Court, so that discovery can be conducted efficiently, expeditiously, and without unnecessary expense."); *Williams v. Ests. of Hyde Park*, LLC, 2020 WL 5702297, at *1 (N.D. Ill. 2020). In short, one meeting several months ago is unacceptable.[2] That's especially the case because what the parties have presented to the court on this dispute is, it has to be said, rather sketchy. Their submissions raise questions rather than answer them.

---

[2] Plaintiff supports his claim that the parties complied with Local Rule 37.2 in claimed "good faith" by pointing out that the defendant "acknowledged that the Parties have sufficiently met and conferred on the subjects herein." [Dkt. #]. But, Local Rule 37.2 doesn't exist for attorneys or parties; it exists "[t]o curtail undue delay and expense in the administration of justice . . . ." N.D.Ill.L.R. 37.2. As such, the parties aren't allowed to simply agree they've complied and file motions with a wink to one another. The Rule is not satisfied and evaded with a mutual "let's not and say we did."

Plaintiff begins by complaining that the defendant has refused to list these withheld Nascent and Remprex documents on its privilege log, which fails "to identif[y] any documents Defendant is withholding on the basis of the common interest privilege." [Dkt. #247, at 5-6]. But there isn't really a "common interest privilege." The "common interest" doctrine is not a separate privilege; rather, it derives from the attorney-client privilege. It is "an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). The "common interest" doctrine allows communications that are already privileged to be shared between parties having a "common legal interest" without a resultant waiver. So, one wouldn't expect to see "common interest" in the "Type of Privilege" column of a privilege log. But, at the same time, if a party were claiming such documents were privileged, it should be listed on a privilege log and described properly. Fed.R.Civ.P. 26(b)(5)(A)(ii). And the recipients (or author) column would list the "common interest" parties. But, apparently, the defendant hasn't listed any such documents on a privilege log, claiming the parties had a deal that relieved them of the burden of listing post-Complaint communications on privilege logs. Given the contentious history of this case, it takes a lot of imagination to believe these two sides had a deal.

In any event, by December 13, 2023, defendant's lawyers told the plaintiff's lawyers in an email that "[t]here are no communications between counsel for Union Pacific and counsel for either Remprex or Nascent that pre-date the litigation over which Union Pacific is claiming privilege pursuant to common interest. Under the terms of the ESI protocol to which the parties agreed, communications involving counsel that post-date the filing of the complaint need not be placed on a privilege log." [Dkt. #247-6]. Plaintiff's counsel didn't respond for over a month when, on

8

January 16, 2024, they wrote that "[t]he ESI protocol has nothing to do with Defendant's obligation to search for and either produce requested communications or identify them as being withheld on the basis of privilege" and told the defendant they would be filing a motion to compel [Dkt. #247-6][3], which came seven weeks later on March 4, 2024.[4]

The defendant, essentially, wants the court to enforce the parties' purported agreement. [Dkt. # 250, at 5-6]. The court might want to but, we say "purported" because the court hasn't seen it. One would think the defendant would have cited to it in its response brief, but it did not. So, the court does not know what terms are to be judicially approved. The plaintiff, on the other hand, claims that "the Parties did not enter into a formal or informal ESI protocol with any such a limitation." [Dkt. #247, at 8]. So, does that mean there is no ESI agreement at all? Or that there is an ESI agreement, but it doesn't have the terms the defendant claims it does. And, does that mean the agreement is oral? The plaintiff indicates as much in its reply brief, saying the parties "did not enter into a formal ESI protocol in this case" but "did discuss at length – and ultimately come to agreement on – specific ESI search terms and the custodians subject to Defendant's ESI search." [Dkt. #253, at 3 & n.3]. So, it looks as though there might be an informal, oral ESI agreement. The plaintiff might have said that in its opening brief.

---

[3] At that point fact discovery was set to close on February 29, 2024. As already noted, that deadline was extended to April 15, 2024, at the parties' behest on February 5, 2024. [Dkt. #245]. When the parties sought that extension on February 2, 2024, one of the reasons proffered was that the plaintiff intended to file this motion to compel. [Dkt. #244, Par. 15].

[4] The plaintiff seems to take issue with the fact that the court gave the defendant nine and a half business days [Dkt. #249] in which to respond to the plaintiff's motion to compel, calling it a "long briefing schedule." [Dkt. #253, at 14-15]. In so doing, the court was taking into consideration the fact that plaintiff was raising three separate discovery disputes and also staggering the completion of briefing on this matter among the completions of briefing on a few other discovery disputes the court was called upon to resolve.

In any event, the defendant says the parties agreed, apparently orally (the defendant hasn't been clear) that they need not list post-complaint communications on a privilege log. Such agreements aren't unheard of: some courts even have Local Rules stating that post-Complaint communications need not be listed in privilege logs. *See, e.g.*, S.D.Fla.L.R. 26.1(g)(3)(C); N.D. Okla. L.R. 26.4; *see also Stern v. O'Quinn*, 253 F.R.D. 663, 689 (S.D. Fla. 2008)("In the Southern District of Florida, a policy decision has been made that, despite the relevancy of a given document, in most cases, there is no good reason to require a party to go through the expense and burden of creating a privilege log with respect to documents created after the commencement of a case."). A number of other courts determine, on a case-by-case basis whether post-complaint privilege logs are worth the effort required. *See Rayome v. ABT Electronics*, No. 21 C 2639, 2024 WL 1435098, at *3 (N.D. Ill. Apr. 3, 2024)(collecting cases). So, the defendant isn't coming completely out of left field with the idea, as the plaintiff's consternation would suggest.

But, the plaintiff says there is no such agreement. The odd thing about that is one would think the plaintiff would have immediately – and vehemently -- denied that the parties agreed to any such thing after receipt of the defendant's December 13, 2023 email. [Dkt. #248-6]. If the issue was significant enough to inspire 30 pages of briefing and 120 pages of exhibits, why wait over a month to deny the defendant's claim? And, when the denial finally comes, writing that the "ESI protocol has nothing to do with Defendant's obligation to search for and either produce requested communications or identify them as being withheld on the basis of privilege" is a little wishy-washy, especially given the tenor of some of the plaintiff's briefs.

Defendant's position is certainly no better. Defendant claims it has "been operating under this understanding of the parties' agreement." [Dkt. #250, at 5]. It doesn't seem like it. If there

10

was such an agreement, why then would the defendant list quite a number of post-complaint communications involving counsel – Melissa Siebert, for example – on its privilege log? [Dkt. #247-3, see, e.g., entry nos. 123, 124, 125, 126, 127]. There also appear to be any number of documents listed involving in-house counsel, Reha Dallon.

So, after about 170 pages of briefs and exhibits, maybe there was an agreement that the parties need not list post-Complaint communications on their privilege logs and maybe there wasn't. The court – any court – would appreciate (and is entitled to) a bit more help than that. After all, "[a]n advocate's job is to make it easy for the court to rule in his client's favor ...." , *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). *See also* Holmes, The Law, in Collected Speeches 16 (1931)("Shall I ask what a court would be, unaided? The law is made by the Bar, even more than by the Bench."). Courts have vast discretion in resolving discovery disputes and that often means there's no right or wrong answer. Still, in this instance, it would have been more helpful to have had a bit more solid ground on which to base a ruling one way or the other.

I would ordinarily decline to rule on a such a purportedly significant dispute where the parties met just one time several months ago – and, seemingly, did not exactly do so in the required good faith[5] and where the parties' briefs have been less than helpful. But, because the defendant

---

[5] *See, e.g., Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2022 WL 17082587, at *1 (N.D. Ill. Nov. 18, 2022)("If two sides are battling over nine separate discovery issues for at least five months, a single phone call does not meet their Local Rule 37.2 obligations."); *Art Akiane LLC. v. Art & SoulWorks LLC*, 2020 WL 5604064, at *1 (N.D. Ill. 2020)(size of dispute brought to the court is evidence of parties' failure to confer in good faith); *W. Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 308 F. Supp. 3d 954, 958–59 (N.D. Ill. 2018)("Chatting for a bit about a dispute.... is not engaging in a good faith meet and confer."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("A single phone call in three months regarding a dispute ... doesn't come close to sufficing."); *Chamberlain Grp. v. Lear Corp.*, 2010 WL 2836975, at *2 (N.D. Ill. 2010)(single face-to-face meeting did not meet the local rule's requirements).

is asserting that the "common interest" doctrine covers its communications with Nacsent and Remprex, the defendant is definitely going to have to compile a privilege log for those exchanges whether they came before or after plaintiff filed its initial Complaint.

The common interest doctrine is strictly construed, and applies only to common legal interests. *BDO Siedman*, 492 F.3d at 816. Shared business, commercial and financial interests do not trigger this exception. *Miller UK Ltd. v. Caterpillar, Inc*., 17 F. Supp. 3d 711, 733 (N.D. Ill. 2014) (plaintiff waived attorney-client privilege over documents it shared with prospective funders because plaintiff sought funders for money, not for legal advice or litigation strategies). The parties shared interests must be identical, not similar. *See, e.g., Allendale Mut. Ins. Co. v. Bull Data Sys., Inc*., 152 F.R.D. 132, 140 (N.D. Ill. 1993). That said, the parties' interests need not be "compatible in all respects." *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979). They need only have some interests in common.[6]

In this instance, from a general perspective, it is not difficult to see that the defendant has some common legal interests with its software and hardware providers in a BIPA case. BIPA launched a thousand ships of litigation, a fleet of them from the law firms on the plaintiff's side of

---

[6] The defendant asserts that it is "undisputed that [it] entered into separate common interest/joint defense agreements with Remprex and Nascent, both non-parties to this action." [Dkt. #250, at 6]. The court has seen two "Common Interest Agreement[s]" the defendant executed with Nascent. [Dkt. ##247-9, 247-10]. One was executed in November 2020 and the other in December 2022. [Dkt. #247-10, Pages 6,12/12]. The court hasn't seen any such agreement with Remprex. Why the defendant wouldn't provide a copy is just another frustrating aspect of the parties' less than completely informative briefing in this dispute. While a written agreement is one factor to consider, *LKQ Corp. v. Kia Motors Am., Inc*., No. 21 C 3166, 2023 WL 3200236, at *3–4 (N.D. Ill. May 2, 2023); *Breuder v. Bd. of Trustees of Comm. College Dist. No. 502*, 2021 WL 949333, at *5 (N.D. Ill. Mar. 12, 2021), it's not necessarily dispositive. *Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc*., No. 19 C 7675, 2021 WL 5834004, at *4 (N.D. Ill. Dec. 9, 2021); *Chamberlain Mfg. Corp. v. Maremont Corp*., No. 90 C 7127, 1993 WL 625511, at *4 (N.D. Ill. July 21, 1993).

this case alone. *See, e.g.*, *Citizens Ins. Co. of Am. v. Mullins Food Prod., Inc.*, No. 22-CV-1334, 2024 WL 809111, at *2 (N.D. Ill. Feb. 27, 2024); *Deyerler v. HireVue, Inc.*, No. 22 CV 1284, 2024 WL 774833, at *1 (N.D. Ill. Feb. 26, 2024); *Bhavilai v. Microsoft Corp.*, No. 22 C 3440, 2024 WL 992928, at *1 (N.D. Ill. Feb. 8, 2024); *Garner v. Bumble Inc.*, No. 3:21-CV-50457, 2023 WL 6065481, at *1 (N.D. Ill. Sept. 18, 2023); *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2023 WL 4297654, at *1 (N.D. Ill. June 30, 2023); *Rushing v. McAlister's Franchisor SPV LLC*, No. 22-CV-649-SMY, 2023 WL 2163388, at *1 (S.D. Ill. Feb. 22, 2023); *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 681 (N.D. Ill. 2023); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 947 (N.D. Ill. 2022). And software and hardware providers are in the path as possible collectors of data – although, since its early days for BIPA, the results appear to differ from case to case. *See, e.g.*, *Deyerler v. HireVue, Inc.*, No. 22 CV 1284, 2024 WL 774833, at *6 (N.D. Ill. Feb. 26, 2024)(complaint stated a claim against software provider for collection of data); *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2023 WL 4297654, at *5 (N.D. Ill. June 30, 2023)("Although Remprex employees were the ones who collected or captured the drivers' fingerprints, a reasonable jury could find that BNSF 'otherwise obtained' the data."); *Bhavilai v. Microsoft Corp.*, No. 22 C 3440, 2024 WL 992928, at *1 (N.D. Ill. Feb. 8, 2024)("But selling or licensing a tool that can be used to collect a facial scan is not the same as actually doing the collecting."); *Clark v. Microsoft Corp.*, No. 23 C 695, 2023 WL 5348760, at *3 (N.D. Ill. Aug. 21, 2023)("Here, as far as I can tell from the complaint, [defendant software provider] provided technology to [third party], plus storage. That is not an active step."); *Clark v. Microsoft Corp.*, No. 23 C 695, 2023 WL 5348760, at *3 (N.D. Ill. Aug. 21, 2023)("In fact, a complete reading of the complaint makes clear that defendant is merely a third-party technology provider (that is, merely provided the cameras), and

13

that the active collector and processor of the data is [plaintiff's employer]."); *Tapia-Rendon v. United Tape & Finishing Co.*, No. 21 C 3400, 2023 WL 5228178, at *2 (N.D. Ill. Aug. 15, 2023)(software provider "admits that it did not inform [plaintiff] that her information would be collected or stored, for what purpose it would be collected or stored, or the length of time that her information would be collected or stored."). Nascent and Remprex aren't defendants in this case, but plaintiff's lawyers have them in their crosshairs, issuing subpoenas and directing fire at them in their Motion to Compel. Overall, the plaintiff can't have been surprised by an assertion of the Common Interest Doctrine. There are issues in this case that involve the software and hardware, such as those regarding whether the Auto-Gate Systems collect, capture, or otherwise obtain biometrics and whether, and to whom, those systems disclose biometrics. [Dkt. #208, Pars. 26-27, 40, 80-81]. So, from a general perspective, one can say that the defendant and Nascent and Remprex have some common legal interests.

But, that's just the general perspective. The "common interest" doctrine is only applied specifically to "those communications made to further an ongoing enterprise." *BDO Seidman*, 492 F.3d at 815-816. So, not all communications among counsel for Nascent or Remprex and counsel for defendant will necessarily fall under the "common interest" doctrine. Just as a party cannot make a blanket claim of attorney-client privilege, *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983), it cannot simply make a blanket claim of common interest doctrine applicability as the defendant is attempting to do here. It must instead assert the common interest doctrine on a document-by-document basis, as it is limited to those documents that fall within that interest. *Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*, 2021 WL 5834004, at *4 (N.D. Ill. Dec. 9, 2021); *People ex rel. Madigan v.*

14

*Illinois High Sch. Ass'n*, No. 12-CV-3758, 2014 WL 517969, at *2 (N.D. Ill. Feb. 10, 2014); *Dexia Credit Loc. v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004). In other words, the subject matter of the exchanges will have to fit the common interest mold. It cannot be assumed, and it is, of course, the defendant's burden to prove entitlement. That means it will have to compile a privilege log as to any such documents and produce it to the plaintiff as soon as possible, but not later than 30 days of the entry of this Order.

    For the preceding reasons, the Motion [Dkt. ##247, 248] is denied.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/15/24