IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID FLEURY, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | No. 20 C 390 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The defendant has filed a "Motion for Protective Order to Quash or Otherwise Preclude Deposition of Lance Fritz." [Dkt. #255]. The instant motion is another discovery dispute in a long line of discovery disputes in this case. This one goes all the way back to July 26, 2023, when the plaintiff served a Notice of Rule 30(b)(1) Deposition for Lance Fritz, the former head of defendant, Union Pacific. This case is about whether truckers scan their thumbprints consensually when accessing the defendant's Illinois facilities. How much would the head of the company know about the nuts and bolts of the technology, or whether there was consent? That's essentially the tack the defendant took with the plaintiff last summer when this spat first started. And, as is something of a pattern in this case, nothing happened regarding the deposition for months.

The defendant tells us that, as the parties were approaching the conclusion of fact discovery and after nine defendant employees had already been deposed, plaintiff issued an amended notice for Mr. Fritz's deposition. Defendant does not provide the notice or the specific date when the notice was issued and when the deposition was noticed for. Defendant says that the plaintiff indicated the desire to depose Mr. Fritz was "based solely on a document (1) that critically pre-dates the

technology at issue in this case; and (2) pre-dates Mr. Fritz's role as [head of Union Pacific]." [Dkt. #255, Page 2/8]. But, as with the deposition notice itself, the defendant does not share that document with the court.[1] We are told that defense counsel asked plaintiff's counsel to withdraw the notice on March 12, 2024 – one month before the close of fact discovery [Dkt. #245]– and plaintiff's counsel refused. Defense counsel filed this motion three weeks later, and briefing followed. So, the parties have combined, once again, to push right up against the fact discovery deadline, which was April 15th.[2]

The parties agree on the factors courts consider in an "apex doctrine" situation like this one. A court has the discretion to protect high-level executives from being deposed pursuant to the "apex doctrine" if any of four circumstances exist: (1) the official has no unique personal knowledge of the matter in dispute; (2) the information can be garnered from other witnesses; (3) the information can be garnered from other discovery methods; or (4) sitting for the deposition would impose a hardship in light of the officer's other duties. *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, No. 20 C 7713, 2022 WL 16646418, at *3 (N.D. Ill. Nov. 2, 2022) *DeLeon-Reyes v. Guevara*, Nos. 18 C 1028, 18 C 2312, 2021 WL 3109662, at *3 (N.D. Ill. July 22, 2021); *Lee v. City of Chicago*, No. 20 C 1508, 2021 WL 2399999, at *2 (N.D. Ill. June 11, 2021); *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020). The apex doctrine isn't so much

---

[1] The defendant did not attach these seemingly salient documents to its motion, and it is not clear if it was a stratagem or an oversight. Previously, in this continuing discovery drama, the defendant's attorneys adverted to an agreement defendant had with plaintiff's counsel and to an agreement defendant had with its gate system hardware provider, but provided no copies of either for the court. [Dkt. #250, at 5-6].

[2] As of February 2, 2024, when the parties sought the most recent of their several discovery extensions, there was no mention of any dispute over the deposition of any Union Pacific witness. [Dkt. #244, Pars. 7-9].

a "doctrine" as it is a common sense notion that valuable executive time should not be wasted if the officer has no real information. *See Full Circle*, 2022 WL 16646418, at *3; *Kove IO, Inc. v. Amazon Web Servs., Inc.*, No. 18 C 8175, 2021 WL 12094206, at *5 (N.D. Ill. Oct. 26, 2021); *Dyson, Inc. v. Sharkninja Operating LLC*, No. 14 C 779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016)). The party hoping to avoid the deposition has the burden of showing that the apex doctrine should be applied to prevent it. *Connelly v. Cook Cnty. Assessor's Off.*, No. 19 CV 7894, 2022 WL 17718411, at *2 (N.D. Ill. Dec. 15, 2022); *Full Circle*, 2022 WL 16646418, at *4.

There is a problem with the defendant's motion right off the bat, however, because Mr. Fritz is not the head of Union Pacific anymore. He left the company in August 2023. [Dkt. #255-1. Par. 2]. The defendant argues that this doesn't matter because "it is well-settled that the apex doctrine is no less applicable to former officials than to current officials," citing *Lee v. City of Chicago*, No. 20 CV 1508, 2021 WL 2399999, at *3 (N.D. Ill. June 11, 2021). [Dkt. #255, Page 5/8]. But, as the plaintiff points out [Dkt. #258, at 4], the court in *Lee* was speaking of former *government* officials. The cases the *Lee* court relied upon explained why the situation is different:

> The integrity of administrative proceedings and the underlying decisionmaking process of agency officials are just as important where the official to be questioned no longer serves in the same position. And "indiscriminate depositions of high-ranking government officials would ... likely discourage" people "from accepting positions as public servants" irrespective of whether those deposed were current or former officials.

*United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-1521, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002); *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015). Here, there are no concerns about "the integrity of administrative proceedings" or the "underlying decisionmaking process of agency officials." And,

given what heads of American corporations are paid, having to sit for a deposition – or even for a few depositions – is certainly not going to be the deal-breaker that it might be for a modestly-paid government official. The defendant essentially ignores the distinction in its reply brief and clings to *Lee* like a lifeboat.

Still, as should be expected in discovery disputes where decisions involve matters of discretion, *see Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2023 WL 4549668, at *3 (N.D. Ill. July 14, 2023)(collecting cases), courts go both ways on the question of whether the apex doctrine applies to *former corporate* executives. Many courts have applied the doctrine in instances like this. *See, e.g., Shao v. Allstate Ins. Co.*, No. 1:23CV809 (RDA/WEF), 2024 WL 1014172, at *1 (E.D. Va. Feb. 5, 2024)(applying apex doctrine to former company president and former regional finance leader); *Cellustar Corp. v. Sprint Sols., Inc.*, No. CV 19-01559 (GMM), 2024 WL 418140, at *4 (D.P.R. Feb. 5, 2024)(former president and CEO); *Harapeti v. CBS Television Stations Inc.*, No. CV2115675JXNLDW, 2021 WL 8316391, at *2 (D.N.J. Dec. 1, 2021)(former president); *Harapeti v. CBS Television Stations Inc.*, No. 21 MISC. 680 (PAE), 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021)(applies to former executives); *Mallory v. Wells Fargo Bank, N.A.*, No. 3:19-CV-744, 2021 WL 2478473, at *2 (M.D. Pa. June 17, 2021)(applying apex doctrine to former CEOs); *Davis v. Pinterest, Inc.*, No. 19CV07650HSGTSH, 2021 WL 11117688, at *1 (N.D. Cal. May 27, 2021)(stating that deposition notices to former high-level executives "look like the classic case of what the apex doctrine is designed to prevent . . . ."); *Palmisano v. Paragon 28, Inc.*, No. 21-60447-CIV, 2021 WL 1686948, at *3 (S.D. Fla. Apr. 7, 2021)(deposition of former CEO was subject to the apex doctrine); *Office Depot, Inc. v. Elementum Ltd.*, Civ. A. No. 19-81305, 2020 WL 5506445, at *3 (S.D. Fla. Sept. 14, 2020) (former members of board of directors); *Rembrandt*

*Diagnostics, LP v. Innovacon, Inc.*, No. 16-CV-0698 CAB (NLS), 2018 WL 692259, at *7 (S.D. Cal. Feb. 2, 2018)(". . . the protections of the apex doctrine continue to apply to [former company president] despite his recent change in employment."); *Rodriguez v. SLM Corp.*, 2010 WL 1286989, at *2, 2010 U.S. Dist. LEXIS 29344, at *6 (D. Conn. Mar. 26, 2010)(former executives); *see also Vital Proteins, LLC v. Ancient Brands, LLC*, No. 1:22-CV-02265, 2023 WL 5671857, at *4 (N.D. Ill. Sept. 1, 2023)(noting that many courts have held that the doctrine is applicable to former executives and officials."). So, the plaintiff's sweepingly, categorical assertion that applying the apex doctrine to former corporate executives would be "contrary to apex case law" [Dkt. #258, at 4] appears to be mistaken or, at least, an exaggeration.[3]

In any event, Mr. Fritz informs the court that he continues to serve as an advisor to Union Pacific and is also a board member of a few other companies and a couple of non-profits., as well as Georgia Tech and the Omaha Zoo. He swears he is a busy fellow as a result of all that. [Dkt. #255-1, Pars. 8-10]. The court takes him at his word. *See, e.g., Connelly v. Cook Cnty. Assessor's Off.*, No. 19 CV 7894, 2022 WL 17718411, at *3 (N.D. Ill. Dec. 15, 2022)(noting that parties seeking to block depositions have met their burden by providing sworn statements); *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 CV 50107, 2020 WL 1675593, at *4n.4 (N.D. Ill. Apr. 6, 2020)(indicating that parties should present affidavits regarding time commitments of executives);

---

[3] This is not to say that the plaintiff is deliberately misrepresenting the state of "apex case law," but perhaps only to say that the zeal of advocacy need not always be turned up to eleven, especially in discovery disputes where, as already explained, cases generally go both ways. Indeed, the back and forth here is typical of the parties' apparent reluctance to compromise in discovery, which is an area where a position is rarely if ever on unassailable ground.There are those either unaware of *Lee*'s provenance or unwilling to acknowledge it or look into it, inflexibly maintaining that it was meant to apply to former corporate executives despite its provenance. On the other side are those unwilling to acknowledge the extensive body of case law, contrary to the position being zealously defended.

*Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *2 (N.D. Ill. Feb. 21, 2020)(sworn declaration that party's official duties require his full-time attention). But, anyone can say they are busy, and, relatively speaking, a plumber or a small business owner or a stay-at-home parent would be hit much harder, having to lose an entire day of their life answering attorneys' questions than a CEO would.

Mr. Fritz also swears he has no unique, personal knowledge of any information collected through the AGS; or of the manner in which the AGS collects any information regarding drivers and carriers; or of the recordkeeping of driver ingress and egress at defendant's facilities; or regarding defendant's decision to implement finger sensors, the timeline of their installation, or any current use or discontinuance of use, or of the contractor who performed any work concerning AGS. [Dkt. #255-1, Pars. 3-6]. That seems more likely to be true than not. There would seem to be a lot of layers between the head of a huge corporation and the ground level things we are talking about here.

But, the plaintiff counters that the documents Mr. Fritz signed show he has "relevant, unique, and irreplaceable testimony." That's not necessarily so. Review of the 130 pages of exhibits the plaintiff has submitted, still results in some uncertainty about what plaintiff expects to ask Mr. Fritz and how that would fit, not only into the "unique and personal knowledge" category, but how it fits into the plaintiff's case. Mr. Fritz reviewed a document discussing the biometric capabilities of the SAIC automated gate system. But, we already know there was an automated gate system, and it is beyond doubt that there are far better sources regarding how it works than the former head of the company. Mr. Fritz's signature also appears on documents "represent[ing] multimillion-dollar outlays of capital by Union Pacific for projects directly related to this litigation, such as the installation of the biometrically reliant automated gate system that Plaintiffs allege violated their

6

rights." But, again, we already know the gate systems were installed, so it is difficult, without more from the plaintiff, to see what the point would be of a deposition. Mr. Fritz also signed documents regarding the changeover from one company – SAIC – to another – Remprex. But, it is difficult to fathom from plaintiff's conclusory assertion that this gave him unique and personal knowledge about the gate systems and just what plaintiff thinks Mr. Fritz might know that hasn't been already derived from discovery and what kinds of things would be asked a deposition that would be relevant to this case.

On the other hand, these documents suggest that Mr. Fritz had more involvement in the whole automated gate system installation project than he lets on in his Declaration.[4] He is listed as a "Project owner" and an "Executive Sponsor." He asked for regular updates on the project from the team working under him on the project. [Dkt. #258-4]. Again, it's not clear what plaintiff thinks Mr. Fritz can provide in the way of testimony, but there is the matter of whether the defendant acted intentionally or recklessly. *See Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2024 WL 1555848, at *4 (N.D. Ill. Apr. 10, 2024). Defendant has argued that its conduct "cannot be deemed intentional or reckless, . . . ." [Dkt. # 7-8, 13] and will, of course, continue to do so. Thus, the plaintiff would contend he should have an opportunity to counter that position with a deposition of a "Project Owner" and "Executive Sponsor." *See, e.g., Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2023 WL 4297654, at *6 (N.D. Ill. June 30, 2023)(discussing the type of evidence that could support a jury verdict on reckless violation of BIPA).

---

[4] Declarations, after all, are not always absolutely reliable. *See, e.g., Brenda L. v. Saul*, 392 F.Supp.3d 858, 867-68 (N.D.Ill. 2019).

Plaintiff also wants to question Mr. Fritz regarding the defendant's financial situation. He submits that Mr. Fritz signed defendant's S.E.C. filings and argues that they are relevant to defendant's financial position, which defendant has raised in regard to the potentially staggering damage award sought in this case. But, obviously, the testimony of a former head of a company would not be terribly useful regarding the company's financial position a year or two or three later, when the issue of damages finally is decided. Plaintiff says lawyers are "entitled to probe the disconnect between what Defendant tells the SEC and its investors, and what it has told the Court." Why? What does it have to do with whether a damages award would be catastrophic or not? A reminder of what this case is about should not be necessary, but it certainly is not about representations to investors or the SEC. This sounds like nothing more than a "fishing expedition" for fish the plaintiff doesn't even have a license to catch. And perhaps even more importantly, the Seventh Circuit has repeatedly warned that discovery is not an exception to the prohibition against "fishing expeditions." *See, e.g., Higgason v. Hanks*, 54 F.App'x 448, 450 (7th Cir. 2022); *E.E.O.C. v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 971 (7th Cir. 1996). *See also Bierk v. Tango Mobile, LLC*, 2021 WL 1837376, *3 (N.D.Ill. 2021).

What this latest discovery dispute really comes down to, as we approach two years of discovery [Dkt. ## 89, 91], after a half-dozen or so extensions [Dkt. ##96, 108, 152, 181, 211, 245]– including two "final" extensions [Dkt. ##181, 245] – and multiple discovery disputes, *see, e.g., Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2023 WL 6214098, at *1 (N.D. Ill. Sept. 25, 2023), is whether the "game is worth the candle." Here, neither side's presentation tips the scales one way or the other. In any event, while a deposition will be allowed, it should not be for the seven hour default time in the Rules. A deposition of three-and-a-half hours should be sufficient. *See* Rule 30(d),

Federal Rules of Civil Procedure (giving the court the discretionary power to set the duration of a deposition for a period less than seven hours).

The remaining problem is the fact that the parties have left this issue until the last minute. Consequently, it is necessary to essentially reopen discovery for this one deposition, which shall be taken promptly within the next 21 days. As discussed, no one is completely unavailable for a few hours as Mr. Fritz apparently claimed. [Dkt. #255-1, ¶. 10]. *Compare Trump v. Vance*, 591 U.S. 786 (2020). The deposition be conducted by video if Mr. Fritz prefers.

Beyond this deposition, discovery is closed, and this deposition will not be allowed to serve as the basis for seeking any further discovery. Discovery and attendant disputes are well past the point of "enough is enough." *See, e.g., Whole Woman's Health All. v. Hill*, 937 F.3d 864, 877–78 (7th Cir. 2019)("A seemingly endless cycle of demands for information, responses, and new demands does not suggest a bona fide process. At some point, enough is enough."); *Walker v. Sheahan*, 526 F.3d 973, 981 (7th Cir. 2008)("And those further proceedings should not include any more discovery: enough is enough.").

For the following reasons, the motion [Dkt. #255] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/16/24