# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID FLEURY and ALVIN TURNER individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, <br><br> Defendant. | Case No. 20-cv-390 <br><br> District Judge LaShonda A. Hunt <br><br> Magistrate Judge Jeffrey Cole |

## JOINT PROPOSED FINAL DEPOSITION SCHEDULE

Pursuant to Magistrate Judge Cole's October 16, 2024 order (Dkt. 296), Plaintiffs David Fleury and Alvin Turner and Defendant Union Pacific Railroad Company jointly provide a proposed final schedule for the remaining expert depositions.

1. On October 15, the parties filed a joint motion to extend the expert discovery deadline for thirty days (the "Joint Motion") to ensure that each of the parties' twelve experts can be deposed. Dkt. 295.

2. On October 16, the Court issued an Order directing the parties to submit a final schedule for all remaining depositions for the Court's consideration in connection with the Joint Motion. Dkt. 296.

3. The parties jointly submit the following proposed final deposition schedule:

| Expert | Party | Date |
|---|---|---|
| Zetron Harvey | Union Pacific | October 23, 2024 |
| William S. Choi | Union Pacific | October 25, 2024 |
| Joseph Caruso | Plaintiffs | November 5, 2024 |
| Thomas L. Farmer | Union Pacific | November 6, 2024[1] |
| Greg J. Regan | Plaintiffs | November 12, 2024 |

4. The parties dispute the circumstances under which Plaintiffs may depose Union Pacific expert Adriene B. Bailey.

*Defendant's Position*

5. Ms. Bailey's deposition was scheduled for Tuesday October 1. Her expert report offers opinions regarding, among other things, the role that intermodal rail transportation and Class I railroads like Union Pacific play in the national and international economy; the importance of the Chicago metropolitan area as a hub of the freight transportation network; and how Union Pacific has partnered with the federal government, the State of Illinois, and Illinois municipal governments—including by entering into contracts with government entities—to ensure the continued operation and success of the railroad network in this metropolitan area.

6. After hours on Friday September 27, Plaintiffs unilaterally cancelled Ms. Bailey's deposition because they took issue with the portion of her opinions pertaining to Union Pacific's contracts with the State of Illinois and municipal governments. On Monday September 30, Plaintiffs filed a motion to bar evidence regarding those contracts. Dkt. 292. District Judge Hunt denied that motion as premature, stating that "if Plaintiffs object to Defendant's actions during

---

[1] The parties have agreed to a remote deposition of Mr. Farmer, in which counsel for Plaintiffs and Union Pacific will both participate in a remote capacity.

2

expert discovery, those are matters that must be presented to Judge Cole in the first instance." Dkt. 294.

7. In the wake of District Judge Hunt's order, Plaintiffs asked to reschedule Ms. Bailey's deposition; in so doing, they stated that they would not depose Ms. Bailey regarding the government contracts, but instead would reserve their right to resume her deposition later in the case depending on motion practice regarding those contracts. Union Pacific responded that although Plaintiffs had waived their right to depose Ms. Bailey by cancelling her deposition at the eleventh hour, Union Pacific would present Ms. Bailey for deposition, but only if Plaintiffs agreed to depose her only once; Union Pacific added that if Plaintiffs addressed the government contracts at Ms. Bailey's deposition, Union Pacific would *not* argue that Plaintiffs had waived any right to later challenge that aspect of her opinions or the admissibility of those contracts.

8. Plaintiffs' arguments to the contrary are without merit. Contrary to their assertion, government contracts are directly pertinent to Ms. Bailey's opinions. *See*, *e.g.*, Bailey Report ¶ 8 (stating her intention to opine on "the role of intermodal transportation – and of railroads and the Chicago metropolitan area in particular – in the national economy"), ¶ 11 ("The Chicago metropolitan area is so critical to the nation's rail freight transportation network that a program to increase rail capacity and improve connections between rail lines in the region has been ongoing since 2003: The $4.6 billion CREATE (Chicago Region Environmental and Transportation Efficiency) program is a public-private partnership between the federal government, State of Illinois, local agencies, and railroads that has been working for two decades to complete some 70 rail network improvement projects."), ¶ 16 ("[O]ne important component of Class I railroads' operations are the work they do for various government agencies. These include … construction and maintenance projects to ensure the safe transport of intermodal freight. I am aware that Union

Pacific has entered into contracts with the State of Illinois."), ¶ 37 (similar to ¶ 11), ¶ 38 ("Similarly, because of the importance of rail services, state and local governments often enter into contracts with railroads – including Union Pacific – to ensure railroads infrastructure, equipment, facilities, and adjacent roadways are safe and well maintained, and to improve the efficiency of intermodal and other rail freight flows."); *id*. at pp. 52-54 (identifying such state and local government contracts, including those pertinent to the CREATE program); Amended Bailey Appendix B at 5-12 (enhancing the list of state and local government contracts).

9. Those contracts are *also* pertinent Section 25(e) of BIPA, which excludes state and local contractors from BIPA's coverage. See 740 ILCS 14/15 (imposing obligations on "private entities"); *id*. 14/20 (allowing "persons aggrieved" to seek damages against "private entit[ies]"); *id*. 14/25(e) ("Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unity of government when working for that State agency or local unit of government.").

10. So, Plaintiffs' rationale for cancelling Ms. Bailey's October 1 deposition was essentially this: "Although the government contracts are relevant to Issue A (Ms. Bailey's opinion regarding the importance of the railroad/intermodal ecosystem and Union Pacific's participation therein), because Union Pacific said that the contracts are *also* relevant to Issue B (whether, in light of Section 25(e), Union Pacific falls outside BIPA's coverage), and because *we* believe that Issue B is not properly in the case, we are cancelling the deposition until we get a ruling from Judge Hunt on whether Issue B is properly an issue in the case." That position makes no sense. In fact, Judge Hunt denied Plaintiffs' motion to exclude in a minute order the day after it was filed—the day that Ms. Bailey's deposition was supposed to take place. Dkts. 292-294.

4

11. Plaintiffs seem to believe that Section 25(e) is an affirmative defense that must be pleaded in an answer. They are wrong. Section 25(e) creates an ordinary defense going to which entities and conduct BIPA covers, such as whether the data at issue in a case are "biometric identifiers" or "biometric information," whether the biometric identifiers in question were discovered or admitted in any court or agency action and thus excluded from BIPA's coverage by Section 25(a), whether the defendant is a financial institution excluded from BIPA's coverage by Section 25(c)—or (as here) whether the defendant is a state or local contractor excluded from BIPA's coverage by Section 25(e).

12. As Plaintiffs acknowledge, whether Section 25(e) is an affirmative defense or an ordinary defense is an issue reserved for District Judge Hunt. What is Magistrate Judge Cole's role, as District Judge Hunt made clear in her order, are "Plaintiffs['] object[ions] to Defendant's actions during expert discovery." Dkt. 294. The actions pertinent here are Ms. Bailey's disclosure of opinions regarding the public-private partnership between Union Pacific, on the one hand, and state and local governments, on the other, to ensure the continued operation and success of the railroad network in this metropolitan area, and her reliance on Union Pacific's contracts in support.

13. If Plaintiffs do not wish to depose Ms. Bailey about those opinions or contracts, that is their prerogative. But what they cannot do is abstain from including those topics in their deposition and, at the same time, reserve their right to re-open the deposition after District Judge Hunt rules on the Section 25(e) issue. (This would be so even if Plaintiffs had not cancelled Ms. Bailey's October 1 deposition at the eleventh hour.)

14. District Judge Hunt will have the opportunity to rule on the Section 25(e) issue at summary judgment—that is when the issue will be "presented to the Court for consideration." Dkt. 294. It is axiomatic that a plaintiff cannot wait for a summary judgment ruling on a particular

issue before taking discovery on that issue. That is not how discovery, or litigation, works, though that is precisely the result Plaintiffs seek here.

15. As Union Pacific has repeatedly assured Plaintiffs, if they depose Ms. Bailey on her opinions concerning Union Pacific's public-private partnerships and its state and local government contracts, Union Pacific will not argue that Plaintiffs would have waived any argument against Union Pacific's invocation of Section 25(e) or the admissibility of the contracts. Plaintiffs should only be permitted to depose Ms. Bailey one time.

*Plaintiffs' Position*

16. Ms. Bailey's Opinions and Report have nothing to do with government contracts, which are referenced in only two paragraphs of Ms. Bailey's 102-paragraph opinion. *See* Bailey Report ¶¶ 16 ("I am aware that Union Pacific has entered into contracts with the State of Illinois."); 38 ("Similarly, because of the importance of rail services, state and local governments often enter into contracts with railroads – including Union Pacific – to ensure railroads infrastructure, equipment, facilities, and adjacent roadways are safe and well maintained, and to improve the efficiency of intermodal and other rail freight flows.") Defendant is impermissibly using Ms. Bailey's report (and hopes to use her deposition) to place into the record approximately 100 alleged government contracts Union Pacific has purportedly entered into over the past decade-plus. Union Pacific has not pled or preserved a defense based on BIPA's "government contractor" exemption, and in fact it expressly objected to the production of, or corporate representative testimony regarding, such contracts as irrelevant. (Dkt. 292-3 & 4).

17. Plaintiffs called Defendant on this tactic and directly asked during a September 20, 2024 L.R. 37 meet and confer call whether Defendant intended to assert a "government contractor" defense. (Dkt. 292, pp. 4-6). Remarkably, Defendant's counsel initially asserted that Plaintiffs

6

were not entitled to know whether Defendant intended to assert the defense, and further declined to identify any pleading, discovery response or deposition testimony which Defendant contended put Plaintiffs on notice of the defense. (*Id.*) Defendant's counsel apparently subsequently thought better of its strategy, and advised by email dated September 27, 2024 that Defendant "was considering asserting a government contractor defense." (Dkt. 292-5, p. 5.) Plaintiffs, declining to step into Defendant's clumsy trap, advised Defendant's counsel that same day that it would not proceed with Ms. Bailey's deposition scheduled for October 1, 2024, and would instead file a motion to bar any testimony or evidence regarding the unpled government contractor defense.

18. Plaintiffs filed their motion the next business day on September 30, 2024. (Dkt. 292). Judge Hunt denied the motion as prematurely seeking "an advisory opinion on whether Defendant is entitled to raise a new defense or affirmative defense that has not yet been presented to the Court for consideration." (Dkt. 293). Plaintiffs thereafter requested to reschedule the deposition, which Defendant would only agree to do if Plaintiffs agreed that Ms. Bailey would only be deposed once.

19. Counsel met and conferred on the issue on October 19, 2024. Noting Judge Hunt's ruling that Defendant had not yet presented any request to raise a new defense or affirmative defense to the Court, Plaintiffs' counsel proposed a compromise that would allow the deposition to proceed without the Court's intervention: Plaintiffs would take the deposition and reserve its right to question the witness about government contracts if the Defendant ever presented it; Defendant could state on the record its position that Plaintiffs had no such right and that they would oppose any request to re-call the witness.[2] On Sunday, October 20, 2021, Defendant's counsel

---

[2] Of course, it is axiomatic that deposing a party can reserve on the record whatever rights it sees fit, and it is proper for the court to rule on such reservations of rights when they're brought to the court's attention and not before. Defendant's bid to receive such ruling now is premature and improper.

advised that Defendant rejected Plaintiffs' proposed compromise and that it would not present Ms. Bailey for deposition.

20. Plaintiffs recognize that it is not the Magistrate Judge's role in this case to determine with finality whether a party has forfeited a defense and are thus not seeking a ruling from Your Honor on that issue. Rather, in accordance with Judge Hunt's ruling denying Plaintiffs' Motion to Bar Evidence as premature, Plaintiffs will seek a forfeiture ruling if and when Defendant raises its forfeited defense before the district court. Indeed, in this document, Defendant has finally confirmed its intent to use the government contracts – the production of which Defendant has long maintained were not "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1) – to support not only the government contractor defense, but also some other undefined theory tied to Ms. Bailey's "awareness" of the government contracts. ¶ 14 *supra.* Even more remarkably, Defendant candidly admits that it did not intend to raise these defenses until summary judgment. This is plainly improper, and Plaintiffs will seek a forfeiture ruling at the appropriate time. In the meantime, Plaintiffs simply seek to depose Ms. Bailey on the claims and defenses that are in this case, without placing into the record hundreds of documents that Defendant has long maintained are irrelevant and refused to produce *during discovery*.

21. Accordingly, Plaintiffs ask that Your Honor require Defendant to produce its expert Adriene B. Bailey without conditions. Defendant's attempt to bring this issue before Your Honor in a status report appears to be Defendant's own way of obtaining a blessing for its forfeited defense. The Court should decline to do so, and order Defendant to simply produce its witness for Plaintiffs to depose as they see fit.

**Conclusion**

22. As detailed in the Joint Motion, a thirty-day extension of the deadline for expert discovery would allow the parties to complete expert depositions and would not impact any dispositive motion, class certification, *Daubert* motion, or trial deadlines, as no such deadlines have been set. And as stated in the Parties' Joint Motion to Extend Expert Discovery Deadline, the Parties anticipate seeking such deadlines from Judge Hunt promptly upon completion of expert depositions.

| | |
|---|---|
| Dated: October 21, 2024 | Respectfully submitted, |
| DAVID FLEURY and<br>ALVIN TURNER | UNION PACIFIC RAILROAD COMPANY |
| /s/ Tom Hanson<br>One of Plaintiffs' Attorneys | /s/ Johanna Spellman<br>One of Its Attorneys |
| Evan M. Meyers<br>David L. Gerbie<br>Brendan Duffner<br>Joseph M. Dunklin<br>MCGUIRE LAW, P.C.<br>55 W. Wacker Drive, 9th Floor<br>Chicago, IL 60601<br>Tel: (312) 893-7002<br>emeyers@mcgpc.com<br>dgerbie@mcgpc.com<br>bduffner@mcgpc.com<br>jdunklin@mcgpc.com | Sean M. Berkowitz (Illinois Bar No. 6209701)<br>  sean.berkowitz@lw.com<br>Gary S. Feinerman (Illinois Bar No. 6206906)<br>  gary.feinerman@lw.com<br>Johanna Spellman (Illinois Bar No. 6293851)<br>  johanna.spellman@lw.com<br>Kathryn A. Running (Illinois Bar No. 6330369)<br>  kathryn.running@lw.com<br>Latham & Watkins, LLP<br>330 N. Wabash Ave., Suite 2800<br>Chicago, IL 60611<br>Telephone: (312) 876-7700<br>Facsimile: (312) 993-9767 |
| Jon Loevy<br>Michael I. Kanovitz<br>Tom Hanson<br>LOEVY & LOEVY<br>311 N. Aberdeen St., 3rd Floor<br>Chicago, Illinois 60607<br>Tel: (312) 243-5900<br>jon@loevy.com<br>mike@loevy.com<br>hanson@loevy.com | Michael H. Rubin (*pro hac vice*)<br>  michael.rubin@lw.com<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>Telephone: (415) 391-0600<br>Facsimile: (415) 395-8095 |

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 21, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

                                            */s/ Johanna Spellman*
                                            Johanna Spellman