```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

DAVID FLUERY, individually    )
and on behalf of a class of   )
similarly situated            )
individuals,                  )
                              )
                 Plaintiff,   )
                              )
-vs-                          )  Case No. 20 C 390
                              )
UNION PACIFIC RAILROAD        )
COMPANY, a Delaware           )
corporation,                  )  Chicago, Illinois
                              )  December 19, 2024
                 Defendant.   )  10:11 a.m.

                  TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE LaSHONDA A. HUNT

APPEARANCES:

For the Plaintiff:      McGUIRE LAW, P.C.
                        BY:  MR. DAVID LOUIS GERBIE
                             MR. BRENDAN JAMES DUFFNER
                        55 West Wacker Drive, 9th Floor
                        Chicago, Illinois  60601

                        LOEVY & LOEVY
                        BY:  MR. JONATHAN I. LOEVY
                             THOMAS M. HANSON (via telephone)
                        311 North Aberdeen, 3rd Floor
                        Chicago, Illinois  60607

For the Defendant:      LATHAM & WATKINS, LLP (IL)
                        BY:  MR. GARY FEINERMAN
                             MS. JOHANNA MARGARET SPELLMAN
                        330 North Wabash Avenue, Suite 2800
                        Chicago, Illinois  60611
 Court Reporter:

                 CHARLES R. ZANDI, CSR, RPR, FCRR
                      Official Court Reporter
                    United States District Court
              219 South Dearborn Street, Room 2144-G
                      Chicago, Illinois  60604
                    Telephone:  (312) 435-5387
           email:  Charles_zandi@ilnd.uscourts.gov
```

(Proceedings heard in open court:)

THE CLERK: Okay. The next case is 20 civil 390, Fluery versus Union Pacific Railroad Company. And if you could step forward and put your appearances on the record, please. Thank you.

MR. GERBIE: Good morning, your Honor. David Gerbie on behalf of the plaintiffs.

THE COURT: All right. Good morning.

MR. FEINERMAN: Good morning. Gary Feinerman on behalf of the defendant, Union Pacific, and my colleague.

MS. SPELLMAN: Johanna Spellman on behalf of Union Pacific.

THE COURT: All right. Good morning to you folks.

Do we have any lawyers on the phone who want to enter appearances?

MR. HANSON: Your Honor, thank you. This is Tom Hanson with Loevy & Loevy appearing on behalf of the plaintiffs. I'll also add that my partner, Jon Loevy, is in the building and was anticipating being at this hearing. He's currently involved in an argument in front of Judge Kness that's running longer than expected, so I don't know if the Court is willing to wait a few minutes or if we want to plow ahead, as Mr. Loevy will join us when he's able.

THE COURT: Right. We can go ahead. I'm running behind today, too, so I don't want to delay folks any longer

than necessary.

Okay. Any other parties on the line who need to enter appearances?

All right. So, this case is finally done with discovery. I know that there have been a lot of issues. I've had some involvement with the case. You've been before Judge Cole mostly; and Mr. Feinerman and Ms. Spellman, you've kind of just come into the case, as I just came into the case about a year-and-a-half ago.

It has been hotly contested. I understand that there have been a lot of disputes. It took a long time to get through discovery.

And so I thought it probably made sense, especially when I got this very generous schedule, which I know that when Mr. Feinerman was sitting in my seat, he would not have entered, either. But I figured it made sense to just say let's touch bases and kind of figure out: What are the next steps in the case, and how do we move this forward?

I am not trying to jam anybody up. I remember being a lawyer and having to deal with, you know, the whims of a briefing schedule and all of these litigation disputes. But this case has been especially challenged with the amount of paper that has been filed, the extensive briefing on all types of issues. And I just want to try to streamline this and focus on moving forward so that I have materials before me where I

can try to make a decision and get this case going forward.

It's an almost five-year-old case at this point. And I know it was stayed, you know, because of the Illinois Supreme Court ruling, and that's fine. But I really do think that, you know, the longer these cases drag on, the harder they become. And there are litigants who, you know, want resolution, and I want to give that to them.

I also know that my schedule is pretty heavy on trials the first six months of next year. I've got some open time in the summer, and then I'll probably be back to a heavy trial schedule in the fall. And so I'm trying to figure out: How do I build in time for some of these cases where I know I'm going to have to just devote a chunk of time to sit down and work through it all?

So, that's why I said, no, I'm not going to give everybody 10 months here. That would not even be a good thing. I think the question is really going to be: What do we -- what do we need to do at this point?

I don't know the issues as well as you all do. I ruled on one motion involving the complaint, so I've got a general sense of what's going on here, as well as the types of arguments that might be raised; but I just think that we need to figure out: How are we going to go forward?

So maybe the best place to start is with this class certification motion that is going to be filed, I guess,

tomorrow.  And --

MR. GERBIE:  Well, your Honor if I could speak to that just briefly.

THE COURT:  Sure, go ahead.

MR. GERBIE:  So, we had a motion ready to go, filed a motion for leave, seeking excess pages, which, you know, your Honor denied and directed the parties to meet and confer.  We did meet and confer, ultimately weren't able to reach agreement on a number of issues and for a variety of reasons, which I'm sure we'll get to here.

So, you know, we need a page limit and a deadline. Once we have the page limit, we can reduce the length of our brief, as appropriate, or if possible.  Certainly, there's some reducing and cutting that we can do.  We do think some extension of the standard size briefing is appropriate for that motion.

So, that will take some time once we have a page limit and, I mean, a deadline, which we proposed in our filing, I guess it came in this morning, January 2nd.  So, we could do basically that week, so -- but again, if we had a full-size --

(Mr. Loevy and Mr. Duffner entered the courtroom.)

THE COURT:  Did you file something this morning?

MR. GERBIE:  Yes, your Honor.

THE COURT:  Oh, all right.  Then I have not seen it.

MR. LOEVY:  Good morning, your Honor.  Jon Loevy for

the plaintiffs.

THE COURT:  Thank you.  Hold on one quick second.  If you can hand that up to --

MR. FEINERMAN:  How many copies did you want?

THE COURT:  Just one is fine.  All right.  Thank you.  Oh, you know what, you can probably give one to my clerk, too.

All right.  Then let's go ahead.  We'll enter the additional appearances on the record here.

MR. LOEVY:  Jon Loevy for the plaintiffs.  Sorry we were late, your Honor.

THE COURT:  That's okay.

MR. DUFFNER:  And Brendan Duffner, also for the plaintiffs.

THE COURT:  Good morning to both of you.  We just started.  I was running behind on a -- on a hearing as well.

So, there was an amended status report which -- yeah, that was filed this morning, so I have not seen it yet.  So let me just take a quick look.

Yeah, I figured it was probably good to just tell you in advance that I wasn't inclined to allow that, so think about something different.

Okay.  So, January 2nd.  All right.  So now you want to split this up and do class cert briefing first and then motions for summary judgment second?

MR. FEINERMAN:  That's the plaintiff's position.

Union Pacific would like them to be staggered.

THE COURT: All right. So why does the plaintiff want to focus on class cert first instead of staggering these?

MR. GERBIE: So, you know, defendants sort of made the argument that there's cross-cutting issues between class cert and summary judgment, and we don't dispute that; but that's typical for motions for class certification, that there is some overlap with merits.

So, we have no problem with defendant raising whatever issues it believes, you know, relate to class certification in its opposition to our motion for class certification, and then having summary judgment follow very shortly thereafter. So, it's about a 30-day difference between the completion of class cert briefing, and then motions for summary judgment will come in from both parties.

So, I think that's a high level of why that's our position, and I know defendant has a belief that there's so much overlapping that they need to be able to be briefed concurrently; but our position is that the Court is, candidly, used to dealing with those issues and capable of deciding on its own which ones need to be decided first and in what order.

THE COURT: So, what I typically prefer to do is have all of the briefs done at once. I do not start looking at briefs until everything is fully briefed. Otherwise, if I look at it and rule on something and move on to another matter, it

will be forgotten, and it will be as if I'm starting over.

So it's just not efficient for me, especially if there are overlapping issues with class certification and summary judgment. I think all of that has to be before me at once.

Where things get tricky is with *Daubert* motions because sometimes they're relevant for class certification purposes; sometimes they're relevant for summary judgment purposes, sometimes not at all. And I don't want *Daubert* motions if they're not relevant to any issues that are being presented before me. It's just very confusing trying to figure out: Why is this expert here, and how does it fit into all of this?

I would like to have a set of -- a full set of everything that is before me so that I can then sit down and say, "Okay. Now I'm going to rule on all of this at once that I have to decide right now." Sometimes parties will say, you know, class cert is the issue. It will be simpler. It may be dispositive, and so that makes sense.

Here, it probably just -- I think everything just needs to be briefed and have it before me and do it that way.

MR. GERBIE: Your Honor, I appreciate that. And we're not conceptually opposed to that.

THE COURT: Right.

MR. GERBIE: That is, the parties' joint proposal did contemplate that that we filed. I think your Honor wasn't

happy with the length of the schedule and the length of the pages. And so at base, if I can attempt to sum up the difference in the parties' current proposals --

THE COURT: Right.

MR. GERBIE: -- where we ultimately weren't able to reach agreement was plaintiffs were willing to agree to a significant page reduction in their class cert motion, and defendants weren't willing to agree to a reduction of pages for summary judgment.

So, our proposal, scheduling aside, from a length of briefs perspective, would have reduced the total pages of briefing by 75 pages, and defendant's proposal would have only reduced it by 25 pages.

THE COURT: Okay. So, the page limits, I can probably live with. They're pretty similar to what I had scribbled in my notes about what I thought might be appropriate. So, the motion for class certification, 30 pages, opposition 30 pages.

And I was willing to give a little bit more here only because I know that you've already been working on it, and it's very difficult to try to cut it down. I mean, you know, it just is.

MR. GERBIE: Thank you, your Honor.

THE COURT: And I didn't want you to have to start from scratch trying to figure out: How do I get rid of, you know, half of this brief? I don't think that's necessary.

I do want the parties to understand that I want you to fully present the issues before me. What I do not like is that I get sur-replies and sur-responses. No. Put it all in one brief. Tell me what you think I need to know so that I have it before me when I'm sitting down and trying to rule on this.

I will also say that if you think that oral argument would be helpful on any of this, you can make that request; and I'm happy to accommodate because sometimes it's helpful for me when I'm trying to think through these issues to ask you the questions that I have instead of assuming and then you get an opinion, and you think the judge really didn't get that because the judge just didn't get it. But it's okay.

So, if you think that that would be helpful in this case, I'm happy to set aside time for that as well. But -- so, I will allow the 30 pages for the class cert motion, the response. And I think the reply -- yep, I said 15 pages for that. So, I think that's good.

Summary judgment. So, I had also cut that down to 30 pages, but it looks like the defendant still wants 40 pages.

MR. FEINERMAN: May I speak to that?

THE COURT: You may.

MR. FEINERMAN: All right. We very, very clearly understand on our side, and I know they understand it as well, that length is not always directly proportional to persuasive value, and sometimes there's an indirect relationship.

But we think that 40 pages is warranted here, and we thought very seriously about it before we first proposed it to you; and of course, they had a 38-page class cert brief so it was aligned with that. And then when you issued your order, we thought very, very hard, "Do we -- can we live with less?" And we concluded, you know, at the risk of causing some ire, that we couldn't, and here's why.

In their -- we just received their second amended Rule 21(a) disclosures, where they disclosed that their damages amount to 22 billion dollars. That's with a B, 22 billion dollars. And that's -- as you might imagine, it's a significant amount of money. We're in the Dirksen Building, so I'll quote Senator Dirksen. "A billion here, a billion there; pretty soon, you're talking about real money."

So, we need to, we're obligated to defend ourselves, and defending ourselves in this case will require more pages than you might ordinarily want to see.

There's an enormous record, 21 fact depositions.

THE COURT: Can I ask you a quick question?

MR. FEINERMAN: Sure.

THE COURT: So, is one of the legal issues -- I'm assuming one of the legal issues that will be presented is the question about damages and whether this new amendment to BIPA applies retroactively, which I believe one judge in this building has said yes and another one has said no.

Is that before the Seventh Circuit at this point?  Has anyone appealed?

MR. FEINERMAN:  It's -- I don't believe it is.

MR. GERBIE:  It's not yet.  I don't believe it's -- not yet.

MR. FEINERMAN:  And that's one of the eight issues that at this point we're planning on presenting on summary judgment.

THE COURT:  Right.  I remember there were about four or five preemption issues that I dealt with in the motion to dismiss, and so I suspect those will be raised again as well.

MR. FEINERMAN:  And actually, we counted preemption as only one of the eight, but there's probably more.

THE COURT:  Oh, gosh.  Okay.

MR. FEINERMAN:  There's probably more.  There's the question whether the sensor actually collected fingerprints within the meaning of BIPA, whether they're biometric identifiers.

There's a rule of construction that the act is not to be construed to conflict with the private detective, private alarm, private security and fingerprint act.  We have argument on that.

Another rule of construction about government contractors.  I know they're going to say it's an affirmative defense.  We say it's not.  That's going to require some ink

and efforts.

There's a bankruptcy estoppel, which harkens back to your former role, Judge Hunt.

There's a question of whether --

THE COURT: Is Mr. Fluery still in the case?

MR. FEINERMAN: He is.

MR. GERBIE: Yes, your Honor.

THE COURT: Ah, okay. All right.

MR. FEINERMAN: I suspect -- and I don't know the record as well as plaintiff's counsel. I suspect that the reason we have -- we first had another second plaintiff, and the reason we have Mr. Turner in the case is because the plaintiffs felt that there was some vulnerability on the bankruptcy estoppel. And that's actually one of the overlapping issues. It's an adequacy issue.

THE COURT: Right.

MR. FEINERMAN: Maybe the claim is extinguished because of bankruptcy estoppel. If not, maybe the claim belongs to the creditors, and that goes to the plaintiff's incentive to litigate this case.

THE COURT: Okay.

MR. FEINERMAN: And then there's an ephemeral scan issue with the verification scans. And then there's the question of discretionary statutory damages. They're discretionary, not mandatory. What goes into deciding whether

an individual plaintiff is entitled to damages? Part of it, if you look at other statutory -- discretionary statutory damage regimes, is: Was the plaintiff hurt? Did the plaintiff care about what happened to him, her, or them? And we have an argument on that.

And that's yet another cross-cutting issue between summary judgment and class certification. It goes to adequacy. It also goes to predominance.

THE COURT: Okay.

MR. FEINERMAN: So that's -- that is why we thought very hard, and we're just asking -- there's eight issues. 40 pages is five pages each. We probably could use more, but we understand that asking for more than 40 might not -- might have been received with even less favor than our request for 40.

MR. LOEVY: And if we could be heard just briefly on these --

THE COURT: Sure. Hold on one second, Mr. Loevy.

Were you done, Mr. Feinerman?

MR. FEINERMAN: I am. And I'll just say, I think what the -- in discussions with the plaintiffs, what they're going to say is, "Judge, don't worry. Their claims are -- their defenses are meritless. You have nothing to worry about; and, therefore, don't give them the space in order to actually make their argument." And that's just not the way that litigation ought to work.

They're asking for 22 billion dollars, and we have eight defenses that we'd like to present. And it's not -- I think that under those circumstances, 40 pages is probably too little, but it's something that -- it's the bare minimum that we could live with.

THE COURT: Okay. Thank you.

Go ahead, Mr. Loevy.

MR. LOEVY: Your Honor, the local rule is presumptively 15. 30 doubles that. The argument itself just illustrated, if you let lawyers go longer, they say some things twice, and they just keep going. And there's enough space in 30 pages to get it done. That argument itself was 30 percent longer than it needed to be. I think you should encourage the parties to get to the point.

But, your Honor, obviously, you have to do what you have to do, and you'll let us know how many pages you're going to give us.

THE COURT: Right. So, I do try to discourage extended briefing, you know, just because again, I like the parties to be concise. But here, I do have a little bit of an understanding of what's gone on in this case, and so I will give the 40 pages. Really, I should have cut that to 35, but I'll give 40.

I'll give on the motions for summary judgment because I think that those are going to raise a number of issues that

will require some extended discussion.  I mean, I just think that these BIPA cases are very confusing.  The law is literally changing -- has changed in the middle of this case, which is why it's been so protracted and extended.

And I would rather the parties give me the information that I need in order to fully assess this, again, even as the law might change.  That's been a running issue that's been raised by prior counsel in this case about the amount of the statutory damages and what that means and, you know, the Illinois legislature has finally responded, but even that's not crystal clear about how judges are supposed to proceed.

And so, you know, perhaps at some point, we'll have more clarification while you're briefing this issue; but if not, then I'm going to have to tackle that, and I'd rather give both sides the time and the pages that you need to do that.

So, I'll give you -- I've give both sides the 40 pages for your motions for summary judgment.

MR. FEINERMAN:  Thank you.

MR. LOEVY:  Thank you, Judge.

THE COURT:  All right.  Then responses to summary judgment.  Do we really need 40 pages?

MR. LOEVY:  Well, your Honor, if they're going to get 40 pages, we definitely need 40 pages.

THE COURT:  No, no, no.  So I'm saying -- are the plaintiffs actually filing their own motion for summary

judgment?

MR. GERBIE: Yes, your Honor.

THE COURT: Okay. So that's on the merits?

MR. GERBIE: Yes, your Honor.

MR. LOEVY: And it will probably be 30 pages.

THE COURT: And you think that summary judgment should be -- well, I guess the other -- the defense thinks that summary judgment should be granted on the merits, and so --

MR. GERBIE: We're not saying how long our summary judgment brief is going to be, but we would like to be permitted the same amounts they are. We may come in at 25 pages.

THE COURT: Sure.

MR. GERBIE: But certainly with respect to opposing their lengthy summary judgment motion, we'd want at least -- we'd want our 40 pages to respond.

MR. LOEVY: And, to answer your question, Judge, we think actually, you're going to grant some summary judgment issues in our favor. That's where it gets interesting.

THE COURT: Fair enough. Like I said, BIPA is -- it's interesting.

All right. So then that means opening briefs would be 40 pages on both sides, and then you want opposition briefs to also be 40 pages.

MR. GERBIE: Up to 40 pages.

THE COURT: Up to 40. Yes. Thank you. I appreciate that. Don't use all 40 if you don't need them.

Reply briefs, so, the plaintiffs want 15. The defendants want --

MR. FEINERMAN: 20.

THE COURT: -- 20. 40, half of that is 20. I will concede on that, again, just because I think summary judgment might be a trickier issue, and I'd really like to have a full discussion on that.

So, *Daubert* motions, are there *Daubert* motions that need to be filed in connection with class certification?

MR. FEINERMAN: Yes. Class certification and summary judgment. And actually, this is something that we agreed with the plaintiffs on, that when it -- when the *Daubert* motion becomes pertinent, whether it's in conjunction with a motion, a response, or reply, it gets filed at that point; and then we agreed on a briefing schedule that would kind of -- for the *Daubert* motions that would kind of cascade off of that.

MR. LOEVY: And we agree, your Honor.

MR. GERBIE: And this is also I think what your Honor spoke to at the outset of the hearing, which is please don't file *Daubert* motions that aren't going to be ripe until trial, until we're there.

THE COURT: Right.

MR. GERBIE: So, we are in agreement with defendants

as to that, but I do expect that we, as plaintiff's counsel, may have quite a few *Daubert* motions that we're filing in opposition to their motion for summary judgment or simultaneous thereto, so that will, I expect, significantly elevate the number of pages we're filing around that time.

THE COURT: Okay. So, my requirement is that the parties meet and confer in advance about *Daubert* issues. So, let's just focus on class certification. So, have you had that meeting to determine which experts are going to be used and whether class -- whether there will be -- there is a need for *Daubert* motions?

MR. GERBIE: No, your Honor.

THE COURT: All right. So, I think that's the starting point because I want *Daubert* motions to be filed closer in time to, you know, whatever -- whatever motion -- whenever a motion has been filed. Obviously, you know a little bit in advance that an opinion is going to be offered, but you don't know the full scope of how that opinion is going to be used. I mean, I think that's part of the reason why I have a meet-and-confer requirement so that you figure that out, and then I can get all of those raised at the same time.

It might not be practical. It might not be feasible. You might just need to see the brief in order to assess what -- the contours of whatever the *Daubert* motion is going to be; but I don't want to wait until everything is fully briefed to then

start talking about *Daubert* motions because again, that means that I've had motions briefed for a little bit, and now we're talking about *Daubert* motions that are going to take another three months for briefing. That's just not -- it's really not efficient, I don't think, for me.

I mean, we're still talking about everything being fully briefed by August. And maybe I just don't know the scope of the amount of paper that I'm going to get and I am just being a little bit too ambitious.

MR. FEINERMAN: Right. Your Honor, I think we're actually all in agreement, both sides, I think, are in agreement with you. The way we're conceiving it is the *Daubert* motions that are pertinent to class certification or summary judgment or both would be filed interspersed with those motions; and then the strays, the *Daubert* motions that have nothing to do with class cert or summary judgment, that would come after.

So, when you sit down and decide class certification and summary judgment, you'll have all the pertinent *Daubert* motions fully briefed at that time. And --

THE COURT: Got it.

MR. FEINERMAN: I believe that's something on which --

MR. GERBIE: We agreed.

MR. LOEVY: The primary disagreement, your Honor, is we're trying to get stuff decided faster, and I think the

defendants are, you know, not on the same page.

MR. FEINERMAN: That's actually incorrect. Mr. Loevy wasn't participating in the discussions. Our proposed briefing schedule ends earlier than theirs.

MR. LOEVY: Your Honor, if we front-load the summary judgment and the class certification and get them decided sooner, then everything will be resolved sooner. And maybe -- you know, it's a little embarrassing that the two sides weren't able to come up with a schedule because they're not that different; but maybe this morning, we should just bang out these dates, and if everybody agrees it should be done as soon as possible, it should be easy.

MR. FEINERMAN: I guess the gating issue, Judge Hunt, is: Do you want class certification first, motion, response, reply, and then summary judgment?

THE COURT: No. I want class certification -- so, I understand that I'm going to get a motion for class certification first, but then opposition and cross motions for summary judgment will need to be filed. So, I want to move things along as quickly as we possibly can and then figure out where do the *Daubert* motions fit into all of that.

I don't necessarily have a problem with *Daubert* motions coming a little bit later, but I don't want to wait until everything is fully briefed to now say, "Okay. Can we go back and talk about *Daubert* motions?"

And so maybe it really is more of a staggered type of schedule, but one that makes sense. Because when I set the schedule, it will be a firm schedule, and everyone will need to plan accordingly. And I say that now, and then lawyers come along and say, "But my schedule is really busy."

If you want me to build in time -- because I build in time. And, you know, if you all are in other cases with me, you already know I have enough pending matters that I'm still trying to dig my way out of. So, I'm really trying to build in the time so that I can sit and focus on this.

If it's fully briefed in the spring, early summer, I have time in the summer; but once the fall hits, it's just crazy, and then this will be on the back burner until 2026. And so again, I just want you to keep that in mind.

MR. LOEVY: Your Honor --

MR. FEINERMAN: Your Honor, so, if you want it to be staggered -- and I'm saying this only because you said you want it to be staggered -- then I think it's -- our structure is the one that works the best. And what our structure has is that the briefs -- the briefing will be finished by June 5th.

THE COURT: Okay.

MR. FEINERMAN: And it is staggered.

THE COURT: But not *Daubert* motions?

MR. GERBIE: So, I'd like to raise that.

THE COURT: Yes.

MR. GERBIE: To just put a little bit more color on the case to help you maybe perform some early analysis of sort of what to expect and what might be a reasonable schedule for your own schedule and potentially ours as well, you know, defendant has 10 experts, which we believe is a lot and unnecessary for a variety of reasons. We believe the case is simple. We have two experts.

But in light of defendant's 10 experts, we expect a large majority of them, if not all of them, will be used in their summary judgment motion, which would require us to file our concurrent *Daubert* motions at the same time, which could be about 200 pages of briefing on just *Daubert* for summary judgment in the spring. So, that might be aggressive.

Certainly, we had agreed to some version of that last week when the parties came forward with a joint proposal. And that is partly of why we proposed I guess, from the Court's perspective, a long schedule last week is that there is expected to be a lot of briefing, unfortunately.

So, we'd just ask that whatever schedule is entered accommodate for that. And so, you know, I think that's where we would have the biggest scheduling issue is in defendant's proposal between March and May 1st, plaintiffs would be doing 100 pages of *Daubert*, a class cert reply, and opposition to summary judgment in a seven-week window. Not that that's not potentially feasible, but it's aggressive.

MR. FEINERMAN: And to plaintiff's point, and sorry for interrupting, we're willing to sit down with the plaintiffs and -- now that we have the structure that you want, we're willing to sit down with the plaintiffs and come up with a schedule, and hopefully, it would be something that you're agreeable to. However you want to handle it, your Honor.

THE COURT: Okay. So, let's -- I think where we all agree, right, is that the plaintiff's motion for class certification will be filed on January 2nd. Is that the date that you want?

MR. GERBIE: Yes, your Honor.

THE COURT: Okay. So then that will be filed on January 2nd. You have up to 30 pages for that. Then the next set of briefs that I should be receiving would be the defendant's opposition to class certification, and then the parties' cross motions for summary judgment.

So, the plaintiffs have proposed March 27th. The defendants have proposed March 13th. I don't -- you know, it probably doesn't make that much of a difference, but I would probably tend to go with the slightly earlier date, just so that we get class cert opposition and summary judgment motions on file. So --

MR. LOEVY: That makes sense from our perspective, too, your Honor.

THE COURT: All right. So, March 13th will be the

date for class cert and the parties' summary judgment motions.

Now, this is where it gets tricky because we have to figure out where *Daubert* motions are going to be filed in the midst of all of this. And like I said, both sides seem to have those -- maybe -- okay. So, some may be filed in conjunction with class certification or summary judgment.

MR. FEINERMAN: And then the strays would be later, after we're all done with class certification and summary judgment.

THE COURT: All right. Later meaning after I've ruled or --

MR. FEINERMAN: I think that probably would make the most sense --

THE COURT: Yeah.

MR. FEINERMAN: -- just because we'll know what the case is about, if anything, after you rule; and that would -- they would -- a *Daubert* motion -- the strays would be filed in conjunction with the motions *in limine*, more in a pretrial setting, if necessary.

MR. LOEVY: That would be our concern, your Honor, as long as we're moving toward trial, but I think Mr. Feinerman is right that that could be in conjunction with motions *in limine*.

THE COURT: Okay. No, I agree. And I do set a separate schedule for motions *in limine* and *Daubert* motions pertaining to trial. So, you don't have to worry that you're

waiving any rights. I mean, you can renew a *Daubert* motion in connection with trial if you would like to, and so -- all right.

So, then, where are *Daubert* motions going to fit into the -- into this schedule? Should they be filed after class cert and summary judgment -- the initial class cert and -- opposition to class cert and cross motions for summary judgment?

MR. FEINERMAN: I think -- I think -- I'm going to articulate what I think we agreed on, and then they're going to tell me whether I'm right or wrong.

Let's assume that in our opposition to class certification, part of our opposition turns on -- I don't think this is going to happen. So, let's say in our motion for summary judgment, part of our motion may turn on *Daubert*'ing one of their experts.

THE COURT: Um-hum.

MR. FEINERMAN: So, we would file our *Daubert* motion against that expert in conjunction with our motion for summary judgment. In their opposition to summary judgment, it may be that their opposition would turn on targeting one of our experts, and so they would file that *Daubert* motion in conjunction with their summary judgment opposition.

So, whenever something becomes pertinent and ripe, that's when it gets filed. But plaintiff?

MR. GERBIE: No, no, I think that's right. I think we're in agreement on that.

THE COURT: All right.

MR. GERBIE: So, as far as a firm deadline, I know I think the parties are in agreement that as early as practicable under the current briefing schedule; and then any experts who remain stragglers or un-*Daubert*'ed, then we'd set a firm final deadline for those, which is potentially after ruling.

THE COURT: All right. So then, this -- I think I have May 1st for -- that's at least Union Pacific's, the defendant's proposal, oh, that's right, because the plaintiff had this set out separately.

So, May 1st would be seven weeks later for class cert replies and summary judgment opposition and presumably *Daubert* motions at that point. Is that realistic or not?

MR. GERBIE: I think we would prefer a little bit more time there, your Honor.

THE COURT: Okay.

MR. GERBIE: Considering, you know, the issues I've already laid out.

THE COURT: Yeah, I think that's probably fair. So, if you got 10 weeks for the initial motions, let's see. What about May 22?

MR. LOEVY: That's fine, your Honor.

MR. GERBIE: That's fine.

THE COURT: Okay. So, that will be May 22 for plaintiff's class cert reply, which will be 15 pages; summary judgment opposition briefs, I'll still give you those 40 pages, reluctantly, but I'll give them to you; and then any relevant *Daubert* motions for -- with respect to -- I'm trying to figure out how this is going to work because -- would the defendant be filing a *Daubert* motion in connection with your opposition to class cert?

MR. FEINERMAN: I don't think so, but I can't foreclose the possibility.

THE COURT: Okay. All right. Then why don't we just -- whatever you're going to file, I mean, you can combine it. Because again, there will be some overlap in the questions on class certification and summary judgment. So, I will consider the expert -- the *Daubert* motion for whatever purposes you tell me to consider it -- ask me to consider it for.

So then, relevant *Daubert* motions to class certification and summary judgment should be filed May 22nd. Everyone's fine with that?

MR. LOEVY: Yes.

MR. GERBIE: Yes, your Honor.

THE COURT: All right. And then --

MR. FEINERMAN: All *Daubert* motions, or just the ones that are pertinent to the plaintiff's class certification reply and the summary judgment oppositions?

THE COURT: Right. So, I guess I'm trying to understand why at that point both sides wouldn't know what *Daubert* motions need to be filed.

MR. GERBIE: I think we should, we should.

MR. FEINERMAN: Yeah.

MR. GERBIE: We should with respect to -- because the briefs, the opening briefs will have all been filed. I agree.

THE COURT: Right. So that's what I'm contemplating is that those are the *Daubert* motions that I'm looking for. I know that there will be a subset where you're putting those to the side because it's not relevant. So, I understand that completely. You're not waiving any rights by not, you know, filing a slew of *Daubert* motions immediately.

MR. FEINERMAN: Understood.

THE COURT: Okay. The other thing is we haven't talked about what the page limits will be for *Daubert* motions per expert. 10 pages? 10 pages, five pages seems a little bit excessive; but I've cut you on everything else today, so in the spirit of the holidays, I'll just let it go.

Again, don't inundate me with paper. Just tell me what I need to know. We'll just -- we'll let that go. I'll let that be what it is, and you can figure out what you need to tell me.

MR. LOEVY: Thank you, your Honor.

THE COURT: All right. And so then, at that point,

now we have summary judgment replies, and then any additional briefing on *Daubert* motions, right?

MR. FEINERMAN: Right.

THE COURT: Okay. So then, if -- so, summary judgment replies will be 20 pages. How much -- so, if your responses are due May 22nd, how much time do you want to get --

MR. GERBIE: We'd propose 30 days, your Honor.

MR. FEINERMAN: Yeah, if we can keep it on seven-week -- I'm sorry, on seven-day increments, if we could say 35.

MR. GERBIE: No objection.

THE COURT: All right. So that was the 22nd.

MR. FEINERMAN: Might be June 26th?

THE COURT: Thank you. June -- trying to count all this out. So, June 26th for replies, summary judgment replies. And then *Daubert* opposition. And actually with *Daubert* motions, I usually only do a response -- the motion and then a response.

MR. LOEVY: If we seek leave if we think something's gone off the rails, we'll do that.

THE COURT: All right. Then I think that probably makes sense. So let's do your summary judgment replies and *Daubert* responses in opposition by June 26th, replies will be allowed with leave of court. Let me know quickly if you think that there is truly a need for an additional reply.

So then, that will have us pretty much fully briefed by June 26th.

MR. FEINERMAN: May I make one request that would not involve pushing out the end date of June 26th? Right now, as I understand it, all of the *Daubert* motions will be filed on May 22nd.

THE COURT: Yes.

MR. FEINERMAN: And they said they're going to file 10. And that will be quite a -- an ordeal. So, I think what we had agreed to and kind of what the basis of my prior question to you was is I think it would be better, both in terms of the process and in terms of making sure we don't have to respond to 10 *Daubert* motions in five weeks, if when a *Daubert* motion is pertinent to either a motion or a response, it be filed in conjunction with it.

So, you would be getting some *Daubert* motions on March 13th. You'd be getting some *Daubert* motions on May 22nd. And I think that that's what the parties agreed to, and, you know, maybe the plaintiffs have a *Daubert* motion that they're going to file with their summary -- with their class certification motion.

And it would -- I think it makes more sense conceptually, and it also, just in terms of relieving us of the burden of responding to 10 motions in five weeks, it would allow us to get at least some of them ahead of time.

MR. LOEVY: The flip side is, your Honor, they have 10 experts, and we may not file 10 *Daubert* motions, but we have 10 experts we're facing. So, if we are -- it relieves the defendant that they get to stagger their responses, but it imposes, but we are -- it then imposes on us moving them forward.

That said, I don't think we have a terrible objection to what Mr. Feinerman said; although, your Honor, we just went through and set a schedule, and now we're going to start over again.

MR. FEINERMAN: What I just said is exactly what we've agreed to.

THE COURT: Right.

MR. FEINERMAN: And if Mr. Loevy wants to walk it back, that's fine. But it was good enough for yesterday's and this morning's filing. It should be good enough for later on this morning.

MR. LOEVY: And if I could clarify, your Honor. I heard you this morning set a schedule. If Mr. Feinerman is correct, and he is, that we had a different conception, we don't want to walk it back.

And it's not a terribly unreasonable proposal. I'm just saying we're going backwards from what the Court decided.

THE COURT: Right. So, it doesn't matter much to me. I've set a schedule for when all of this will be fully briefed

so that, again, I can prepare for that.

What I will say is that I recognize some of this, you just don't know. It may be a much simpler process addressing these *Daubert* issues than we all think, but none of us know right now because the briefs haven't been filed.

I will -- it doesn't matter to me if I keep the schedule as-is or not. I will give you the flexibility, though, when it comes to the *Daubert* motions because again, you have to meet and confer in advance. And so if it turns out that it's not 10 experts, it's really only these five and you don't need as much time, then, you know, you can always file something before me, and I'll give you the flexibility to say, "Can we modify the schedule for *Daubert* motions?" That, I will. Because, you know, you just don't know until you know. And I don't want to jam either side up unfairly.

And so why don't I give that concession that -- and I always say this is a firm schedule. Obviously, if something -- you know, if there are extenuating circumstances, I take that into consideration; or if somebody says, "I really tried to get this filed at 11:55 p.m., but CM/ECF wasn't cooperating and so it went over a day," I'm not concerned about things like that. I just want to try to keep us on track as much as possible. All right?

So, I'll give -- I'll include what we've talked about as the schedule for the *Daubert* motions, but I'll also indicate

that to the extent the parties think that a different schedule would be more efficient, then just file a motion and let me know.

MR. GERBIE: Yes, your Honor.

THE COURT: Okay? And in fact, I won't even make you file a motion. Just file a status report and tell me that's what you'd like to do; and as long as everyone agrees to it and it doesn't push the schedule out, I'm fine with it.

MR. FEINERMAN: And we'll talk with the plaintiffs. We're in regular contact with them. If it turns out they have, you know, a manageable number of *Daubert* motions they're going to file, that schedule might work. If it's 10 that we're getting on May 22nd, then we might take you up on your offer to seek a little bit of relief.

MR. GERBIE: And, your Honor, you know, just for the record, I hope we don't need to file 10. It will largely depend on the substance of defendant's motion. So, defendant has some control over, you know, which experts it wants to bring forward in support of its motion for summary judgment.

THE COURT: Right. And I will say, the parties should know by the time the briefs are filed in March whether you think you're going to need a little bit of extra breathing room with the *Daubert* motions. And so again, even if they're not filed immediately at that point, you know, if you, you know, feel like, well, there are motions that we know we can file

right now, do that. I just want everything fully briefed by the end of June.

MR. GERBIE: Yes, your Honor.

MR. LOEVY: We agree on that.

THE COURT: All right. Is there anything else that I need to address?

MR. LOEVY: Not for the plaintiffs, your Honor.

MR. GERBIE: One housekeeping matter, your Honor. We had filed a motion to file our motion for class certification under seal. Now that we have a page limit and some deadlines, I was hoping that I could orally move to file such documents under seal without having to file that motion again.

THE COURT: Right. So, no, you don't to have file the motion, but I've learned I should ask more questions. This just happened in one of those Watts cases where I told everyone, "Sure, feel free to file whatever you want to file, what everyone agrees to under seal." But -- so, there may be certain documents, and it might be crystal clear that this is confidential. It should be under seal. But when I get entire briefs, entire statements that are filed under seal, then I'm going to ask, "Well, why?" I need a justification.

So, to the extent that it's pretty straightforward and it's clear, that is perfectly fine. You don't need a motion. If no one opposes the filing under seal, then just go ahead and file it. Just remember, you also need to file a public,

redacted version.

MR. GERBIE: Yes, your Honor.

THE COURT: If you're not filing a public redacted version, then at least drop a footnote and explain to me why we can't -- this entire document needs to remain under seal. And you can do that in the motion or in the brief, wherever you refer to the document, so that I at least understand why I don't have a public version of the document.

Only to the extent that you disagree about whether something should be under seal do you need to file a motion for leave.

MR. GERBIE: Okay. Thank you, your Honor.

THE COURT: Okay? So, hopefully that will make it a little bit easier.

MR. FEINERMAN: Of course, we have no objection to the motion for leave to file under seal.

THE COURT: All right. Okay. All right. Thank you, everyone.

This is my courtroom deputy's last court call. That's why she has her lovely sash on, and she gets to retire after 36 years at this court. So, I'm glad you guys got to come in and be here today for this moment.

And thank you, everyone, for working together cooperatively to try to, you know, keep things moving forward.

So, have a wonderful holiday season.

MR. FEINERMAN:  Thanks.  You, too.

MR. LOEVY:  Thanks, your Honor.

THE CLERK:  I'm sorry I'll miss this case.

(Which were all the proceedings heard.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Charles R. Zandi*                    *January 8, 2024*
_____          _____
Charles R. Zandi                         Date
Official Court Reporter