## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

DAVID FLEURY and ALVIN TURNER )
individually and on behalf of a class of )
similarly situated individuals, )
           )
           *Plaintiffs*, )     Case No. 20-cv-00390
           )
v. )     Hon. LaShonda A. Hunt
           )
UNION PACIFIC RAILROAD COMPANY, )     Magistrate Jeffrey Cole
a Delaware Corporation, )
           )
           *Defendant*. )
           )

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION

Plaintiffs David Fleury and Alvin Turner, by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 23, move for entry of an order certifying the Class and Subclasses proposed below, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel. In support of their Motion, Plaintiffs submit the following Memorandum of Law.

Dated: January 2, 2025

                               Respectfully submitted,

                               DAVID FLEURY and ALVIN TURNER,
                               individually, and on behalf of similarly
                               situated individuals

                               By: */s/ Brendan Duffner*
                               *One of Plaintiffs' Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.

Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

*Counsel for Plaintiffs and the Putative Class and Subclasses*

## TABLE OF CONTENTS

Table Of Authorities ........................................................................................................ ii

I.  FACTUAL BACKGROUND ................................................................................... 2

    A.  The Illinois Biometric Information Privacy Act ......................................... 2

    B.  The Underlying Misconduct ........................................................................ 3

        1.  Union Pacific Procures and Installs the AGS ........................................ 3

        2.  Union Pacific Collected, Captured or Otherwise Obtained Plaintiffs' and Putative Class Members' Biometrics in Illinois ............................... 4

    C.  Production and Analysis of Union Pacific's Data ...................................... 6

    D.  The Proposed Class and Subclasses ........................................................... 7

II.  ARGUMENT ......................................................................................................... 8

    A.  Legal Standard For Class Certification ...................................................... 8

    B.  The Proposed Class and Subclasses are Certifiable Under Federal Rule 23(a) ...... 9

        1.  The proposed Class and Subclasses are sufficiently numerous .............. 9

        2.  The proposed Class and Subclasses are ascertainable ........................... 10

        3.  The requirement of commonality is satisfied ......................................... 12

        4.  Plaintiffs' claims are typical of those of the members of the Class and Subclasses ............................................................................................... 20

        5.  Plaintiffs and proposed Class Counsel will adequately represent the Class and Subclasses ........................................................................ 22

    C.  The Proposed Class and Subclasses Satisfy Federal Rule 23(b)(3) Standards ...... 24

        1.  Common questions of law and fact predominate .................................... 25

        2.  A class action is the most efficient way of adjudicating the claims at issue and is superior to a multitude of individual lawsuits. ....... 27

III.  CONCLUSION ..................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Alvarado v. International Laser Products, Inc. et al.*,
   No. 18-cv-7756, 2019 WL 337995 (N.D. Ill. June 19, 2019)..................................................... 16

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................................... 25, 27

*Amgen v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)................................................................................................................ 9

*Anderson v. Weinert Enters., Inc.*,
   986 F.3d 773 (7th Cir. 2021) ............................................................................................. 9, 10

*Arenson v. Whitehall Convalescent and Nursing Home, Inc.*,
   164 F.R.D. 659 (N.D. Ill. 1996)............................................................................................ 13

*Barragan v. Evanger's Dog and Cat Food Co.*,
   259 F.R.D. 330 (N.D. Ill. 2009)............................................................................................. 9

*Baxter v. Kawasaki Motors Corp.*,
   259 F.R.D. 336 (N.D. Ill. 2009)........................................................................................... 22

*Beaton v. SpeedyPC Software*,
   907 F.3d 1018 (7th Cir. 2018) ................................................................................ 13, 19, 20

*Bell v. PNC Bank, N.A.*,
   800 F.3d 360 (7th Cir. 2015) ........................................................................................... 9, 25

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014)........................................................................................... 10

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
   280 F.R.D. 408 (N.D. Ill. 2012)..................................................................................... 11, 12

*Carbajal v. Capital One*,
   219 F.R.D. 437 (N.D. Ill. 2004)............................................................................... 23, 28, 29

*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004) .......................................................................................... 28, 29

*CE Design Ltd. v. Cy's Crabhouse N., Inc.*,
   259 F.R.D. 135 (N.D. Ill. 2009)................................................................................ 13, 20, 23, 27

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804, (2011).............................................................................................................. 25

*Foreman v. PRA III, LLC*,
  05-cv-3372, 2007 WL 704478 (N.D. Ill. Mar. 5, 2007) ............................................................ 26

*Gen. Tel Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982).................................................................................................................... 29

*Godfrey v. GreatBanc Tr. Co.*,
  2021 WL 679068 (N.D. Ill. Feb. 21, 2021) ................................................................................. 9

*Gomez v. St. Vincent Health, Inc.*,
  649 F.3d 583 (7th Cir. 2011) ..................................................................................................... 22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................................... 25

*Haynes v. Logan Furniture*,
  503 F.2d 1161 (7th Cir. 1974) .................................................................................................... 27

*Hinman v. M & M Rental Ctr., Inc.*,
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ...................................................................... 10, 13, 20, 27

*Howard v. Cook Cnty. Sheriff's Off.*,
  989 F.3d 587 (7th Cir. 2021) ..................................................................................................... 20

*Howe v. Speedway* LLC,
  2024 WL 4346631 (N.D. Ill. Sept. 29, 2024) ................................................................ 16, 19, 29

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) .................................................................................................... 27

*In re Facebook Biometric Info. Privacy Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018)................................................................................................ 16

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) .......................................................................................... 13, 14, 20

*Kramer v. Am. Bank & Tr. Co., N.A.*,
  No. 11-cv-08758, 2018 WL 4052162 (N.D. Ill. Aug. 24, 2018)................................................. 14

*Lemon v. Int'l Union of Operating Eng'rs*,
  216 F.3d 577 (7th Cir. 2000) ..................................................................................................... 25

*Maxwell v. Arrow Financial Services, LLC,*
  03-cv-1995, 2004 WL 719278, at *5 (N.D. Ill. Mar. 31, 2004) ................................................... 22

*McCabe v. Crawford & Co.,*
  210 F.R.D. 631 (N.D. Ill. 2002).................................................................................................. 10

*McFields v. Dart,*
  982 F.3d 511 (7th Cir. 2020) ............................................................................................... 20, 25

*Morris v. Risk Mgmt. Alternatives, Inc.,*
  203 F.R.D. 336 (N.D. Ill. 2001).................................................................................................. 27

*Mullins v. Direct Digital, LLC,*
  795 F.3d 654 (7th Cir. 2015) ......................................................................................... 10, 11, 12

*Murray v. GMAC Mortg. Corp.,*
  434 F.3d 948 (7th Cir. 2006) ................................................................................................ 28, 29

*Parish v. Sheriff of Cook County,*
  07-cv-4369, 2008 WL 4812875 (N.D. Ill. Oct. 24, 2008)........................................................... 9

*Payton, et al., v. Union Pacific Railroad Co.,*
  No. 24-cv-00153 (N.D. Ill.) ........................................................................................................ 29

*Phillips v. Waukegan Housing Auth.,*
  331 F.R.D. 341 (N.D. Ill. 2019)................................................................................................... 13

*Radamanovich v. Combined Ins. Co. of Am.,*
  216 F.R.D. 424 (N.D. Ill. 2003)................................................................................................... 25

*Rogers v. BNSF Railway Co.,*
  No. 19-cv-03083, 2022 WL 854348 (N.D. Ill. March 22, 2022).......................... 2, 9, 16, 24, 27

*Sandoval v. M1 Auto Collisions Centers,*
  309 F.R.D. 549 (N.D. Cal. 2015)................................................................................................. 25

*Schmidt v. Smith & Wollensky, LLC,*
  268 F.R.D. 323 (N.D. Ill. 2010)............................................................................................. 13, 15

*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,*
  271 F.R.D. 139 (N.D.Ill.2010)..................................................................................................... 12

*Simpson v. Dart,*
  18-CV-0553, 2021 WL 2254969 (N.D. Ill. June 3, 2021)............................................................. 8

iv

*Smith v. Nike Retail Servs., Inc.,*
    234 F.R.D. 648 (N.D. Ill. 2006).............................................................................................. 9, 20

*Spano v. The Boeing Co.,*
    633 F.3d 574 (7th Cir. 2011) ........................................................................................................ 22

*Suchanek v. Sturm Foods, Inc.,*
    764 F.3d 750 (7th Cir. 2014) ........................................................................................................ 27

*Surowitz v. Hilton Hotels Corp.,*
    383 U.S. 363 (1966)...................................................................................................................... 23

*Svoboda v. Amazon.com, Inc.,*
    No. 21-cv-5336 2024 WL 1353718 (N.D. Ill. March 30, 2024).................................... 12, 16, 29

*Szabo v. Bridgeport Machines, Inc.,*
    249 F.3d 672 (7th Cir. 2001) .......................................................................................................... 9

*T.S. v. Twentieth Century Fox Television,*
    334 F.R.D. 518 (N.D. Ill. 2020)............................................................................................. 13, 20

*Tapia-Rendon v. United Tape & Finishing Co., Inc.,*
    21-cv-3400, 2023 WL 5228178 (N.D. Ill. Aug. 15, 2023) ................................................... 16, 29

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)................................................................................................................ 12, 13

*Wilkins v. Just Energy Grp., Inc.,*
    308 F.R.D. 170 (N.D. Ill. 2015)................................................................................................... 23

**Statutes**             **Page(s)**

740 ILCS 14/10.................................................................................................................................. 2

740 ILCS 14/15(a) ........................................................................................................................ 3, 21

740 ILCS 14/15(b)............................................................................................................................. 2

740 ILCS 14/15(d)............................................................................................................................. 3

**Rules**             **Page(s)**

Fed. R. Civ. P. 23 .......................................................................................................................... 8, 9

Fed. R. Civ. P. 23(a) ......................................................................................................................... 12

Fed. R. Civ. P. 23(a)(1) ............................................................................................... 9

Fed. R. Civ. P. 23(a)(2) .......................................................................................... 12, 19

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 20

Fed. R. Civ. P. 23(a)(4) ..................................................................................... 21, 22, 23

Fed. R. Civ. P. 23(b)(3) ............................................................... 8, 9, 24, 25, 27, 28

Fed. R. Civ. P. 23(g) ............................................................................................ 22, 23

**Other Authorities**                                                          **Page(s)**

7A Federal Practice & Procedure § 1777 ...................................................................... 25

This litigation arises out of Defendant Union Pacific Railroad Company's collection, possession, and dissemination of the biometric identifiers and biometric information (collectively, "biometrics") of tens of thousands of truck drivers at its four Illinois intermodal facilities without their prior informed written consent in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA").[1] To access these four facilities, Plaintiffs and other truck drivers were required to register their biometrics (fingerprints and fingerprint templates) with Defendant's auto-gate system ("AGS"). Despite obtaining and storing the biometrics of tens of thousands of individuals, Defendant failed to first gain their informed written consent, and, for years, failed to post a publicly available BIPA compliant policy to inform drivers of what was being done with their biometrics. Defendant further violated BIPA by retaining drivers' fingerprints well after Defendant had satisfied its initial purpose in collecting the fingerprints, and also by disseminating the biometrics to two other companies – Remprex, LLC and Nascent Technology, LLC – without the truck drivers' knowledge or consent.

These truck drivers comprise the proposed Class and Subclasses Plaintiffs seek to certify and represent through this Motion.[2] Because Defendant obtained Putative Class Members' biometrics in an identical manner both technically and procedurally, all without informed written consent as required by BIPA, this case is particularly well suited for class treatment.

In addition to collecting biometrics, Defendant gathered other personally identifiable information ("PII") from each Putative Class Member. Because each Putative Class Member is readily identifiable—by name, birth date, CDL number, and other data—Defendant's records make this case especially well-suited for class certification. This outcome is not surprising, given

---

[1] These facilities are known as Global 1, 2, 3, and 4. The discussion herein is limited to Defendant's practices at these facilities.

[2] Proposed class members are referred to herein as "Putative Class Members."

that one of the AGS's primary purposes was to accurately and uniformly identify and catalog individuals seeking entry into Union Pacific's Illinois facilities.

As discussed below, courts regularly certify classes of BIPA plaintiffs. Most notably, Judge Kennelly certified a class of truck drivers in a virtually identical case against a different railroad. *Rogers v. BNSF Railway Co.,* No. 19-cv-03083, 2022 WL 854348 (N.D. Ill. March 22, 2022). Union Pacific's AGS was supplied by the same vendors, and used the same hardware, software and biometric fingerprint scanning technology as the AGS at issue in *Rogers.* Ultimately, class certification is appropriate because following certification, a ruling as to the legality of Defendant's collection of biometrics can be applied uniformly across all Putative Class Members. Accordingly, Plaintiffs move the Court to certify the Class and Subclasses set forth below, to appoint Plaintiffs as class representatives, and to appoint the undersigned Plaintiffs' Counsel as class counsel.

## I.     FACTUAL BACKGROUND

### A.     The Illinois Biometric Information Privacy Act

To protect individuals' immutable biometrics, the Illinois Legislature enacted BIPA, which provides that a private entity may not obtain and/or possess an individual's biometrics unless it *first* receives a written release from the person for the collection of his or her biometric identifiers and/or biometric information. 740 ILCS 14/15(b). Under BIPA, biometric identifiers include fingerprints, and biometric information is broadly defined as *any* information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS 14/10. The biometrics at issue in this case are fingerprints and fingerprint templates (templates are mathematical representations of fingerprint minutiae). Furthermore, BIPA requires private entities that possess biometrics to publish a publicly available written policy outlining the retention schedule and destruction

2

guidelines for such biometrics. 740 ILCS 14/15(a). BIPA also requires entities that capture and collect biometrics (and that thereby come into possession of biometrics) destroy those biometrics when the initial purpose for the collection has been satisfied. *Id.* Private entities are also prohibited from disclosing an individual's biometrics to third parties without obtaining informed consent. 740 ILCS 14/15(d).

### B. The Underlying Misconduct

#### 1. Union Pacific Procures and Installs the AGS

In 2010, Defendant solicited bids to replace its existing auto-gate system, which was nearing the end of its useful life.[3] Defendant's request for proposal ("RFP") specifically sought an AGS that used fingerprint biometrics as a means of identifying truck drivers.[4]

Union Pacific ultimately accepted a Proposal to source the AGS hardware and software from two third parties: Remprex, LLC ("Remprex") and Nascent Technology, LLC ("Nascent"), with Remprex acting as an authorized "value-added reseller" of Nascent's AGS technology.[5] The AGS purchased and licensed by Union Pacific from Remprex and Nascent integrated biometric fingerprint capture and reading devices that were manufactured by another company, Lumidigm (later acquired by HID Global Corporation).[6] Defendant's AGS purchase included the purchase and installation of the gate system itself (the hardware) and a license to use the AGS software from

---

[3] *See* Remprex's Proposal to Union Pacific's Request for Proposal ("Proposal"), attached as **Exhibit A**; Excerpts of Transcript from January 11, 2024 deposition of Union Pacific Representative Terry Brown ("Brown Dep. Vol. 1"), attached as **Exhibit B**, at 58:4-59:4.

[4] Ex. A Proposal, at UP-00000497 (listing Defendant's requirement that the gate system feature a "two-finger biometric scanning unit".)

[5] *See* Ex. A Proposal, at UP-00000487, No. 4; Ex. B Brown Dep. Vol. 1, at 61:15-63:16.

[6] *See* Excerpts of Transcript from Oct. 25, 2023 deposition of Nascent Technology, LLC Representative Lynda Parillo ("Nascent Dep."), attached as **Exhibit C**, at 51:15-25; Excerpts of Transcript from Feb. 13, 2024 Deposition of HID Global Corp. Representative Vito Fabbrizio ("HID Global Dep."), attached as **Exhibit D**, at 21:18-32:17; 134:5-20.

Nascent.[7] Defendant contracted with Remprex to install and maintain certain portions of the AGS at its facilities, and all three entities (Union Pacific, Remprex, and Nascent) worked together to ensure that the AGS at each facility functioned to Union Pacific's (the client's) liking.[8]

        2.     Union Pacific Collected, Captured or Otherwise Obtained Plaintiffs' and Putative Class Members' Biometrics in Illinois

Plaintiffs worked as truck drivers for third-party companies and drove to Defendant's railyards in Illinois to drop off and pick up various loads of freight.[9] Plaintiffs and Putative Class Members were required to register with Defendant's AGS.[10] During driver registration, Union Pacific captured a picture of each driver's face, a scan of their commercial driver's license ("CDL"), and multiple fingerprints.[11] Each fingerprint obtained was stored as a composite fingerprint image (herein "fingerprint image"), and an algorithm was used to extract minutia points from such fingerprint images to create a biometric fingerprint template (herein "biometric template") for each fingerprint captured.[12] Defendant stored the biometric templates, the fingerprint images, the CDL scan, and the picture of the driver on computer servers located at each Illinois facility.[13]

---

[7] Ex. B Brown Dep. Vol. 1, at 126:3-16; Excerpts of Transcript from January 18, 2024 Deposition of Union Pacific employee Matthew Wafer ("Wafer Dep."), attached as **Exhibit E**, at 92:11-19.

[8] Ex. B Brown Dep. Vol. 1, at 76:3-7; Ex. E Wafer Dep., at 92:11-19.

[9] *See* Excerpts of Transcript from July 21, 2023 Deposition of Plaintiff David Fleury, attached as **Exhibit F**, at 47:5-49:19; Excerpts of Transcript from Jan. 4, 2024 Deposition of Plaintiff Alvin Turner, attached as **Exhibit G**, at 30:10-33:10.

[10] Ex. F Fleury Dep., at 116:4-118:8; Ex. G Turner Dep., at 26:22-33:10; *see* Remprex Synapse Automated Gate System Clerk Console Reference Manual ("Clerk Console Reference Manual"), attached hereto as **Exhibit H**, at UP-00000263-265; Biometric Registration Slideshow, attached as **Exhibit I**, at UP-00199286-290; Driver Registration Guide, UP-00000307, attached as **Exhibit J**; *see* Excerpts of Transcript from April 16, 2024 Deposition of Terry Brown ("Brown Dep. Vol. 2"), attached as **Exhibit K**, at 103:11-24. (Q. They were required to use their biometrics to get into the facilities? Is that right? A. Yes.); *see* Union Pacific Intermodal Policy Manual, attached as **Exhibit L**, at UP-00234477 Verification Documentation / Billing No. 7 (showing required use of biometrics to be standard process at in-gates and out-gates for AGS equipped facilities).

[11] *Id.*

[12] Ex. D HID Global Dep., at 26:19-32:25.

[13] Ex. B Brown Dep. Vol. 1, at 164:14-168:2.

Plaintiffs and Putative Class Members were thereafter required to scan their fingerprints at an AGS kiosk to gain access to Union Pacific's Illinois facilities.[14] On such return visits, Defendant once again captured Putative Class Members' fingerprints which were temporarily stored on the gate-lane kiosk fingerprint scanners.[15] The newly-collected fingerprint images then had an algorithm applied to generate another biometric template.[16] Then the new biometric template was compared against the original biometric template stored in Defendant's on-site AGS database.[17] If the new biometric template matched the stored biometric template to a sufficiently high degree, the driver was permitted into the facility.[18] The newly obtained fingerprint images and biometric templates were then deleted from the kiosk fingerprint scanners.[19] But the originally captured fingerprint images[20] and biometric templates from the driver registration process described above remained on Union Pacific's Illinois servers indefinitely.[21] Union Pacific knowingly disseminated such fingerprint images and biometric templates to Remprex and Nascent by giving them access to and/or copies of the biometric databases.[22]

In June 2020, after knowingly violating BIPA for years, after this litigation commenced,

---

[14] *Id.;* Ex. F Fleury Dep., at 92:3-18; 119:12-120:9; Ex. G Turner Dep., at 109:8-14; Ex. K Brown Dep. Vol. 2, at 103:11-24; Ex. L UP-00234477, at Verification Documentation / Billing No. 7 (showing biometrics amongst list of information required prior to ingating); Ex. I at UP-00199286 – 290.

[15] Ex. D HID Global Dep., at 76:1-17; 155:23-159:6.

[16] *Id.*

[17] *Id.*

[18] Ex. B Brown Dep. Vol 1, at 78:13-79:1.

[19] Ex. D HID Global Dep., at 155:23-159:6.

[20] Notably, the fingerprint images collected and stored at registration were not used at all for driver re-entry; rather, the sole comparison was between the re-scan template (derived from the fingerprint image collected at the gate lane kiosk fingerprint scanner) and the stored template. Accordingly, Union Pacific had no purpose for retaining any fingerprint image after each driver had registered. Ex. D HID Global Dep., at 145:15-146:1.

[21] Ex. D HID Global Dep., at 145:15-155:18; Ex. B Brown Dep. Vol. 1, at 35:4-36:18.

[22] *See* REMPREX00003193, attached as **Exhibit M**

); Union Pacific Railroad Central Biometrics Action Plan, attached as **Exhibit N**, at UP-00000528 No. 3 (

); Ex. C Nascent Dep., at 66:18-67:4 (describing Nascent's access to the data as coming "second hand from Remprex").

and more than a year after Defendant had first collected his biometrics without informed written consent, Defendant sought Plaintiff Fleury's *post hoc* purported electronic consent to collect his biometrics via its mobile phone application UPGO.[23] Plaintiff Turner never provided written consent to Defendant's collection of his biometrics in any manner pre or post-suit.[24]

Defendant's conduct (both its noncompliance and its eventual attempt at compliance) was consistent with respect to the Putative Class Members, as Defendant has conceded (both through counsel and through its Rule 30(b)(6) corporate representative) that all Putative Class Members had their biometrics captured and stored pursuant to the same procedures.[25] This biometric collection and dissemination violated Putative Class Members' statutory rights under BIPA because Defendant did not obtain the Putative Class Members' informed written consent prior to obtaining their biometrics for ongoing storage and use with the AGS.[26] Furthermore, Defendant did not obtain Putative Class Members' consent prior to Defendant disseminating their biometrics.[27]

## C.  Production and Analysis of Union Pacific's Data

During discovery, Defendant produced the Putative Class Members' biometrics (and other PII) from its Global 1, Global 2, and Global 4 AGS databases (AGS Databases),[28] along with data

---

[23] Ex. F Fleury Dep., at 42:1-5; 71:13-73:24; Excerpts of Testimony from the January 31, 2024 Deposition of Corporate Representative Katrina King-Lopes ("King-Lopes Dep. Vol. 1"), attached as **Exhibit O**, at 103:7-105:1.

[24] Ex. G Turner Dep., at 23:6-18.

[25] Dkt. 162 at 4 (Union Pacific offering to stipulate that the AGS creates a finger-scan template using the same process for each person that enrolls.); Excerpts of Testimony from the April 15, 2024 Deposition of Union Pacific Corporate Representative Jeremy Hayden ("Hayden Dep. Vol. 2"), attached as **Exhibit P**, at 131:20-132:14 (testifying that "the process is uniform" and agreeing with Defendant's counsel's statement that the "AGS system creates a finger scan template using the same process for each person that enrolls")

[26] Ex. O King-Lopes Dep. Vol. 1 at 40:15-42:24; Ex. F Fleury Dep. at 29:8-14; 160:4-10; Ex. G Turner Dep. at 23:6-18.

[27] *Id.*

[28] Defendant is unsure of what happened to the biometric database held at Global 3, but it did not produce it. Ex. P Hayden Dep. Vol. 2, at 8:25-15:19; Ex. E Wafer Dep., at 13:14-14:3; 278:7-282:10. Suffice it to

6

memorializing the dates that individuals provided their purported consent (Consent Database). The Parties each hired experts to analyze the AGS Databases and the Consent Database and determine the number of unique truck drivers whose fingerprint images and/or biometric templates were obtained and stored by Defendant *prior* to providing consent for the collection of their biometrics.

Both parties' experts agree that the AGS Databases are organized so that the databases can be linked by common fields unique to each driver (such as their CDL number).[29] The data accurately identifies individuals based on objective criteria, including the date on which they registered their fingerprints with the AGS, and the date (if any) on which they provided alleged consent for the collection of their biometrics. *Id.* Put simply, Defendant's own records contain all of the information needed to accurately identify Putative Class Members.

The AGS Databases also provide a manageable framework to quantify statutory damages both on a class-wide basis and specifically as to each Putative Class Member, as each instance of illegally captured fingerprint images and biometric templates is associated with a specific driver.[30] Thus, individual statutory damages are easily quantified. While Defendant's expert (unsurprisingly) did not include these calculations in his report, he admitted that unique instances of fingerprint images and biometric templates are calculable.[31]

## D. The Proposed Class and Subclasses

By this Motion, Plaintiffs seek to certify the following Class and Subclasses:

---

say Defendant appears to have deleted the Global 3 biometric database (and the evidence contained on it) *after* the onset of this litigation. *Id.*

[29] *See* Excerpts of the October 25, 2024 Deposition of Union Pacific Expert William Choi, attached as **Exhibit Q**, at 23:6-15; 77:4-78:10; Expert Report of Global Digital Forensics ("Plaintiffs' Expert Report"), attached as **Exhibit R**, at ¶ 32; p. 14-15, Figures 1-2; Excerpts of the November 5, 2024 Deposition of Plaintiffs' Expert Joseph Caruso, attached as **Exhibit S**, at 237:4-19.

[30] Ex. R Plaintiffs' Expert Report, at p.14-15, Figures 1-2.

[31] Ex. Q Choi Dep., at 45:5-15; 67:5-69:3; 72:8-22.

**Class:**
All individuals whose composite fingerprint images and/or fingerprint templates were obtained by Defendant in Illinois at any time since December 11, 2014 and prior to any written consent according to Defendant's records.

**Policy Subclass:**
All Class members whose composite fingerprint images and/or fingerprint templates were stored at one of Union Pacific's Illinois facilities prior to January 31, 2019.[32]

**Illegal Retention Subclass:**
All Class members who had one or more composite fingerprint images stored in one of the AGS databases maintained at Union Pacific's Illinois facilities.[33]

Plaintiffs request that David Fleury and Alvin Turner be appointed to represent the Class and Illegal Retention Subclass, and that Plaintiff David Fleury represent the Policy Subclass. As discussed below, the proposed Class and Subclasses satisfy the elements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. The Class and Subclasses also satisfy Federal Rule of Civil Procedure 23(b)(3).

## II. ARGUMENT

### A. Legal Standard for Class Certification

Class certification is appropriate where a plaintiff satisfies all of the prerequisites of Rule 23(a) and meets one of three provisions of Rule 23(b). Fed. R. Civ. P. 23. "To be certified, a proposed class must satisfy the four requirements of Rule 23(a): '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the

---

[32] The end date for the Policy Subclass corresponds with when Union Pacific finally published a written publicly-available BIPA policy, which – according to Defendant's designated corporate representative to testify as to its BIPA policies – did not occur until February of 2019. *See* Ex. O King-Lopes Dep. Vol. 1, at 34:5-36:16; 40:15-42:4.

[33] The Class and Subclasses Plaintiffs seek to certify here are defined differently from those asserted in their Third Amended Complaint. (*See* TAC ¶ 36.) This is not uncommon in class actions. *See Simpson v. Dart,* 18-CV-0553, 2021 WL 2254969, at *1 (N.D. Ill. June 3, 2021) ("It is not uncommon for plaintiffs and courts to shift or change class definitions during a lawsuit[.]")

class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" Fed. R. Civ. P. 23(a); *see Bell v. PNC Bank, N.A.,* 800 F.3d 360, 373 (7th Cir. 2015). When a plaintiff seeks certification under Rule 23(b)(3), the court should grant certification provided "questions of law or fact common to the class members predominate over any questions affecting individual members" and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Bell*, 800 F.3d at 373.

The Court "should make whatever factual and legal inquiries are required under Rule 23." *Parish v. Sheriff of Cook County,* 07-cv-4369, 2008 WL 4812875, at *2 (N.D. Ill. Oct. 24, 2008) (quoting *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675-76 (7th Cir. 2001)). However, the Court does not "adjudicate th[e] case," but rather "select[s] the method best suited to adjudication of the controversy fairly and efficiently." *Godfrey v. GreatBanc Tr. Co.,* 2021 WL 679068, at *2 (N.D. Ill. Feb. 21, 2021) (quoting *Amgen v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 460 (2013)). As explained below, all factors of Rules 23(a) and 23(b)(3) are satisfied, making class certification appropriate.

## B. The Proposed Class and Subclasses are Certifiable Under Federal Rule 23(a)

### 1. The proposed Class and Subclasses are sufficiently numerous

The first requirement for certifying a class is showing that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Seventh Circuit has explained that "[t]he key numerosity inquiry . . . is not the number of class members alone but the practicability of joinder." *Rogers,* 2022 WL 854348 at *2 quoting *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 773 (7th Cir. 2021). A "plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009); *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

9

Here, it is indisputable that the proposed Class contains tens of thousands of individuals. Indeed, Defendant itself produced numerous putative "class lists" and interrogatory responses during discovery that showed a range of class sizes depending on the criteria used to define them, but always exceeded 20,000 unique individuals.[34] Moreover, the AGS Databases have been analyzed by the Parties' experts and confirm the Class (and Subclasses) are sufficiently numerous.[35] Thus, there is no dispute that the Class consists of tens of thousands of individuals— which easily satisfies the numerosity requirement. *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805-806 (N.D. Ill. 2008); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). These Class members are located throughout the United States such that their joinder to this lawsuit is impracticable. *Anderson*, 986 F.3d at 773 (7th Cir. 2021). The numerosity requirement is satisfied.

      2.    The proposed Class and Subclasses are ascertainable

While not explicitly required by the text of Rule 23(a), courts in this Circuit sometimes evaluate whether the proposed class is objectively defined such that class members are "ascertainable." *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 657 (7th Cir. 2015). However, to meet the ascertainability requirement, the Court "need not ascertain 'absent class members' actual identities' . . . [r]ather, 'it is enough that the class be ascertain*able*,' with class members to be identified during a claims administration process[.]" *Birchmeier v. Caribbean Cruise Line, Inc.*,

---

[34] *See, e.g.*, Dkt. 162, at 2 (Defendant detailing production of a class list containing over 23,000 people).

[35] *See* Plaintiffs' Expert Supplemental Report, attached hereto as **Exhibit T**, at ¶ 4 ("GDF determined, within a reasonable degree of scientific certainty, that 22,402 distinct drivers had their CompositeIM's and/or TemplateBIN's collected, captured or obtained and thereafter stored in Illinois by the UP AGS on or after December 11, 2014 without written consent.") Notably, Defendant's database expert, while using a slightly different methodology, arrived at remarkably similar number. Ex. Q Choi Dep., at 72 (discussing Defendant's expert's number of 21,153.)

302 F.R.D. 240, 245 (N.D. Ill. 2014) (emphasis in original) (citing *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)).

Importantly, the Seventh Circuit takes a lenient view of ascertainability, and has declined to require, as some circuits have, that plaintiffs demonstrate a "'reliable and administratively feasible' way to identify all who fall within the class definition." *Mullins,* 795 F.3d at 657. Instead, the Seventh Circuit has stated that the proper analysis is to "not to let a quest for the perfect treatment of [ascertainability] become a reason to deny class certification" and to focus on whether the class is "defined clearly and that membership [is] defined by objective criteria rather than by, for example, a class member's state of mind." *Id.*

Nevertheless Defendant has already essentially conceded ascertainability through its production of several class lists identifying specific individuals throughout discovery and its arguments related thereto.[36] As Defendant has represented to the Court,[37] Defendant can organize its data according to categories such as: (1) Driver Name; (2) CDL Number; (3) the date that a truck driver registered their fingerprints with the AGS; (4) the date that a truck driver first/last scanned their fingerprints in Illinois; (5) the drivers' employers; (6) whether the driver provided purported consent, if any; (7) the date on which the driver provided their purported consent; and (8) the issuing state of the truck driver's CDL. And this is only a small fraction of the data fields collected for truck drivers.[38] Moreover, Defendant has admitted, and discovery has confirmed, that

---

[36] Dkt. 162 at 6 (Defendant arguing that the class list "is all [Plaintiffs] should need to 'show[] [whether] the identities of the putative Class members are specifically ascertainable.'"); Dkt. 198 at 2 (Defendant representing that it can cull its data to produce information according to "the relevant class definition and class period."); Expert Rebuttal Report dated of Union Pacific Expert William Choi, attached as **Exhibit V** at ¶ 16.

[37] Dkt. 162 at n.1

[38] *See* Defendant's Answer to Interrogatory No. 12, attached as **Exhibit U** (listing several dozen fields of data in Defendant's possession which relate to the Class.)

Defendant collected scans of each truck driver's CDL during the registration process along with their biometrics.[39]

Classes have been certified based on information that was far less complete, personal or identifying than the information available here. *Boundas*, 280 F.R.D. at 418 (finding that a proposed class is ascertainable even if the actual "names and addresses" of the class members are not identified); *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,* 271 F.R.D. 139, 145 (N.D.Ill.2010) ("In instances where the names and addresses of class members are not easily ascertainable, notice by publication alone continues to find support in more recent case law."); *Svoboda v. Amazon.com, Inc.* No. 21-cv-5336 2024 WL 1353718 at \*2, \*10 (N.D. Ill. March 30, 2024) (granting class certification in BIPA case where class members' identities were determined through a combination of billing addresses that may or may not have belonged to class members and imprecise geo-location data). Because the proposed Class definitions provide objective criteria to easily determine membership (they are written in terms of objective and verifiable data points such as the date that composite fingerprint images and/or biometric fingerprint templates were obtained and the date that consent was obtained), the ascertainability requirement is fulfilled. *Mullins,* 795 F.3d at 657. Accordingly, the Class and Subclasses are clearly ascertainable and achieving notice which fulfills the requirements of due process will be straightforward.

     3.    The requirement of commonality is satisfied

The second requirement of Rule 23(a)(2) is met where "there are questions of fact or law common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, the class representative must demonstrate that members of the class "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). However, "only one common question is necessary to

---

[39] Dkt. 275 at Answer to ¶ 21; Ex. P Hayden Dep. Vol. 2, at 25:23-27:4; Ex. B Brown Dep. Vol. 1, at 164:11-168:2; Ex. J Driver Registration Guide, at UP-00000307; Ex. R Plaintiffs' Expert Report, at 14-15.

satisfy Rule 23(a)'s commonality requirement." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). Commonality requires that the class members' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 564 U.S. at 350.

Commonality is often present where defendants have "engaged in standardized conduct toward members of the proposed class." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 327 (N.D. Ill. 2010) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)); *Hinman*, 545 F. Supp. 2d at 806. *See also CE Design Ltd. v. Cy's Crabhouse N., Inc.,* 259 F.R.D. 135, 141 (N.D. Ill. 2009) (finding commonality where plaintiff produced evidence of standardized conduct); *T.S. v. Twentieth Century Fox Television*, 334 F.R.D. 518, 528 (N.D. Ill. 2020). Similarly, "claims that arise out of standard documents present a classic case for treatment as a class action." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996) (internal quotations omitted); *see also Phillips v. Waukegan Housing Auth.,* 331 F.R.D. 341 (N.D. Ill. 2019).

Here, Defendant's conduct was standard and systematic for each truck driver who entered its Illinois facilities. Each Illinois AGS maintained independent local storage of the biometrics used to enter the Illinois AGS facilities. Similarly, not only were Putative Class Members' biometrics collected in an identical manner, they were also stored in an identical manner, as evidenced by Defendant's production of the AGS Databases. Specifically, the biometrics and other PII (names, birth dates, CDL information, mailing addresses, and biometric identifiers and biometric information) were stored in databases structured the same way, and containing the same data fields.[40] The first time that truck drivers visited one of Defendant's Illinois facilities, they

---

[40] Ex. R Plfs' Expert Report, at p. 14-15 Plaintiff Profiles.

13

were permitted inside the facility so that they could "register" with the AGS.[41] In doing so, the drivers were uniformly registered into the AGS by a clerk, often a Union Pacific employee, using a driver registration station ("DRS") in the on-site Driver Assistance Buildings.[42] After providing a scan of their CDL and having their photo taken, each driver was then required to register the biometrics from *multiple* fingers into the AGS by placing their fingers onto the biometric fingerprint scanner which captured and stored their composite fingerprint images and biometric templates on locally maintained servers.[43]

Documents and testimony produced by Union Pacific in discovery confirm the systematic and uniform nature of Defendant's biometric collection process. Indeed the purchase and installation of the gates, the registration of drivers, the storage of their information, and maintenance of the AGS all resulted from common documents.[44] After their initial registration, drivers could enter Defendant's facilities on subsequent visits by pulling into a designated AGS lane – akin to a "tollbooth lane" – each of which was equipped with a biometrically-enabled kiosk.[45] Embedded within such kiosks are the biometric fingerprint scanners that drivers used to

---

[41] Ex. F Fleury Dep., at 116:4-118:8; Ex. G Turner Dep., at 26:22-29:22; TAC ¶¶ 19-24, 49; Ex. I Biometric Registration Slideshow, at UP-00199286-290; Ex. J Driver Registration Guide, at UP-00000307; Ex. H Clerk Console Reference Manual, at UP-00000263-265.

[42] *Id.*; Ex. B Brown Dep. Vol. 1, at 154:14-155:20.

[43] *Id.*; Dkt. 275 at Answer to ¶ 21.

[44] *See* Ex. I Biometric Registration Slideshow, at UP-00199286-290; Ex. J Driver Registration Guide; Ex. H Clerk Console Reference Manual, at UP-00000263-265; Ex. K Brown Dep. Vol. 2, at 103:11-24; Union Pacific Contract with Nascent, attached as **Exhibit W**; Union Pacific Contract with Remprex, attached as **Exhibit X**. Union Pacific's relationships with Remprex and Nascent were governed by its contracts with those entities. Ex. B Brown Dep. Vol 1, at 126:3-16; Ex. E Wafer Dep., at 92:11-19. That the technology and conduct relating to the collection of biometrics were governed by consistent contractual relationships further supports Plaintiffs' position that the members of the putative Classes were treated in a standardized way that lends itself to class treatment. *Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11-cv-08758, 2018 WL 4052162, at *5 (N.D. Ill. Aug. 24, 2018) (finding common questions of fact and law where class members' claims depended on interpretation of a common contract) (citing *Keele*, 149 F.3d at 594 (7th Cir. 1998)).

[45] Ex. F Fleury Dep., at 87:2-15; Ex. G Turner Dep., at 61:1-12; Ex. K Brown Dep. Vol. 2, at 103:11-24; Ex. L Intermodal Policy Manual, at UP-00234477, at Verification Documentation / Billing No. 7 (showing biometrics amongst list of information required prior to ingating); Ex. I Biometric Registration Slideshow, at UP-00199286-290.

enter and exit Defendant's facilities.[46] The biometric fingerprint scanner cross-compared the data gathered from the fingerprint presented to the scanner with the biometric information (biometric template) associated with that driver's prior biometric registration.[47] If a match, the individual would be allowed into the facility.[48] This process was uniform across all of Defendant's Illinois facilities throughout the relevant time period.[49] The kiosks also operated in a materially similar manner because the process for confirming the identities of drivers was the same across Union Pacific's Illinois facilities, and thus the same for each Putative Class Member. *Id.*

The Putative Class Members are also similarly situated. Membership in the Class is defined using objective data: namely, whether composite fingerprint images and/or biometric fingerprint templates were obtained in Illinois prior to any recorded consent to collect, capture, or otherwise obtain biometrics. Because Defendant's data can be easily used to identify such individuals, a discreet class is formed. Similarly, the Policy Subclass is defined also by objective criteria: it is the Class but with a cut-off date in 2019 (the date Defendant implemented its BIPA Section 15(a) policy).[50] The Illegal Retention Subclass is also defined by objective criteria: it is the Class but includes only those individuals whose composite fingerprint images were stored in the AGS Databases.

Given these objective Class and Subclass definitions, and in light of the fact that there was a standardized pattern of conduct toward all members of the proposed Class, this case is perfectly suited for class treatment. *Schmidt*, 268 F.R.D. at 327. Defendant's use of the AGS to

---

[46] *Id.*

[47] Ex. D HID Global Dep., at 75:14-76:17.

[48] *Id.* at 41:17-42:7.

[49] Ex. P Hayden Dep. Vol. 2, at 131:20-132:14 (Q. Do you agree with that statement, that the AGS system creates a finger scan template using the same process for each person that enrolls? A. I believe – I believe the process is uniform.); Dkt. 162 at 4 (Union Pacific offering to stipulate that the AGS creates a "finger-scan" template using the same process for each person that enrolls.)

[50] Ex. O King-Lopes Dep. Vol. 1, at 34:5-36:16.

systematically gather the Putative Class Members' biometrics is precisely the kind of fact pattern to which Rule 23 was intended to apply, which is why classes of individuals with BIPA claims are regularly certified. *Rogers*, 2022 WL 854348 (N.D. Ill. Mar. 22, 2022); *Howe v. Speedway LLC,* 2024 WL 4346631, at \*1 (N.D. Ill. Sept. 29, 2024); *Tapia-Rendon v. United Tape & Finishing Co., Inc.,* 21-cv-3400, 2023 WL 5228178 (N.D. Ill. Aug. 15, 2023), reconsideration denied, 21-cv-3400, 2024 WL 406513 (N.D. Ill. Feb. 2, 2024); *Svoboda,* 2024 WL 1363718 (N.D. Ill. Mar. 30, 2024); *Alvarado v. International Laser Products, Inc. et al.,* No. 18-cv-7756, 2019 WL 337995 (N.D. Ill. June 19, 2019); *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 542 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019).

The common fact pattern in this case leads to numerous common questions of fact and law. These include: (1) whether the composite fingerprint images that Defendant collected constitute biometric identifiers and/or biometric information as those terms are defined by BIPA; (2) whether the fingerprint templates that Defendant collected constitute biometric identifiers and/or biometric information as those terms are defined by BIPA; (3) whether, prior to obtaining the Putative Class Members' biometrics, Defendant received the informed written consent required by BIPA; (4) whether Defendant providing third parties access to Putative Class Members' biometrics constitutes a dissemination under BIPA; (5) whether Defendant's defenses of implied or retroactive consent apply across the Class; (6) whether BIPA is subject to preemption by any of the three federal statutes Defendant cites; and (7) whether Defendant's violations of BIPA were reckless or negligent.

Taking just one of these common questions as illustrative of the appropriateness of class treatment, Defendant has papered the record with pleadings, testimony and argument that the data Defendant collected from truck drivers is somehow not fingerprints, biometric information, or

16

biometric identifiers. [51] Defendant's argument on this point flies in the face of the hundreds of times Defendant or its employees referred to the data as "fingerprints" or "biometrics" in non-litigation related communications, even well after this lawsuit was filed.[52] And Defendant's insistence that the fingerprints it collected are not actually fingerprints has led to some truly awkward deposition testimony as Defendant's witnesses attempted to feign ignorance or otherwise sidestep questions regarding Defendant's collection of fingerprints. For example, former Union Pacific CEO Lance Fritz, who was CEO during the class period and the executive responsible for Union Pacific's transition to the AGS at issue in this lawsuit, testified as follows:

> Q. Okay. So directing you back to my question, did Union Pacific collect the fingerprints of truck drivers in Illinois?
>
> A. I am aware that we collected information that would allow us to identify drivers so that we could safely have them on our property. Whether that was a fingerprint or a finger scan, we used finger scans. [53]
>
> ***

---

[51] Dkt. 131 at Affirmative Defense No. 9; Dkt. 146 at n.1 ("Union Pacific denies that it has violated BIPA, and denies that its finger-scan system collects data within the definitions of BIPA."); Dkt. 162 at 8; 217 at n.1 ("Union Pacific denies collecting, capturing or storing any data covered by BIPA, and clearly denies collecting, capturing or storing 'fingerprints'"); Dkt. 223 at 4 ("The Template BIN field consists of a BLOB (Binary Large Object) of hex data (numbers and letters); it is not a fingerprint, and it cannot be rendered into a fingerprint."); Transcript of Proceedings Nov. 15, 2023 at 22:4-6 ("We don't have multiple fingerprints or even multiple templates sitting in a database because that's not how this technology works."); Transcript of Proceedings Nov. 16, 2023 at 24:23-25 ("MS. SIEBERT: Okay. Then you would register your -- what we call a template. A finger scan. We dispute whether it's a fingerprint or not."); Ex. O King-Lopes Dep. Vol. 1, at 36:2-38:18 (testifying as Defendant's corporate representative as to BIPA compliance: "We don't actually collect biometrics. We scan the fingers, and the technology behind that does not actually hold the biometric information."); See Excerpts of Transcript of Feb. 2, 2024 deposition of Katrina King-Lopes (King-Lopes Dep. Vol. 2) attached as **Exhibit Y**, at 234:13-235:10 (Q. Is it a part of Union Pacific's good faith and reasonable interpretation of BIPA that it was in compliance with BIPA throughout because it had implied consent from the drivers? A. Union Pacific felt like it was in compliance because we did not believe, as a company, we were collecting actual biometrics, because it was not imagery of the actual fingerprint.)

[52] For a small sampling of such instances, see Ex. J Driver Registration Guide (reading "Capture Biometric Information" as a step in the driver registration process); ITOS Manual, attached as Exhibit Z, at UP-00015390 (ITOS Manual diagram demonstrating that fingerprint images are captured and stored on a "fingerprint server"); Ex. A (RFP requiring AGS to contain a 2-finger Biometric scanning unit); Ex. O King-Lopes Dep. Vol. 1, at 121:1-6 (But is it your testimony that legal wanted you to stop using the phrase "fingerprints" at some point in time? A. Yes. It was incorrect wording.)

[53] See Excerpts of the May 8, 2024 Deposition of former Union Pacific CEO Lance Fritz, attached as **Exhibit AA**, at 48:25-49:14.

> Q: And one of those pieces of hardware as identified in the very middle of the screen is called a fingerprint server. Do you see that?
>
> A: I do.
>
> Q: What do you suppose was stored on the fingerprint servers?
>
> A: Yeah. Technically, I don't know.[54]

Similarly, Jeremy Hayden, a senior member of Union Pacific's IT team and the *only* Union Pacific employee to have actually looked at the data stored on the fingerprint servers (and then only well after this lawsuit was filed), testified as follows:

> Q: And I know that you want to stay away from the word finger print, but they are, in fact, scanning the tip of the finger, correct?
>
> A: They are scanning the -- their end of their finger, that is correct.
>
> Q: Yep, it is not their knuckle, right?
>
> A: That's correct.
>
> Q: All right. And that is because the tip of the finger has had uniquely identifying finger prints, correct?
>
> A: I don't know.[55]

In a subsequent deposition in which Mr. Hayden was testifying as Union Pacific's corporate representative as to the information collected and stored on the AGS databases, Mr. Hayden was first shown a fingerprint image of Plaintiff David Fleury obtained from the AGS Database, then testified as follows:

> Q: And then next to the driver's license, there's another image. What is that a picture of, Mr. Hayden?
>
> Mr. Hennessy: Object to form, calls for speculation.
>
> A: It appears to be an image of a – of a fingerprint.[56]

Nonetheless, Mr. Hayden continued to feign ignorance of whether a fingerprint was a fingerprint, in accordance with Defendant's litigation strategy:

---

[54] *Id.* at 78:3-13.

[55] Excerpts of the June 20, 2023 Deposition of Union Pacific Employee Jeremy Hayden ("Hayden Dep. Vol. 1"), attached as **Exhibit BB**, at 51:19-52:16.

[56] Ex. P Hayden Dep. Vol. 2, at 56:13-19.

Q:     In that role, as Union Pacific's designated corporate representative on the information collected and stored on the local AGS servers, can you say one way or another whether fingerprint images were stored on the local AGS servers?

Mr. Hennessy: Object to form, asked and answered.

A:     I cannot.[57]

One look at the documents and fingerprints Defendant produced in discovery makes it clear that these arguments and sworn testimony are outright dishonest.[58] Put simply, Defendant has produced hundreds of documents and (pursuant to court order, *see* Dkt. 174) over 100,000 fingerprint images (and a similar number of biometric templates) that prove Defendant captured fingerprints and biometric information. In connection with Plaintiffs' forthcoming Motion for Summary Judgment, the Court can resolve this crucial issue for all Class and Subclass members in one fell swoop. *See Howe,* 2024 WL 4346631, at *8-10 (N.D. Ill. Sept. 29, 2024) (Judge Chang recently resolving this issue against another BIPA defendant). Though Plaintiffs identified seven common questions above, Plaintiffs need only establish a "single common question" to satisfy Rule 23(a)(2). *Beaton*, 907 F.3d 1018, 1026 (7th Cir. 2018). That requirement is easily met here. Accordingly, commonality is satisfied.

---

[57] *Id.* at 59:25-60:8.

[58] See fn. 52, *supra*; Ex. R Plaintiffs' Expert Report, at p. 14-15 (depicting the fingerprint images and templates Defendant captured from Plaintiffs and stored on the biometric AGS database produced in discovery); Ex. D HID Global Dep., at 45:16-25 ("Q.·Okay.· And the composite image you're referring to is a fingerprint image, because that's basically what it is; it looks like a fingerprint image. If I were to look at a composite image, it would look like a fingerprint to me; is that right? THE WITNESS:· It's -- It's a picture of your fingerprint."); 74:1-75:5 (explaining that biometric templates can be reverse engineered into fingerprints that match the template); 152:16-153:5 (explaining that the software to view the fingerprint images is readily available). Ex. Z at UP-00015390 (ITOS Manual explaining fingerprint images are captured and stored on a "fingerprint server").

### 4. Plaintiffs' claims are typical of those of the members of the Class and Subclasses

To satisfy the typicality requirement, the movant must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard v. Cook Cnty. Sheriff's Off.,* 989 F.3d 587, 605 (7th Cir. 2021) (quoting *Keele,* 149 F.3d at 595 (7th Cir. 1998)); *McFields v. Dart,* 982 F.3d 511, 517 (7th Cir. 2020); *Hinman,* 545 F. Supp. 2d at 806. The typicality requirement may be satisfied even if there are factual distinctions; typicality does not require claims to be "identical" and is generally "liberally construed." *T.S. v. Twentieth Century Fox Television,* 334 F.R.D. at 530. In other words, "individual claims may feature some factual variations as long as they 'have the same essential characteristics.'" *Beaton,* 907 F.3d at 1026; *CE Design Ltd.,* 259 F.R.D. at 141; *Smith v. Nike Retail Services, Inc.,* 234 F.R.D. at 660.

Here, Plaintiffs' claims are identical to those of the proposed members of the Class and Subclasses they seek to represent. Defendant's conduct in collecting, storing and using Plaintiffs' biometrics through its AGS is typical of Defendant's conduct towards every other Putative Class Member.[59] All members of the Class had their biometrics captured by Defendant during the driver registration process – using the same procedure and the same AGS – and Defendant's lack of compliance with BIPA with respect to obtaining such biometrics in Illinois was uniform across the Class. Thus, the legal claims, as well as the factual basis for such legal claims, are not just typical,

---

[59] Ex. P Hayden Dep. Vol. 2, at 131:20-132:14; Dkt. 162 at 4 (Union Pacific offering to stipulate that the AGS creates a finger-scan template using the same process for each person that enrolls.); Ex H Clerk Console Reference Manual, at UP-00000263-65; Ex. J Driver Registration Guide.

but are *identical* for Plaintiffs and all Putative Class Members. As such, Plaintiffs' claims satisfy the typicality requirement.

Similarly, Plaintiff Fleury's Section 15(a) public policy claims arising from Defendant's failure to adopt a written publicly available policy with respect to its collection of biometrics is not only typical of the claims of the proposed Policy Subclass, but also identical. Each putative Policy Subclass member whose biometrics were collected by Defendant prior to January 31, 2019 has the exact same claim, and thus the typicality requirement is met for the Policy Subclass.

Finally, Plaintiffs Fleury's and Turner's Section 15(a) unlawful retention claims arising from Defendant's unlawful retention of their fingerprint images after Defendant's initial purpose for collecting or obtaining those images had been satisfied are likewise identical to the claims of the proposed Illegal Retention Subclass. Each putative Illegal Retention Subclass member had their composite fingerprint images collected or obtained by Defendant when they first registered with Defendant's AGS system. As described above, those fingerprint images were immediately used to create fingerprint templates for each fingerprint scanned.[60] At that moment, Defendant no longer had any use for the fingerprint images because only the biometric templates were subsequently used to verify drivers' identities upon re-entry.[61] Defendant thus had no need to retain the composite fingerprint images. Nonetheless, Defendant retained one or more fingerprint images for each member of the Illegal Retention Subclass, in violation of section 15(a). 740 ILCS 14/15(a) (requiring deletion of biometrics where the initial purpose for their collection has been satisfied).

---

[60] Ex. D HID Global Dep., at 154:17-159:6.
[61] Ex. D HID Global Dep., at 145:15-146:1.

5. Plaintiffs and proposed Class Counsel will adequately represent the Class and Subclasses

In obtaining class certification, the movant must also show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011); *see also Spano v. The Boeing Co.*, 633 F.3d 574, 586-87 (7th Cir. 2011). Rule 23(a)(4) requires that both class representative and counsel "zealously represent and advocate on behalf of the class as a whole." *Maxwell v. Arrow Financial Services, LLC*, 03-cv-1995, 2004 WL 719278, at *5 (N.D. Ill. Mar. 31, 2004).

To be an adequate class representative, a plaintiff must not have "antagonistic or conflicting claims" and a plaintiff must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Baxter v. Kawasaki Motors Corp.*, 259 F.R.D. 336, 342 (N.D. Ill. 2009). Separately, to demonstrate counsel's adequacy, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions …; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g).

Here, Plaintiffs, both truck drivers, have the same interests as the Putative Class Members. Plaintiffs had their biometrics obtained by Defendant in Illinois without the prior informed written consent required by BIPA and in the same manner and using the same technology as the Putative Class Members.[62] Additionally, Plaintiffs suffered the same statutory violation(s) and seek

---

[62] Ex. F Fleury Dep., at 47:5-49:19; Ex. G Turner Dep., at 30:10-33:10; Ex. K Brown Dep. Vol. 2, at 103:11-24; Ex. L UP-00234477, at Verification Documentation / Billing No. 7 (showing biometrics amongst list of information required prior to ingating); Ex. J Driver Registration Guide.

statutory damages, as does every Putative Class Member. *CE Design Ltd.,* 259 F.R.D. 135, at 142 ("Because any damage award is likely to be confined to statutory damages, plaintiff's pecuniary interests are aligned with those of the class."). Therefore, Plaintiffs do not have antagonistic or conflicting claims with the individuals they seek to represent, but rather have the same interests: to ensure that all similarly situated individuals obtain the compensation to which they are entitled.[63]

Moreover, Plaintiffs' pursuit of this matter, including responding to discovery and sitting for lengthy depositions, demonstrates that they will zealously advocate for the Class and Subclasses and put Putative Class Members' interests ahead of their own.[64] Plaintiffs are aware of their responsibility to the absent members of the Class and are committed to acting in their best interests.[65] In fact, Plaintiffs' understanding of the facts and law here goes far beyond the modest standard set forth by the Seventh Circuit. "[T]he class representative's role is limited. It was found not to be enough to defeat a class certification in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants." *Carbajal v. Capital One,* 219 F.R.D. 437, 442 (N.D. Ill. 2004). By contrast, here, Plaintiffs specifically sought out and retained Proposed Class Counsel to seek redress for their injuries and have dedicated substantial time to the prosecution of this litigation.[66] This includes reviewing and assisting with pleadings and discovery responses and sitting for full-day depositions.[67] Thus, Plaintiffs have shown that they have been, and will be, zealous advocates for the Class and Subclass and that they are highly

---

[63] Ex. F Fleury Dep., at 36:23-39:2; Ex. G Turner Dep., at 162:22-163:8.

[64] Ex. F Fleury Dep., at 9:2-10:10; Ex. G Turner Dep., at 10:12-11:21.

[65] Ex. F Fleury Dep., at 29:8-14; Ex. G Turner Dep., at 162:22-163:8.

[66] Ex. F Fleury Dep., at 29:8-30:1; 36:20-39:2; Ex. G Turner Dep., at 26:9-27:5; 168:11-169:5.

[67] Ex. F Fleury Dep., at 9:2-10:10; Ex. G Turner Dep., at 10:12-11:21.

invested in the outcome of the case.[68] *See Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 184 (N.D. Ill. 2015) ("[Plaintiff] has demonstrated that she is sufficiently interested in the outcome of this case as she sat for her deposition and responded to written discovery.")

Further, Proposed Class Counsel satisfy Rule 23(a)(4) and Rule 23(g). As evidenced by the lengthy docket here, Plaintiffs' counsel have invested thousands of hours over the past five years investigating and litigating this matter without compensation.[69] Class Counsel have also regularly engaged in major complex and class litigation, having been appointed class counsel in numerous complex class actions in state and federal courts throughout the nation.[70] Proposed Class Counsel were recently appointed Class Counsel in connection with a BIPA class action settlement in Illinois against another major railroad for similar alleged violations of BIPA. *Rogers v. BNSF Railway Co.*, No. 2019-CH-04393 (Cir. Ct. Cook Cnty., Ill. 2024). Such appointment as Class Counsel came only after achieving adversarial class certification in the federal analogue to the same case, and successfully serving as trial counsel in the first-ever BIPA case to go to trial. *Rogers*, 2022 WL 854348 (N.D. Ill. March 22, 2022). Plaintiffs' counsel have devoted, and will continue to devote, the resources necessary to prosecute this matter.[71]

Thus, both Plaintiffs and Plaintiffs' counsel have adequately and zealously represented the putative Class and Subclasses over the past five years and will continue to do so. *See* Dkt. 176.

### C. The Proposed Class and Subclasses Satisfy Rule 23(b)(3) Standards.

A class is certifiable under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is

---

[68] Ex. F Fleury Dep., at 36:23-39:2; Ex. G Turner Dep., at 162:22-163:8.

[69] *See* Declaration of David L. Gerbie ("Gerbie Decl."), attached as Exhibit CC, ¶ X; Declaration of Thomas M. Hanson ("Hanson Decl."), attached as Exhibit DD, ¶ 3.

[70] Ex. CC Gerbie Decl. ¶ 32 at Ex. 1; Ex. DD Hanson Decl. ¶ 2 at Ex. 1 (incorporating and attaching firm résumés for Plaintiffs' Counsel.)

[71] Ex. CC Gerbie Decl. ¶ 32; Ex. DD Hanson Decl. ¶ 3.

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To satisfy Rule 23(b)(3), a plaintiff must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 571 (N.D. Cal. 2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing 7A Federal Practice & Procedure § 1777)).

### 1. Common questions of law and fact predominate

The "purpose" of Rule 23(b)(3)'s predominance requirement is to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation.'" *McFields*, 982 F.3d at 518 (7th Cir. 2020) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). To satisfy the predominance requirement of Rule 23(b)(3), "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question." *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581 (7th Cir. 2000). While the common issues must predominate, they need not be exclusive. *Radamanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal quotation marks omitted). However, "a court weighing class certification must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell*, 800 F.3d at 377 (7th Cir. 2015).

25

Here, the elements of the members of the Putative Class Members' claims are *identical* under BIPA and will be based on the same class-wide proof. *Foreman v. PRA III, LLC*, 05-cv-3372, 2007 WL 704478, at *11 (N.D. Ill. Mar. 5, 2007) (Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, classwide basis ... [since s]uch proof obviates the need to examine each class member's individual position."). As set forth in Section III(B)(3), *supra*, there are numerous common questions of law and fact at issue in this litigation, all of which are subject to common proof and can be adjudicated on a class-wide basis for all members of the Classes.

Defendant's defenses also lend themselves to classwide resolution. For example, at the pleading stage, Defendant argued that Plaintiff Fleury's post-suit provision of consent foreclosed his claim. This argument was rejected by Judge Alonso, whose ruling was then cited by the Court in declining to re-address the issue pursuant to Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint. Dkts. 47 at 15-16; 266 at 6. Plaintiffs expect that Defendant will raise this defense again. And if Defendant does, its argument would uniformly apply to all members of the Class who provided purported consent *after* the original unconsented-to collection of their biometrics. Indeed, the predominant facts at issue are Defendant's uniform practices with respect to its ownership and operation of the Auto-Gate Systems and the manner in which it uniformly obtained Putative Class Members' biometrics in Illinois, and even Defendant's ultimate attempt to comply with the law—not any specific circumstances or state-of-mind of individual Putative Class Members.[72] The uniform applicability of Defendant's defenses is most apparent in the context of its preemption arguments, which Defendant has now unsuccessfully argued twice (Dkts. 36; 226-

---

[72] Relatedly, because BIPA requires an objective measure of consent ("informed written consent"), as opposed to some lesser form of consent such as oral or implied, the state of mind of any truck driver is irrelevant and would not impact class certification here. *See* 740 ILCS 14/1, *et seq*.

26

1), and which it will raise again. Regardless of whether the Court follows Judge Kennelly's reasoning in *Rogers* and other on-point in-district precedent in again rejecting Defendant's preemption arguments, such ruling will apply across the Class.

The facts of this case as they relate to each Putative Class Member and the statutory requirements set forth in BIPA – and the resulting question of whether Defendant's actions violated BIPA – are not dependent on factual inquiries as to individual class members. "Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation." *CE Design Ltd.,* 259 F.R.D. 135 at 142. As such, not only do common questions of law predominate, so do common questions of fact.

2.      A class action is the most efficient way of adjudicating the claims at issue and is superior to a multitude of individual lawsuits

Rule 23(b)(3) requires a class action to be superior to other available methods and a fair and efficient method to adjudicate the controversy. Fed. R. Civ P. 23(b)(3). To determine whether a class action is a superior method, courts often look to whether it is an "efficient use of both judicial and party resources." *Hinman,* 545 F. Supp. 2d at 807. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 759 (7th Cir. 2014) (quoting *Amchem,* 521 U.S. at 615). The superiority requirement is generally satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1015 (7th Cir. 2002). Courts should also consider the "improbability that large numbers of class members would possess the initiative to litigate individually." *Morris v. Risk Mgmt. Alternatives, Inc.,* 203 F.R.D. 336, 345 (N.D. Ill. 2001) (quoting *Haynes v. Logan Furniture,* 503 F.2d 1161, 1164-65 (7th Cir. 1974)). In making an

27

inquiry as to the efficiency of the class action model in a given case, "[t]he more claimants there are, the more likely a class action is to yield substantial economies in litigation." *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 660–61 (7th Cir. 2004).

In determining whether a class action is the superior method, courts often consider the following factors: (1) the class members' interest in individually controlling separate actions; (2) any litigation already begun by class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *Carbajal,* 219 F.R.D. at 442-443.

This case is particularly well suited for class treatment because the Class members' interests in pursuing individual actions is minimal given that most members of the Class would find the cost of litigating their claims to be prohibitive. *See Carbajal,* 219 F.R.D. at 443 ("[T]he fact that any one individual plaintiff only a modest amount ($1,000) absent actual damages actually makes the claims more suitable for determination in a class action, as no individual would have incentive to sue on his or her own.") Even here, where class members may be entitled to $5,000 in statutory damages for each violation of BIPA, the cost of litigating their claims would still be prohibitive. Indeed, proposed Class Counsel have spent millions of dollars in attorney time and expenses –and hundreds of thousands more in out-of-pocket expenses – prosecuting this action, and these costs will only increase as the Parties brief subsequent motions and prepare for trial.[73] Given the extensive resources Proposed Class Counsel have dedicated to this case, the fact that the amount of damages is large in the aggregate here (as Defendant has prematurely argued numerous times) does not prevent class certification, nor does the fact that individual class members may achieve significant recoveries. Dkts. 206, 209, 226-1; *Murray v. GMAC Mortg. Corp.*, 434 F.3d

---

[73] Ex. CC Gerbie Decl., ¶ 32.

948, 954 (7th Cir. 2006) ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's *overall conduct* and control its *total* exposure"); *see also Svoboda,* 2024 WL 1363718, at \*14 (N.D. Ill. Mar. 30, 2024) citing *Murray*, 434 F.3d at 953; *see also Tapia-Rendon*, 2023 WL 5228178, at \*7 (finding *Murray* forecloses the argument that the potential for an excessive judgment under BIPA violates a defendant's constitutional due process rights); *Howe*, 2024 WL 4346631, at \*17 (N.D. Ill. Sept. 29, 2024) (citing *Murray* and *Tapia-Rendon* in finding superiority). Because the claims at issue here involve easily calculated statutory damages based on violations of one statute, a class action will allow for a single, consistent adjudication of Defendant's violations of BIPA and the resulting damages. *Id.*

Further, many Putative Class Members may not have access to competent counsel willing to invest the time and resources necessary to prosecute their claims on an individual basis. It is therefore unlikely that, absent a class action, a meaningful percentage of Putative Class Members would be able to obtain relief through individual lawsuits. Indeed, proposed Class Counsel are aware of only one other BIPA lawsuit against Defendant. *Payton, et al., v. Union Pacific Railroad Co.,* No. 24-cv-00153 (N.D. Ill.) As such, adjudicating Putative Class Members' claims in a single proceeding will "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982); s*ee Carbajal,* 219 F.R.D. at 443 ("Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually"); *Carnegie,* 376 F.3d at 660–61. Moreover, proceeding here makes sense because this litigation has been pending in this Court since Defendant chose this forum in early 2020,

because the Class and Subclass are limited to individuals whose rights were violated within Illinois, and because BIPA is an Illinois statute.

Finally, Plaintiffs' and Putative Class Members' claims can be easily managed as a class action. As set forth above, liability can be established on a class-wide basis based on the same common facts learned in discovery. Nor are there any potential difficulties with ascertaining the Class or with providing notice, due to the extent of Defendant's data. Accordingly, a class action is the most efficient method of adjudicating this action and is superior to individual lawsuits.

## III.    CONCLUSION

For the reasons set forth above, the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b) are satisfied. Plaintiffs respectfully request that the Court enter an Order: (1) certifying the proposed Classes; (2) appointing Plaintiffs David Fleury and Alvin Turner to represent the Collection / Dissemination Class, and the Illegal Retention Subclass; (3) appointing Plaintiff David Fleury to represent the Policy Subclass ; (4) appointing Myles McGuire, Evan M. Meyers, David L. Gerbie, and Brendan Duffner of McGuire Law, P.C. and Jon Loevy, Michael Kanovitz, and Thomas Hanson as Class Counsel; and (4) awarding such additional relief as the Court deems reasonable and just.

Dated: January 2, 2025

DAVID FLEURY and ALVIN TURNER, individually, and on behalf of similarly situated individuals

By: /s/ *Brendan Duffner*
*One of Plaintiffs' Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner

30

MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Thomas M. Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

*Counsel for Plaintiffs and the Putative Class and Subclasses*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 2, 2025, a copy of *Plaintiffs' Motion and Memorandum of Law in Support of Class Certification* was filed electronically with the Clerk of Court, with a copy sent by Electronic Mail to all counsel of record.

/s/ *Brendan Duffner*