**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID FLEURY and ALVIN TURNER individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 20-cv-00390 |
| v. | ) ) | Hon. LaShonda A. Hunt |
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, | ) ) ) | Magistrate Jeffrey Cole |
| *Defendant*. | ) ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**CLASS CERTIFICATION**

Plaintiffs David Fleury and Alvin Turner, by and through their undersigned counsel,

pursuant to Fed. R. Civ. P. 23, and for their Reply in Support of Plaintiffs' Motion for Class

Certification, hereby submit the following Memorandum of Law.

Dated: May 22, 2025

Respectfully submitted,

DAVID FLEURY and ALVIN TURNER,
individually, and on behalf of similarly
situated individuals

By: /s/ *Brendan Duffner*
One of Plaintiffs' Attorneys

Myles McGuire (mmcguire@mcgpc.com)
Evan M. Meyers (emeyers@mcgpc.com)
David L. Gerbie (dgerbie@mcgpc.com)
Brendan Duffner (bduffner@mcgpc.com)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002

Jonathan Loevy (jon@loevy.com)
Michael I. Kanovitz (mike@loevy.com)
Thomas M. Hanson (hanson@loevy.com)
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900

*Counsel for Plaintiffs and the Putative Classes*

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT .............................................................................................................. 2

  A.   The Illinois Court of Appeals has Rejected Defendant's Contention that no BIPA Class can be Certified Post-*Cothron*. ................................................................................... 2

  B.   Class Certification is Appropriate Under Rule 23(a) ............................................ 6

    1.   Defendant Concedes Numerosity, Commonality and Ascertainability .......................... 6

    2.   Plaintiffs are Typical and Adequate Class Representatives ............................................ 6

      a.   Plaintiffs Fleury and Turner are Entitled to the Exact Same Statutory Damages and the Class and Subclasses they Represent ........................................................... 6

      b.   Defendant's Meritless Judicial Estoppel Defense does not Render Plaintiff Fleury Inadequate or Atypical ...................................................................................... 8

  C.   Class Certification is Appropriate Under Rule 23(b)(3) ................................... 10

    1.   Common Questions Predominate ................................................................................ 10

    2.   Class Treatment Is Superior to Individual Actions ..................................................... 11

  D.   Defendant's Verification Scan Argument does not Defeat Class Certification .............. 13

  E.   Section 15(d) Claims Are Suitable for Class Treatment ................................... 14

  F.   Illegal Retention Claims Should Be Certified .................................................. 15

III.   CONCLUSION ....................................................................................................... 15

**CASES**

*ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492 (7th Cir. 2012) ............. 4

*Al Haj v. Pfizer, Inc.*, 347 F.R.D. 212 (N.D. Ill. 2020) ............................................................. 7, 8

*Amchem Prods, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................. 12

*Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008) ...................................................... 11

*Bayeg v. Admiral at the Lake*, 244 N.E.2d 377 (Ill. App. 1st Dist. 2024) ............................. passim

*Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018) ...................................................... 7

*Boyd v. Meriter Health Svcs. Emp. Ret. Plan*, 2012 WL 12995302 (W.D. Wis. Feb. 17, 2012) ... 9

*Cahoo v. Fast Enterprise LLC*, 508 F. Supp. 3d 138 (E.D. Mich. 2020) ...................................... 9

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) ........................................................... 12

*CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011) ................ 7, 8, 9

*Chapman v. Wagener Equities, Inc.,* No. 09 C 07299, 2012 WL 6214597

   (N.D. Ill. Dec. 13, 2012) ........................................................................................................ 10

*City of Rockford v. Mallinckrodt ARD, Inc.*, 2024 WL 1363544 (N.D. Ill. Mar. 29, 2024) ......... 11

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ......................................................................... 11

*Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918 (Ill. 2023) ............................................. passim

*Dennis v. Greatland Home Health Svcs., Inc.*, 591 F. Supp. 3d 320 (N.D. Ill. 2022) ................. 11

*DirecTV, Inc. v. Huynh*, No. 2005 WL 5864467 (N.D. Cal. May 31, 2005) ................................. 5

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) ........................................... 5

Heisler v. Convergent Healthcare Recoveries, Inc., 2018 WL 4635674

   (E.D. Wis. Sept. 27, 2018) ...................................................................................................... 9

*Howard v. Cook County Sheriff's Office*, 989 F.3d 587 (7th Cir. 2021) ........................................ 9

*Howe v. Speedway LLC*, No. 19-cv-1374, 2024 WL  4346631 (N.D. Ill. Sep. 29, 2024) ........ 4, 12

*Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672 (7th Cir. 2009) ................................................. 9

*Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) ............................................. 12

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ................................. 11

*Mullen v. GLV, Inc.,* 488 F. Supp. 3d 695 (N.D. Ill. 2020) ............................................................. 9

*Randall v. Rolls-Royce Corp.*, 637 F.3d 818 (7th Cir. 2011) ........................................................ 8

*Rosenbach v. Six Flags Entertainment Corp.*, 129 N.E.3d 1197 (Ill. 2019) ........................... 5, 7

*Smith v. RecordQuest, LLC,* 989 F.3d 513 (7th Cir. 2021) ........................................................... 4

*Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014) ........................................... 10

*Svoboda v. Amazon.com, Inc.*, No. 21-cv-5336, 2024 WL 1363718

   (N.D. Ill. Mar. 30, 2024) ................................................................................... 4, 11, 12

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001) ........................................... 12

*Tapia-Rendon v. United Tape & Finishing Co., Inc.*, No. 21-cv-3400

   2023 WL 5228178 (N.D. Ill. Aug. 15, 2023) .......................................... 4, 10, 12, 13

Thompson v. Matcor Metal Fabrication (Illinois) Inc., No. 2020-CH-00132

   (Cir. Ct. Tazewell Cnty., Ill. Dec. 11, 2023) ..................................................... 15

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ............................................................. 11

**Rules**

Rule 23(a) ............................................................................................................... 1, 2, 3, 6

Rule 23(a)(3) ...................................................................................................................... 6

Rule 23(a)(4) ...................................................................................................................... 6

Rule 23(b)(3) ........................................................................................................ 2, 11, 12, 13

Rule 23(c)(5) ...................................................................................................................... 9

Rule 23(f) ........................................................................................................................... 4

# I.    INTRODUCTION

Union Pacific's opposition to Plaintiffs' Motion for Class Certification (herein "Motion") fails on all grounds. Contrary to Defendant's assertions, this case presents exactly the type of systematic conduct for which the class action device was designed. Union Pacific implemented an Automated Gate System ("AGS") that collected thousands of truck drivers' fingerprints without complying with BIPA's requirements. Defendant's 30(b)(6) representative (and its lawyers) confirmed that the process by which Union Pacific collected Class members' biometrics was uniform. Defendant also stored each driver's biometrics in the exact same way – indeed, Defendant's databases are so standardized that it is easy identify each Class member and count how many (and which) fingers each driver scanned.

Due to Defendant's uniform and standardized process, Plaintiffs can show:

- The exact number and identities of the Class members from whom Defendant collected biometrics without written consent, in violation of BIPA section 15(b);
- The exact number and identities of the Policy Subclass members for whom Union Pacific possessed biometrics before adopting a compliant policy, in violation of Section 15(a);
- The exact number and identities of the Illegal Retention Subclass members from whom Union Pacific retained fingerprint images after the original purpose for collecting them had lapsed, in further violation of Section 15(a); and
- The exact number and identities of the Class members whose biometrics Defendant disseminated to third parties Remprex and Nascent, in violation of Section 15(d).

Simply put, Defendant violated multiple sections of BIPA in the exact same way for every Class and Subclass member. It is difficult to imagine a case more suited for class certification.

In light of the above, Defendant unsurprisingly does not contest the numerosity and commonality requirements of Rule 23(a), nor does it deny that the proposed Classes and Subclasses are readily ascertainable. Instead, Union Pacific resorts to misrepresenting the Illinois Supreme Court's opinion in *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918 (Ill. 2023) to argue

that Rule 23(a)'s typicality and adequacy requirements, as well as the predominance and superiority requirements of Rule 23(b)(3) cannot be satisfied. In addition, Defendant misrepresents Plaintiffs' deposition testimony and Plaintiff Fleury's bankruptcy proceedings to contend that Plaintiffs fail Rule 23(a)'s typicality and adequacy requirements. Lastly, Defendant argues that class-wide merits issues somehow preclude class certification. They do not—they support it. For these reasons, and those set forth below and in Plaintiffs' Motion, Plaintiffs respectfully request that the proposed Class and Subclasses be certified.

## II.  ARGUMENT

### A.  The Illinois Court of Appeals has Rejected Defendant's Contention that no BIPA Class can be Certified Post-*Cothron*.

Defendant's central theme is that *Cothron* effectively eliminated the possibility of certification of a BIPA class, particularly one seeking statutory damages. Therefore, before discussing how Defendant has barely addressed, much less refuted, the propriety of class treatment as detailed in Plaintiffs' opening brief, it is worth noting the speciousness of this argument. Defendant begins with *Cothron's* statement that "[i]t also appears that the General Assembly chose to make damages discretionary rather than mandatory under the Act." 216 N.E.2d at 929.[1] Defendant next (wrongly) asserts that *Cothron* does not "identif[y] the factors governing whether discretionary statutory damages should be awarded to any particular plaintiff," Dkt. 324 at 12, and thereafter launches into an analysis of different statutes to conclude those "other factors – *e.g.*, the

---

[1] Conspicuously, Defendant quotes the statement without the "it also appears" preamble, Dkt. 324 at 12, suggesting an iron-clad holding of the Illinois Supreme Court. It is not. *Cothron* arose from a certified question from the Seventh Circuit as to when a cause of action accrued under BIPA, and the issue of whether BIPA's statutory damages are discretionary or mandatory was not before the Court. Union Pacific's citation to the *Cothron dicta* for its idea that damages are discretionary on an individual, person-by-person basis, is thus loosely rooted. The Illinois Appellate decision in *Bayeg v. Admiral at the Lake*, 244 N.E.3d 377 (Ill. App. 1st Dist. 2024) appeal denied 244 N.E.3d 267 (Sept. 25, 2024), demonstrates that damages are to be awarded by simple multiplication ($1,000 or $5000 x number of violations) and that any discretion is to be applied to the resulting award to the extent necessary under *Cothron*.

severity of the violation, whether the plaintiff suffered actual damages, and the extent of the intrusion into the plaintiff's privacy – will inevitably vary by individual." Dkt. 324 at 13. According to Defendant, the resulting individualized damages assessments mean that no individual BIPA plaintiff will ever meet Rule 23's typicality, adequacy, or predominance requirements. In short, Defendant contends that *Cothron* precludes class relief in all BIPA cases.

This contention, of course, is belied by *Cothron* itself. In the sentence immediately preceding the "discretionary damages" *dicta*, the Court explained how a court should address BIPA class damages, specifically by exercising its "discretion to fashion a damage award that (1) fairly compensated claiming class members and (2) included an amount designed to deter future violations, without destroying defendant's business." It makes little sense that the Illinois Supreme Court would set forth a structure to assess BIPA class damages in the same paragraph that it was announcing (according to Defendant) that BIPA damages classes could not be certified.

Defendant's contention was rejected by the Illinois Court of Appeals in *Bayeg v. Admiral at the Lake*, 244 N.E.3d 377 (Ill. App. 1st Dist. 2024), appeal denied 244 N.E.3d 267 (Table) (Sept. 25, 2024). In analyzing post-*Cothron* BIPA damages in the class context, the *Bayeg* Court did not ransack the TCPA or the ECPA for factors to consider in determining damages. Rather, it cited *Cothron* and directly quoted the factors therein, holding that *Cothron* authorized class-wide damages to be proven by reference to evidence "reflect[ing] each time class members … allegedly had their [biometrics] scanned." *Id.* The *Bayeg* Court held: "damages can be calculated by multiplying each violation by either $1,000 or $5,000, depending on which mental state *Bayeg* is able to prove." *Id.* (citations omitted) (citing *Cothron*, 216 N.E.3d at 927).

*Bayeg* is binding on the Court for purposes of an *Erie* guess as to what factors to consider in adjudicating a BIPA damages award. As the Seventh Circuit has repeatedly held: "'In the

absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree.' So while a state supreme court's rule would control, a state appellate court's decision can provide controlling guidance as well." *Smith v. RecordQuest, LLC,* 989 F.3d 513, 517 (7th Cir. 2021) (quoting *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012). In September 2024, the Illinois Supreme Court denied the defendant-appellant's petition for leave to appeal in *Bayeg*. There is thus no "reason to predict that [the Illinois Supreme Court] would disagree" with *Bayeg's* BIPA class damages analysis.

To be sure, even before *Bayeg*, courts in this District have continued to certify BIPA damages classes post *Cothron*, oftentimes rejecting the same arguments made by Defendant here. *See, e.g., Tapia-Rendon v. United Tape & Finishing Co., Inc.*, 2023 WL 5228178 *6 (N.D. Ill. Aug. 15, 2023); *Svoboda v. Amazon.com, Inc.*, 2024 WL 1363718 *12-13 (N.D. Ill. Mar. 30, 2024);[2] *Howe v. Speedway LLC*, 2024 WL 4346631, *16-17 (N.D. Ill. Sep. 29, 2024).

Even if Defendant's argument had not been rejected by the Illinois Court of Appeals and multiple courts in this District, it would still fail for multiple reasons. First, as noted above, Defendant wrongly states that *Cothron* offers no guidance as to a discretionary damages determination, ignoring that the language that such discretion should involve "fairly compensating class members" and "deter[ring] future violations without destroying a defendant's business."

Next, Defendant's invocation of "other privacy laws provid[ing] guidance" to a BIPA damages determination is wholly unsupported; tellingly, Defendant does not cite a single case suggesting that a such a determination should be guided by other federal laws that do not reflect

---

[2] Given that this case has already endured multiple extensive stays at Defendant's insistence, the Court should reject Defendant's suggestion that the Court defer ruling on class certification until the Seventh Circuit issues a decision on the pending Rule 23(f) appeal in *Svoboda*. It appears *Svoboda* will focus on ascertainability—an issue Defendant has conceded here.

the Illinois General Assembly's desire to "subject private entities who fail to follow the statue's requirements to substantial potential liability" by "giv[ing] private entities 'the strongest possible incentive to conform to the law and prevent problems before they occur.'" *Cothron*, 216 N.E.3d at 928 (quoting *Rosenbach v. Six Flags Entertainment Corp.*, 129 N.E.3d 1197 (Ill. 2019)).

And to be sure, the cases and laws Defendant has identified to provide such "guidance" are inapplicable here. In *DirecTV, Inc. v. Huynh*, No. 2005 WL 5864467 (N.D. Cal. May 31, 2005), for example, the court identified seven factors for assessing discretionary damages under the Electronic Communications Privacy Act, including whether the defendant "used his pirate access devices" or "had a legitimate reason for his actions," or "whether an award of damages would serve a legitimate purpose." *Id.* at *8. Such factors are inapplicable to a strict liability statute designed to give companies "the strongest possible incentive to conform to the law." *Cothron*, 216 N.E.3d at 928. Defendant's invocation of the TCPA to suggest that discretionary damages defeats certification of a damages class is particularly weak, given that the only support it offers are jury instructions given in a case where a damages class was certified.[3] Dkt. 324-1, Ex. 28.

Defendant's attempt to borrow damages frameworks from other statutes tracks the petition for rehearing and the dissenting opinion in *Cothron*, which argued that the Illinois Supreme Court was not giving sufficient guidance as to the factors that courts should consider in adjusting a damages award in a BIPA action.[4] *Cothron,* 216 N.E.2d (Overstreet J., Dissenting). But the binding law is *Bayeg*, which instructs that BIPA class damages are determined by "multiplying each violation by either $1,000 or $5,000, depending on which mental state [plaintiff] is able to prove," and *Cothron*, which instructs trial courts to adjust excessive damages awards by using

---

[3] Courts routinely certify classes in TCPA cases notwithstanding its discretionary statutory damages. *See, e.g., Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224-27 (N.D. Ill. 2016) (Feinerman, J.) (rejecting objections based typicality, adequacy and predominance in approving TCPA settlement class).
[4] The petition for leave to rehear filed by the *Cothron* defendant is attached hereto as <u>Exhibit A</u>.

"discretion to fashion a damage award that (1) fairly compensate[s] claiming class members and (2) include[s] an amount designed to deter future violations, without destroying defendant's business."

Simply put, nothing in *Cothron* (or, for that matter, BIPA) suggests, as Defendant argues, that statutory damages are a "fatal flaw" to certification of a class. Dkt. 324 at 12.

## B.     Class Certification is Appropriate Under Rule 23(a)

### 1.     Defendant Concedes Numerosity, Commonality and Ascertainability

Union Pacific does not contest the Rule 23(a) numerosity and commonality requirements, nor does it deny that the proposed Class is ascertainable. Accordingly, these requirements are met.

### 2.     Plaintiffs are Typical and Adequate Class Representatives

Defendant's Response wholly ignores the typicality and adequacy requirements set forth in Rule 23(a)(3) & (4), instead relying on inapposite case law, inaccurate facts, and its flawed interpretation of *Cothron* to assert that Plaintiffs have not met the typicality and adequacy requirements. For the reasons set forth below, Defendant's arguments are without merit.

> ### a.   *Plaintiffs Fleury and Turner are Entitled to the Exact Same Statutory Damages and the Class and Subclasses they Represent*

Union Pacific's typicality and adequacy argument begins with the mischaracterization of *Cothron* that permeates its response. In fact, Defendant invents a new purported discretionary damages factor that isn't included in those espoused under the ECPA or TCPA; specifically, that BIPA damages "turn on the extent to which each driver cared about" the alleged BIPA violations. Dkt. 324 at 20. No cite exists for this assertion. Defendant goes on to rely on its fabricated discretionary damages factor to assert that Plaintiffs Fleury and Turner are inadequate and atypical because "their lack of concern for data privacy would substantially undercut the putative classes' argument for discretionary statutory damages." Dkt. 324 at 20. But *Bayeg* demonstrates that

damages are to be awarded pursuant to simple math and *then* adjusted to the extent necessary under *Cothron,* rather than pursuant to a per-person individual inquiry. 244 N.E.3d at 391.

Defendant's argument flies in the face of the Illinois Supreme Court's seminal decision in *Rosenbach*, in which the Court held that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [BIPA], in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach*, 129 N.E.3d at 1207. In direct contravention of this settled law, Defendant's argument would require a BIPA plaintiff to show "some actual injury or adverse effect" to recover liquidated statutory damages. The Court should not overrule the Illinois Supreme Court.[5]

Defendant's argument is not saved by its citation to *CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) for the proposition that an "arguable" defense can defeat adequacy.[6] In that TCPA case, the named plaintiff's deposition revealed serious credibility issues relating to whether it had consented to receive the offending faxes. It was in this context that the Court noted the plaintiff was not adequate or typical, because putative class members would be prejudiced by the named plaintiffs' exposure to impeachment on a critical element of the claim. Judge Posner made clear that the case was an outlier, cautioning that the court was not "extending an invitation to defendants to try to derail legitimate class actions by conjuring up

---

[5] Although whether Plaintiffs "cared about" or "lacked concern" for data privacy is irrelevant to their ability to recover under BIPA, Defendant's argument also fails as a matter of fact. Neither Plaintiff testified that he didn't care about data privacy, and the scant evidence Defendant relies on to make this claim establishes only how weak the argument is. In particular, Defendant's assertion that "it is difficult to imagine any driver caring *less* about privacy" because Plaintiff Fleury used a fingerprint scanner at Disney World and Plaintiff Turner hasn't enabled security on his phone is wildly hyperbolic and ignores the very existence of this yearslong lawsuit wherein Plaintiffs have doggedly pursued vindication of their privacy rights.

[6] It should be noted that the correct standard in the Seventh Circuit is that individual arguments be "arguable" <u>and</u> "substantial," not just "arguable." *Al Haj v. Pfizer Inc.,* 2020 WL 1330367, at *2 (N.D. Ill. Mar. 23, 2020) (citing *Beaton v. SpeedyPC Software,* 907 F.3d 1018, 1027 (7th Cir. 2018)); *see also CE Design,* 637 F.3d at 728.

trivial credibility problems or insubstantial defenses unique to the class representative." *Id.* at 728. That is what Defendant has done here in admitting that Fleury and Turner were subject to the same process as every other truck driver, then conjuring up weak defenses to contest certification.[7]

Defendant's citations to *Randall v. Rolls-Royce Corp.*, 637 F.3d 818 (7th Cir. 2011) and *Al Haj v. Pfizer, Inc.*, 347 F.R.D. 212 (N.D. Ill. 2020) are similarly inapposite. In *Randall*, a Title VII pay discrimination suit, the Seventh Circuit noted that "the named plaintiffs' base pay exceeded, with only a few exceptions, that of the male employees in the plaintiffs' compensation grades," and thus their claims were meritless. 637 F.3d at 823-24. In *Al Haj*, the named plaintiff's deposition testimony established she could not satisfy ICFA's requirement that she was actually misled by the defendant's marketing. 347 F.R.D. at 215. Thus, in both cases, the record established that the named plaintiffs could not establish critical elements of their claims. This is in sharp contrast to this case, where the elements of each of Plaintiffs' claims are susceptible to class-wide proof given Defendants' uniform and standardized biometric processes.

> b. *Defendant's Meritless Judicial Estoppel Defense does not Render Plaintiff Fleury Inadequate or Atypical*

Defendant's argument that Plaintiff Fleury is subject to a unique judicial estoppel defense is amounts to the same "conjuring up of insubstantial defenses" that Judge Posner warned of in *CE Design* and which does not satisfy the "arguable and substantial" standard. As explained in Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment, Defendant's judicial estoppel argument is based on a wholesale misrepresentation of fact and inapplicable case law. Plfs.'Opp. UPMSJ § H. Thus, it is not arguable that Plaintiff Fleury is subject to this defense, and it is certainly not a substantial barrier to his recovery.

---

[7] Dkt. 318 at 20, fn 59.

Even if Fleury were subject to the defense, Union Pacific's judicial estoppel argument misunderstands the adequacy requirement. Defendant's own cited case establishes that Fleury would only be deemed inadequate if the defense was a major focus of the litigation to the detriment of absent class members. *See CE Design*, 637 F.3d at 726. Here, any judicial estoppel defense is a straightforward legal issue to be decided by the Court that would not distract from the class claims, would not involve the jury, and has not been a major focus of the litigation.[8] To illustrate the point, in a case in which the factual record is, in Defendant's counsel's words, "enormous," counsel's investigation of the bankruptcy issue consisted of a single interrogatory and took up 11 pages of Plaintiff Fleury's deposition testimony in July of 2023. Since then, the issue completely disappeared from the case until Defendant resurrected it in its summary judgment motion in a misguided attempt to use it to defeat class certification. The notion that the judicial estoppel defense has been a detriment to absent class members is divorced from reality.

Union Pacific's reliance on *Heisler v. Convergent Healthcare Recoveries, Inc.*, 2018 WL 4635674 (E.D. Wis. Sept. 27, 2018) is misplaced because the plaintiff knowingly failed to disclose her claim during bankruptcy and never attempted to amend her schedules. *Id.* at *4. The same is true of the plaintiffs in *Boyd v. Meriter Health Svcs. Emp. Ret. Plan*, 2012 WL 12995302, at *11 (W.D. Wis. Feb. 17, 2012) and *Cahoo v. Fast Enterprise LLC*, 508 F. Supp. 3d 138, 150-52 (E.D. Mich. 2020). Here, by contrast, Fleury properly scheduled his claim, and his bankruptcy was discharged without objection.[9] Courts have consistently held that judicial estoppel does not apply

---

[8] The Parties discovery correspondence on this point is attached as <u>Exhibit B.</u>

[9] In the event the Court finds Defendant's misguided adequacy argument is tenable, the Court should permit a replacement class representative be added, as is commonplace at the class certification stage and beyond. *See Howard v. Cook County Sheriff's Office*, 989 F.3d 587, 610 (7th Cir. 2021) (citing *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009)); *Mullen v. GLV, Inc.,* 488 F. Supp. 3d 695, 705 (N.D. Ill. 2020), aff'd, 37 F.4th 1326 (7th Cir. 2022) (permitting substitution of class representatives well after discovery and pursuant to class certification and summary judgment briefing). This would be the most

where a debtor corrects omissions by amending bankruptcy schedules before discharge. *See Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 547-48 (7th Cir. 2014); *see also Seymour v. Collins*, 39 N.E.3d 961, 980-82 (Ill. 2015).

### C.  Class Certification is Appropriate Under Rule 23(b)(3)

#### 1.  Common Questions Predominate

Union Pacific's predominance argument again rests on the false premise that *Cothron* requires a BIPA plaintiff to prove actual individualized damages, meaning that no BIPA statutory damages class could ever satisfy predominance. As noted above, the argument has been rejected by the controlling Court of Appeals decision in *Bayeg*, which held that the common questions of whether the defendant (i) collected class members' biometrics, (ii) violated Section 15(a) and 15(b), and (iii) was negligent or reckless would predominate over any individualized issues. 244 N.E.3d 377, 390. The same common questions are present here. Moreover, the same method of calculating class-wide damages is available here, as Defendant's records establish each time Defendant scanned a truck driver's fingerprint upon registering with the AGS prior to providing written consent in violation of § 15(b). Defendant's records also supply the precise number of § 15(d) violations and the violations for the § 15(a) Policy and Illegal Retention Subclasses.

Courts in this District readily found predominance in similar BIPA class actions even before *Bayeg*. In *Tapia-Rendon*, for example, the defendant (like Union Pacific) argued that the discretionary damages inquiry would result in a "'nightmarish' individualized damages assessment for each individual class member." 2023 WL 5228178 at *6. Judge Kennelly rejected the

---

efficient result here given Defendant's numerous concessions as to numerosity, commonality, and ascertainability. *See Chapman v. Wagener Equities, Inc.,* 2012 WL 6214597, at *9 (N.D. Ill. Dec. 13, 2012) ("It would make little sense for the Court to deny the plaintiff's motion [to add a class representative] on grounds of prejudice to the defendants when the end result would mean greater costs for all parties involved, and in effect, truly start the matter over . . . ").

argument, finding: "In other words, the fact that damages under the BIPA are discretionary after *Cothron* does not mean that they cannot be awarded in a common class-wide manner." *Id.* The court reached the same conclusion in *Svoboda*, 2024 WL 1363718 at *12. In so doing, Judge Alonso distinguished the same cases upon which Union Pacific relies, *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) and *Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008) on the grounds that there was no applicable class-wide damages methodology in *Comcast* and that *Andrews* would require thousands of rescission procedures to "unwind" individual credit transactions. *Id.* at 13.[10]

Defendant's predominance argument also runs afoul of the "well established" rule that "the presence of individualized questions regarding damages does not prevent certification." *Messner*, 669 F.3d at 815; *see also Dennis v. Greatland Home Health Svcs., Inc.*, 591 F. Supp. 3d 320, 329 (N.D. Ill. 2022) ("individualized damages determinations do not defeat predominance for class certification purposes"); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Notably, Defendant does not even address, much less refute, that this case involves extensive common questions, relating both to Plaintiffs' proof of the elements of their claims as well as Defendant's defenses. Dkt. 318 at 13-19, 26-27. Thus, even if *Cothron* required an individualized damages assessment (it does not, per *Bayeg*), Rule 23(b)(3) would still be satisfied because common questions predominate over those issues.

### 2. Class Treatment Is Superior to Individual Actions

Union Pacific's argument that the potential for large individual recoveries defeats superiority misunderstands the purpose of Rule 23(b)(3). The superiority analysis considers

---

[10] Defendant also cites *City of Rockford v. Mallinckrodt ARD, Inc.*, 2024 WL 1363544 (N.D. Ill. Mar. 29, 2024), but that case instructs that "the mere presence of fact-bound variation in damages between different class members is not alone sufficient to defeat the certification of a class – in other words, that uniformity of damages is not required for common questions to predominate." *Id.* at * 4 (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). As such, *City of Rockford* refutes, rather than supports, Defendant's predominance argument.

whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," not whether individual claims are economically viable. Fed. R. Civ. P. 23(b)(3).

Class treatment is superior here for several reasons. First, consolidating these claims promotes judicial economy by resolving tens of thousands of identical claims in one proceeding rather than tens of thousands of duplicative lawsuits. Second, class treatment ensures consistency in the interpretation of BIPA. Third, a class action is more efficient for all parties, including Union Pacific, which would otherwise face thousands of lawsuits raising identical issues.

And in any event, once again Defendant's argument has been repeatedly rejected by courts certifying BIPA classes, particularly after *Cothron* held that each scan constitutes a separate violation. *See, e.g., Tapia-Rendon*, 2023 WL 5228178 at *6; *Howe*, 2024 WL 4346631 at *17; *Svoboda*, 2024 WL 1363718 at *14-15. As Judge Kennelly put it, "There is a hypothetical possibility that some individual class members may prefer to litigate their claims individually. But at this point, it's purely hypothetical. The Court is persuaded that litigating these claims on a class-wide basis 'would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Tapia-Rendon*, 2023 WL 5228178 at *6 (quoting *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)). The same analysis applies here.

In contrast to these on-point decisions, Union Pacific's authority: *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001), and *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) is inapposite. Those cases involved complex claims with highly individualized *liability* questions, unlike the uniform conduct here. *Castano*, 84 F.3d at 741-42, *Szabo*, 249 F.3d at 674 *Rhone-Poulenc*, 51 F.3d 1296-97.

Moreover, while Defendant notes that dozens of non-class BIPA cases have been filed in the last ten years,[11] it admits that only two such cases have been filed against Union Pacific, despite its use of the same AGS fingerprint scanning technology that led to a highly-publicized $228 million verdict in *Rogers v. BNSF* in September of 2022. Simply put, the argument that class members are highly incentivized to file individual actions because of potentially significant damages awards has not materialized, likely because plaintiffs' lawyers know that – as this case has demonstrated – whether you sue on behalf of one individual or a class, you are signing up for years of costly and hard-fought litigation. Once again, Judge Kennelly's opinion in *Tapia-Rendon* is directly on point: "The potential class comprises over 2,000 individuals, all with virtually identical claims that will involve identical proof. It can hardly be disputed that resolving these claims through a class action would be more efficient than proceeding with hundreds of individual suits." 2023 WL 5228178 at *6 (quotation omitted). This is even more true here, where the putative class is ten times larger. Accordingly, Rule 23(b)(3)'s superiority requirement is satisfied.

### D. Defendant's Verification Scan Argument does not Defeat Class Certification

Union Pacific's argument regarding verification scans proves too much, in that it is effectively an argument that no member of the class can recover for verification scans because they were only stored for a matter of seconds. This is a common question for every class member, and thus supports rather than refutes a finding of predominance here.

Nor is predominance defeated by Union Pacific's argument that it lacks records showing when drivers provided verification scans.[12] This argument is belied by the testimony of

---

[11] Importantly, now that BIPA has been amended prospectively to limit the amount of obtainable damages, the supposed economic incentive to file individual actions that Defendant raises has been wiped away, as newly filed cases must proceed under the new damages framework. This favors finding superiority here.

[12] There is no similar argument for Defendant to make regarding its collection of Composite Fingerprint Images and Fingerprint Templates, as those pieces of data were stored can be counted for each Class member.

Defendant's 30(b)(6) witnesses. Jeremy Hayden, Union Pacific's corporate representative as to its "capture, storage, destruction and/or use of Plaintiffs' and the putative Class and/or Subclass Members' Biometrics," compiled a spreadsheet showing the number of times each truck driver visited an Illinois facility during the class period after they had registered their fingerprint with AGS and prior to giving consent for collection of their biometrics.[13] And while Defendant asserts that the number of visits does not *necessarily* equal the number of verification scans, the word necessarily does a lot of heavy lifting there. Terry Brown, Defendant's 30(b)(6) witness as to "All instances in which You collect, capture, store, use, or otherwise obtain Biometrics … including but not limited to interactions at Your intermodal facilities in Illinois" testified that Union Pacific required drivers use the AGS fingerprint scanners to re-enter the facility after registration.[14] Similarly, the 2015 intermodal policy manual indicates that biometric usage is <u>required</u> for entry where biometrically enabled AGS systems were installed, including the four Illinois locations. Dkt. 335-26. The percentage of drivers who entered Defendant's Illinois facilities using biometrics reflects this; it's nearly 100%.[15] Thus, ample evidence exists from which a jury can reasonably infer how many times Union Pacific collected a verification scan from each putative class member.

And in any event, the lack of a specific document compiling verification scans does not defeat certification. Class certification does not require that every potential violation be documented, only that the class definition be sufficiently ascertainable. The class can be defined based on registered drivers who visited Union Pacific's facilities, as the record is replete with evidence that verification scanning was required for access to Union Pacific's Illinois facilities.

### E.     Section 15(d) Claims Are Suitable for Class Treatment

---

[13] 30(b)(6) Deposition of Jeremy Hayden, attached as <u>Exhibit C</u> hereto, at 222-229.
[14] 30(b)(6) Deposition of Terry Brown, attached as <u>Exhibit D</u> hereto, at 103:11-24.
[15] See REMPREX00000023, as <u>Exhibit E</u> hereto, (showing 96% successful rate for biometrics).

Union Pacific's arguments against certifying Section 15(d) claims similarly fail. The record shows that Union Pacific systematically shared access to its biometric databases with Remprex and Nascent.[16] This conduct constitutes "disclosure" under BIPA regardless of whether these vendors actively downloaded or viewed each class member's data. *Thompson v. Matcor Metal Fabrication (Illinois) Inc.,* No. 2020-CH-00132 at 11-12 (Cir. Ct. Tazewell Cnty., Ill. Dec. 11, 2023) (granting summary judgment as to § 15(d) claim where defendant conceded that "'[third party] would have access' to employees' finger-scan data through [defendant's] payroll system"). Defendant disputes whether providing access to Remprex and Nascent constitutes disclosure, but this merits dispute *supports* predominance because its resolution will apply classwide.

## F. Illegal Retention Claims Should Be Certified

Finally, Union Pacific's arguments against certifying the Illegal Retention Subclass again argues common questions that are applicable to the entire class; specifically, that Plaintiffs are barred from seeking certification of the Illegal Retention Subclass because the class was pled differently in the operative complaint, and that Union Pacific was entitled to retain the Subclasses' Composite Fingerprint images even though it had no clue it was even storing them. Resolution of these questions are also class-wide. Accordingly, predominance is met.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed Class and Subclasses, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel in accordance with Plaintiffs' Motion. Dkt 312 at 30.

---

[16] Union Pacific's Answers to Plaintiffs' Fourth Set of Interrogatories, attached as <u>Exhibit F</u>, at Response No. 17 (Subject to and without waiving these objections, employees of Remprex had primary and unlimited access to the databases and the data therein.).

DATED: May 22, 2025

DAVID FLEURY and ALVIN TURNER, individually, and on behalf of similarly situated individuals

By: /s/ *Brendan Duffner*
*One of Plaintiffs' Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Thomas M. Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

*Counsel for Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 22, 2025, a copy of *Plaintiffs' Reply in Support of Class Certification* was filed electronically with the Clerk of Court, with a copy sent by Electronic Mail to all counsel of record.

/s/ *Brendan Duffner*