**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID FLEURY and ALVIN TURNER, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>Defendant. | Case No. 20-cv-390<br><br>District Judge LaShonda A. Hunt |

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S SUPPLEMENTAL BRIEF**

Sean M. Berkowitz
Gary Feinerman
Johanna Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700

Michael S. Rubin
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600

*Counsel for Defendant Union Pacific Railroad Company*

Pursuant to the Court's June 24, 2026 Order (Dkt. 401), Defendant Union Pacific Railroad Company ("UP") respectfully submits this brief regarding *Clay v. Union Pacific Railroad Co.*, 171 F.4th 975 (7th Cir. 2026), and *Svoboda v. Amazon.com, Inc.*, 168 F.4th 956 (7th Cir. 2026).

## I. *Clay* Substantially Curtails Plaintiffs' Ability To Obtain Substantial, Or Even Any, Discretionary Statutory Damages

### A. Plaintiffs Are Entitled To, At Most, One Recovery Of Statutory Damages For Multiple Violations Of Each Of Sections 15(b) And 15(d)

*Clay* held that the 2024 BIPA amendment—which limits a plaintiff to one recovery when a defendant violates Section 15(b) by repeatedly collecting the plaintiff's same biometric data using the same collection method, and one recovery when a defendant violates Section 15(d) by repeatedly distributing the plaintiff's same biometric data using the same distribution method, *see* 740 ILCS 14/20(b), (c)—applies retroactively. 171 F.4th at 985. As *Clay* explained, "[a] plaintiff who alleges thousands of claims under BIPA Section 15 is," therefore, "only 'entitled to, at most, one recovery under' Section 20." *Id.* (quoting 740 ILCS 14/20(b)-(c)). As a result, Plaintiffs' $22 billion damages calculation—premised on multiple recoveries for each putative class member—is untenable. *Clay* reduces, and in fact provides a path for eliminating, Plaintiffs' damages.

*First*, *Clay* eviscerates Plaintiffs' request for damages under Section 15(b) based on verification scans. *See* UP MSJ at 10. (Plaintiffs do not seek damages under Section 15(d) for verification scans.) Registration and verification scans indisputably used the same method of alleged collection, *i.e.*, the Lumidigm sensor. *See id*. at 5-6. Moreover, when a driver provided a verification scan, the sensor indisputably generated a TemplateBIN that was the "same [alleged] biometric information from the same person" as the registration scan. *Id.* at 36. Thus, verification scans do not give rise to additional recoveries under Section 15(b). *See Clay*, 171 F.4th at 985.

*Second*, *Clay* makes clear Plaintiffs are not entitled to damages for both CompositeIMs *and* TemplateBINs collected by the AGS. When a driver registered with the AGS, he would place a

finger on the Lumidigm sensor. *See* UP MSJ at 6. The sensor used multispectral imaging to scan his subdermal information and encode the information into CompositeIM—a string of hexadecimal code. *Id.* The sensor then translated the CompositeIM into TemplateBIN, a shorter template code. *Id.* Even if the sensor scanned a "fingerprint"—it did not, as explained in UP's MSJ papers—that would mean the strings of code it generated (CompositeIM and TemplateBIN) are different formats of the same information derived from the same fingerprint. *See* 740 ILCS 14/10 (defining "biometric information" as "any information … based on an individual's biometric identifier used to identify an individual"). That is, CompositeIM and TemplateBIN were the "same [alleged] biometric information from the same person" obtained "using the same method of collection," entitling Plaintiffs to, "at most, one recovery" under Section 15(b), not separate recoveries for each. 740 ILCS 14/20(b). For the same reason, Plaintiffs are entitled, at most, to "one recovery" under Section 15(d). 740 ILCS 14/20(c).

*Third*, *Clay* makes clear that Plaintiffs are not entitled to damages for each finger they scanned during AGS registration. Plaintiffs assert that the AGS database contained CompositeIM and TemplateBIN from four of Turner's fingers, entitling him to statutory damages for each finger. *See* Pl. MSJ at 30 n.13. But the same type of alleged biometric information (data based on an alleged fingerprint) was scanned from each of Turner's fingers using the same method of collection. *See* 740 ILCS 14/20(b)-(c) (limiting recovery where defendant "in more than one instance" collects, or discloses to the "same person," "the same biometric identifier or biometric information from the same person"). That is, Turner challenges the same conduct by UP—obtaining and disclosing his alleged fingerprint data without his consent—and the BIPA amendment provides that, under such circumstances, "damages should be evaluated on a per-person basis." *Clay*, 171 F.3d at 977. Indeed, as the Seventh Circuit held in *Clay*, a fingerprint

case, "[a] plaintiff who alleges thousands of claims under BIPA Section 15 is only 'entitled to, at most, one recovery under' Section 20," *id.* at 985 (quoting 740 ILCS 14/20(b)-(c))—not, as Plaintiffs would have it, one recovery per finger.[1] Turner is thus entitled to, at most, one recovery under Sections 15(b) and 15(d) regardless of how many of his fingers were scanned.

### B. *Clay* Confirms BIPA Statutory Damages Are Entirely Discretionary

*Cothron* and BIPA's text establish that the decision whether to award BIPA statutory damages to any particular plaintiff or class member—and, if so, in what amount—is discretionary. *See* 740 ILCS 14/20(a) ("A prevailing party *may* recover for each violation" statutory damages); *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 929 (Ill. 2023) ("It also appears the General Assembly chose to make damages discretionary rather than mandatory under the Act."). Plaintiffs have disagreed, arguing that BIPA damages are discretionary not as to any *individual* claimant, but only insofar as a court in a *class action* has the inherent power "to fashion a damage award that (1) fairly compensate[s] claiming class members and (2) include[s] an amount designed to deter future violations, without destroying defendant's business." Pl. Class Cert. Reply at 2-6.

*Clay* shows that Plaintiffs are wrong, confirming that whether to award an individual claimant statutory damages at all and, if so, in what amount is a discretionary decision:

> The amendment to Section 20 reaffirms the point that damages appear to be discretionary under BIPA. After all, it states plaintiffs "are entitled to, at most, one recovery." … By including the qualifier "at most," the amendment indicates that plaintiffs alleging thousands of violations might not even be entitled to the full award of liquidated damages permitted by Section 20(a).

171 F.4th at 982-83. Thus, (i) the jury's discretion expressly set forth in Section 20(a)'s text—an

---

[1] Attempting to avoid a Seventh Circuit ruling on the correct interpretation of BIPA Section 25(e), Plaintiffs filed an amicus brief in *Payton v. Union Pac. R.R. Co.*, No. 26-1946 (7th Cir.), in which they raised a subject matter jurisdiction challenge based on the premise that each *Payton* plaintiff is entitled to, at most, $5,000 for each BIPA section UP allegedly violated. *See* Amicus Br., *Payton v. Union Pac. R.R. Co.*, No. 26-1946, Dkt. 19 at 1, 3-4 (July 9, 2026). Plaintiffs thus agree—at least when it suits their purposes—that BIPA statutory damages are available solely "on a per-person basis." *Clay*, 171 F.3d at 977.

individual claimant "may be entitled" to "at most, one recovery"—is separate from (ii) a court's discretion in a class action to fashion an appropriate damages award, which arises from the inherent power of "[a] trial court presiding over a class action—a creature of equity." *Cothron*, 216 N.E.3d at 929. After all, *Clay* was a single-plaintiff case, not a class action, and Section 20(a) expressly refers to individual claims, stating that "[a]ny *person* aggrieved by a violation of this Act shall have a right of action … against an offending party." 740 ILCS 14/20(a) (emphasis added).

## II. *Svoboda* Held That Class Certification Was Not An Abuse Of Discretion On A Different Record And Before *Clay* Held That Statutory Damages Are Discretionary

In touting *Svoboda*'s affirmance of the class certification order in a BIPA case against Amazon, Plaintiffs undoubtedly will overread the decision. At several junctures, the Seventh Circuit emphasized that the district court had not abused its discretion—not that the only correct disposition was to certify a class. *See* 168 F.4th at 962-65, 967. And significantly, the Seventh Circuit cautioned that the class was certified *only* as to certain liability issues, with "damages … [being] handled at a separate phase of litigation," and that "the district court has the flexibility to alter certification or decertify should damages become unmanageable." *Id.* at 966.

In holding that individualized damages issues did not defeat predominance, *Svoboda* stated that "[t]he district court was also on solid ground in observing that it retained discretion on a finding of liability to award damages on a classwide basis by, for example, assessing the amount of damages on a common per-scan basis." *Id.* That observation did not anticipate *Clay*, which later held that a statutory damages award for each claimant is discretionary (i) as to whether damages should be awarded at all and (ii) if they are awarded, as to the precise amount—anywhere from $0.01 to $1,000 for negligent violations, or $0.01 to $5,000 for reckless violations. 171 F.4th at 982-83. *Clay* was the first time the Seventh Circuit made that point clear.

This Court has the benefit of *Clay*, which counsels against predominance. Because BIPA

statutory damages are discretionary as to individual claimants, the appropriate damages amount (if any) depends on highly individualized factors, like each driver's identity verification preferences and privacy practices. *See* UP Class Cert. Opp. at 12-13. This rubric governs other discretionary statutory damages regimes, *see id.*, and it likewise governs damages under BIPA. Thus, factors such as "the severity of the violation," whether the plaintiff or putative class member suffered any "actual damage[s]," and "the extent of any intrusion into the plaintiff's privacy" will inevitably vary by individual. *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016) (denying class certification in Wiretap Act case given these variances among putative class members).

In *Svoboda*, Amazon did not present expert or other evidence that the putative class members' view of privacy, and the extent of the alleged privacy intrusions, were among the individualized damages issues defeating predominance. *See* 2025 WL 1186739, at *38-44 (Apr. 16, 2025). The Seventh Circuit did not consider how such individualized privacy preferences affected predominance, and thus did not preclude a district court in another case from finding that predominance is not satisfied based on individualized damages questions on the record before it. Nor could the Seventh Circuit have done so consistently with the party presentation principle. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("the principle of party presentation" requires parties to "frame the issue for decision, while the court serves as a neutral arbiter of matters the parties present") (cleaned up); *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 934 (7th Cir. 1996) ("[C]ourts confine themselves to the arguments advanced by the parties.").

Here, by contrast, UP presented the argument and evidentiary predicate missing in *Svoboda*. UP expert Catherine Tucker—the only expert on privacy preferences in this case—explained that "[p]eople's preferences regarding identity verification are highly individualized" and vary across demographics and the purpose for which information is collected. *See* UP Class

Cert. Opp. at 14-15. Thus, under the discretionary statutory damages rule articulated in *Clay*, UP has demonstrated that determining the severity of any BIPA violation, the extent of any privacy intrusion, and whether a driver suffered actual damages will turn on each driver's highly individualized circumstances and preferences regarding data privacy. *See id.*

Fleury's experience illustrates the point. He presented no evidence of actual harm (nor did Turner), and did not object to providing his finger scans to Disney World or Busch Gardens and never asked what they did with his data. *See id.* at 15. This substantially weakens his claim to discretionary statutory damages. *See DirecTV v. Huynh, Inc.*, 2005 WL 5864467, at *8 (N.D. Cal. May 31, 2005). A similar inquiry into each driver's privacy preferences and practices would be necessary to determine whether *that* driver should be awarded discretionary statutory damages and, if so, in what specific amount. And because the AGS improved efficiency and increased driver satisfaction, any damages inquiry would have to weigh, among other things, the value that AGS finger scanning provided in the form of increased efficiency and how that benefit impacted any individual driver's view of his privacy interests in the scans. *See* UP Class Cert. Opp., Ex. 4 at 200:18-201:13 (explaining AGS decreased processing time at the gates, which promoted "[e]fficiency, accuracy [and] driver experience").

Another argument that Amazon did not make (and the Seventh Circuit did not address) in *Svoboda*, but that UP makes here, is that the Due Process Clause and Seventh Amendment give UP the right to litigate damages factors for each driver. *See* UP Class Cert. Opp. at 11-16; *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 669 (7th Cir. 2015) ("A defendant has a due process right to challenge the plaintiffs' evidence at any stage of the case, including the claims or damages stage."). A class action defendant retains the right to challenge before a jury the evidence bearing on each putative class member's statutory damages claim. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S.

442, 458 (2016) (explaining it "would … violate[] the Rules Enabling Act" to "giv[e] plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action"); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (similar).

Thus, for the more than 22,400 putative class members here, UP would have the right to challenge, before a jury, each driver's proffered damages evidence and present its own evidence against each driver's damages claim. *See Mullins*, 795 F.3d at 671 (holding that a defendant must have "the opportunity to challenge each class member's claim to recovery during the damages phase"). Those required and necessarily individualized evidentiary proceedings could not be obviated by, for example, affidavits attesting that a putative class member valued his or her privacy or felt the use of the AGS harmed his or her privacy interest. *See* 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 8:6 (22d ed. 2025) ("Courts have rejected proposals to employ class member affidavits and sworn questionnaires as substitutes for traditional individualized proofs which are, most importantly, not subject to cross-examination.").[2]

Citing *Bayeg v. Admiral at the Lake*, 244 N.E.3d 377 (Ill. App. 2024), Plaintiffs insist that damages are a simple multiplication problem. *See* Pl. Class Cert. Reply at 2 n.1. But *Bayeg* did not state such a rule; to the contrary, it recognized that courts "can decide the appropriate damages to award" "in accordance with *Cothron*'s guidance[.]" 244 N.E.3d at 391. Plaintiffs assert that "*Bayeg* is binding on the Court for purposes of an *Erie* guess as to what factors to consider in adjudicating a BIPA damages award." Pl. Class Cert. Reply at 3-4. That is wrong: *Bayeg* applied the Illinois class certification statute, not Civil Rule 23. *See State Farm Life Ins. Co. v. Jonas*, 775

---

[2] *See also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 618-19 (W.D. Wash. 2003) (noting "sworn oaths or affidavits" would be subject to challenge by defendants and thus could not be used to avoid individualized inquiries); *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 554 (D. Minn. 1999) ("[E]ven if a questionnaire could be used to establish prima facie evidence of injury, Defendants would be permitted to cross-examine each class member[] regarding that alleged injury.").

F.3d 867, 869 (7th Cir. 2014) ("[F]ederal procedures govern in federal litigation[.]").

Plaintiffs might retort that this Court should set liability issues for a class trial and postpone damages issues. While that argument keys in on *Svoboda*'s statement that "damages … [can be] handled at a separate phase of litigation," it forgets *Svoboda*'s admonition that courts "remain vigilant in monitoring the propriety of certification as the case develops," caution that "class certification does not carry any permanency," and holding that the "district court has the flexibility to alter certification or decertify should damages become unmanageable." 168 F.4th at 966-67. Thus, in evaluating Plaintiffs' request to certify liability issues now and ask damages questions later, this Court should consider what will happen if Plaintiffs prevail on liability and the case proceeds to a "separate [damages] phase." *Id.* at 966. Given UP's arguments and evidence, would this Court—remaining vigilant as *Svoboda* requires—inevitably find it appropriate to decertify the class, rendering the grant of class certification and a jury trial on liability issues a waste of judicial and party resources? The answer to that question is yes in light of the evidence and arguments set forth above, counseling strongly against certification of liability issues.

Significantly, Plaintiffs have not offered, and could not possibly provide, any reasonable "trial plan" for the manageable adjudication of individualized damages questions for 22,400 drivers. As the Advisory Committee on Civil Rules cautioned:

> A critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a "trial plan" that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof.

Adv. Comm. Notes to 2003 Amend. to Rule 23(c)(1). And as the Manual for Complex Litigation (Fourth) (2004) likewise advises: "The judge must decide whether the proposed Rule 23(b)(3) class will be manageable. For the most part, courts determine manageability by reviewing affidavits, declarations, [and] trial plans … that counsel present." *Id.* § 21.142. Plaintiffs' failure

to even *offer* a class trial plan for damages issues defeats class certification. *See City of Rockford v. Mallinckrodt ARD, Inc.*, 2024 WL 1363544, at *10-11 (N.D. Ill. Mar. 29, 2024) (denying certification where "the inevitability of countless individual trials on damages using individual evidence would see the individual questions predominant"); *Dolmage v. Combined Ins. Co. of Am.*, 2017 WL 1754772, at *9 n.6 (N.D. Ill. May 3, 2017) (same, noting lack of trial plan "further undercuts [plaintiff's] arguments that the Rule 23 requirements are satisfied").

## III. Before Addressing The Impact Of *Clay* And *Svoboda* On This Case, The Court Should Await The Seventh Circuit's Decision In *Payton*

UP respectfully asks this Court to defer decision on summary judgment and class certification until the Seventh Circuit resolves *Payton v. Union Pacific R.R. Co.*, No. 26-1946 (7th Cir.), which will decide whether BIPA Section 25(e) imposes a purely temporal test—meaning that defendants are exempt from BIPA during the time they maintain active government contracts—or whether it demands a substantive nexus between a defendant's government contracts and its alleged collection of biometric data. Briefing in *Payton* will conclude in July—and, as noted, Plaintiffs here filed an amicus brief in *Payton* yesterday, thus confirming its significance to this case. If the Seventh Circuit concludes that Section 25(e) imposes only a temporal test, all UP must show is that it maintained active government contracts when it used the AGS.

*Payton* will bear not only on Section 25(e)'s meaning, but also on Plaintiffs' argument that UP waived Section 25(e) by not pleading it as an affirmative defense. Section 25(e) is an ordinary, not an affirmative, defense. *See* UP MSJ Reply at 5-6. But even if it is an affirmative defense, the Seventh Circuit has held: "We will generally find that the failure to plead an affirmative defense in the answer works a forfeiture *only if the plaintiff is harmed by the defendant's delay in asserting it*." *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 436 (7th Cir. 2014) (emphasis added).

If *Payton* holds that Section 25(e) imposes only a temporal test, there can be no prejudice

to Plaintiffs, as discovery relevant to UP's defense could not be more simple: UP's having active government contracts throughout the proposed class period. Plaintiffs have had that discovery since August 12, 2024, when UP produced its government contracts. Dkt. 292 at 5. Indeed, Plaintiffs' counsel *expressly reserved* the "right to … depose any percipient fact witness to obtain any testimony relating to [those] contracts," UP MSJ Reply, Ex. 1-A at 97:17-22, and UP thereafter repeatedly offered to facilitate that deposition, *see id*. at 7. Yet Plaintiffs ignored those offers, opting to try to create their own prejudice, *see id.* at 7-8, which they may not do, *see Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1338 (S.D. Fla. 2010) ("[A] party cannot create its own prejudice and thereby benefit from it.").[3] Plaintiffs' already weak prejudice argument would collapse if the Seventh Circuit holds that Section 25(e) imposes only a temporal test.

Disposing of this case on Section 25(e) grounds would obviate the need to address the more difficult issues posed by *Clay* and *Svoboda* (and the parties' other arguments). UP thus respectfully suggests that judicial economy supports awaiting the Seventh Circuit's *Payton* decision before addressing the impact of *Clay* and *Svoboda*.

## IV. Conclusion

UP respectfully requests that the Court defer ruling on summary judgment and class certification pending the Seventh Circuit's ruling in *Payton*; in the alternative, the Court should grant UP's motion and deny Plaintiffs' motions.

---

[3] In their *Payton* amicus brief, Plaintiffs assert that UP "objected to discovery into its government contracts" in *Fleury*. Amicus Br., *Payton v. Union Pac. R.R. Co.*, No. 26-1946, Dkt. 19 at 2 (July 9, 2026). That assertion misrepresents the relevant discovery that UP has provided and offered in this case. As noted, UP produced the contracts and repeatedly offered to make a fact witness available for a deposition on those contracts, and Plaintiffs ignored those offers despite having reserved the right to take such a deposition. UP MSJ Reply at 7-8.

Date: July 10, 2026

Respectfully submitted

/s/ Johanna Spellman
Johanna Spellman, One of the Attorneys for Defendant Union Pacific Railroad Company

Sean M. Berkowitz (Illinois Bar No. 6209701)
sean.berkowitz@lw.com
Gary Feinerman (Illinois Bar No. 6206906)
gary.feinerman@lw.com
Johanna Spellman (Illinois Bar No. 6293851)
johanna.spellman@lw.com
Kathryn A. Running (Illinois Bar No. 6330369)
kathryn.running@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Michael H. Rubin (*pro hac vice*)
michael.rubin@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

*Counsel for Defendant Union Pacific Railroad Company*

## CERTIFICATE OF SERVICE

I, Johanna Spellman, hereby certify that on July 10, 2026, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which provides service to all counsel of record.

Dated: July 10, 2026

*/s/ Johanna Spellman*
Counsel for Defendant